UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

3:22-CV-329-RGJ

DAVID ELLIOT                                                                                   PLAINTIFF

v.                                                                                                 CIVIL ACTION NO.

HUMANA, INC.                                                                               DEFENDANT

**CLASS ACTION COMPLAINT AND REQUEST FOR JURY TRIAL**

**INTRODUCTION**

1. Like most Americans, Plaintiff David Elliott ("David") has a mobile cellular telephone.

2. He uses his phone to receive and make important calls, to get emergency information and to receive and send messages to family members and friends. He uses his phone regularly for his personal enjoyment.

3. Defendant Humana, Inc. ("Humana") is a company that sells health insurance products.

4. Humana makes prerecorded calls to people with cellular telephones who are not Humana customers. The telemarketing calls do not provide an opt-out mechanism. Humana did not have an internal Do Not Call registry prior to making these telemarketing calls or did not honor requests timely.

5. Humana knows that making prerecorded calls to people without their consent, failing to have an internal Do Not Call registry or timely honoring opt-outs, and not providing opt-out information on prerecorded calls is an invasion of people's privacy and violates the Telephone Consumer Protection Act ("TCPA").

6. Despite this knowledge, Humana makes tens of thousands of robocalls using prerecorded messages to non-customers, including David, in violation of the TCPA.

7. David, and some Class members, have tried to eliminate the harassment, invasion of their privacy and other damages from the unauthorized calls by requesting that Humana stop calling them and telling Defendant it has the wrong number, but even that has not worked.

8. These calls have caused David and the Class members frustration, stress, and anxiety. The calls hinder them from enforcing their rights to make a do-not-call request. The calls cause them to avoid looking at their phones or answering calls when it may have been important. The calls reduce their phones' storage and battery life. Opt-out requests are ignored causing frustration and stress. Personal time is lost. In short, the calls invade their privacy, diminish the value of their phones and their enjoyment of life, and cause a nuisance, an annoyance, and an intrusion into their seclusion.

9. "In enacting the TCPA, Congress found that banning robocalls was 'the only effective means of protecting telephone consumers from this nuisance and privacy invasion.' … In plain English, the TCPA prohibited almost all robocalls to cell phones." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2344, 207 L. Ed. 2d 784 (2020).

10. Because of Defendant's continuing violations of the law, David brings this action for himself and for other similarly situated people in the United States to enjoin these abusive practices, and for damages.

**JURISDICTION AND VENUE**

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C § 227.

12. This Court has personal jurisdiction over Defendant because its principal place of business is in Kentucky.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is located within this district, and a significant portion of the facts giving rise to this lawsuit occurred in this District.

## PARTIES

14. Plaintiff David Elliott is an individual and is a resident of Georgia.

15. Defendant Humana, Inc. is a Delaware Corporation with its principal place of business in Kentucky.

## FACTUAL ALLEGATIONS

16. David restates and realleges the allegations set forth above.

17. David, and Class members, have residential cellular telephones and have had their privacy and the use of their phones invaded by the prerecorded, non-emergency, telemarketing calls from Humana.

18. David is the residential subscriber of the cell phone number 706-455-3020 and has been for four years. David uses this number for personal use and does not use it in any business.

19. David is not now, and never has been, a customer of Humana.

20. David's number has been on the National Do Not Call Registry for four years.

21. Humana made more than twenty-six prerecorded calls to David's cell phone between February 8, 2022, and April 28, 2022.

22. Humana made the calls to David and Class members using an artificial or prerecorded voice message. This is based on the following facts:

   i. When the calls were answered, a message played.

   ii. No human being was on the call.

   iii. When the call was answered, no person responded to David's greeting.

   iv. There was no response to the inquiry — who is this?

   v. No person ever got on the line.

23. Humana does not provide health care. Rather, Humana sells insurance products.

24. The calls, which purport to be for scheduling a health assessment, are part of a telemarketing campaign to re-enroll customers and to sell new products.

25. The recording states the call is from Humana. When the number which appears on the caller identification was called back, someone from Humana answered the call stating that Humana had made the calls.

26. David told Defendant that it had the wrong number and asked Humana to stop calling him at least two times, yet he received at least sixteen prerecorded calls thereafter over the course of multiple weeks.

27. Once Humana learned it was calling the wrong number, Humana could have stopped the calls immediately, or even within a few days, but Humana continued to call.

28. Humana acknowledged that it was trying to reach someone else – a woman named Debbie L.

29. David does not know Debbie L. and did not authorize her or anyone else to use his cell phone number.

30. David never provided his phone number to Humana.

31. Many people have reported prerecorded calls from Humana without consent.

32. Humana willfully made the calls and continued to call after being told to stop.

33. These calls have caused David and the Class members frustration, stress, and anxiety. The calls were abandoned. The calls caused them to avoid looking at their phones and answering calls when it may have been important. The calls reduce their phones' storage and battery life. In short, the calls invade their privacy, diminish the value of their phones and their enjoyment of life, and cause a nuisance, an annoyance, and an intrusion into their seclusion.

## LEGAL STANDARD

34. **Prerecorded Calls**. Under the TCPA, an automatic, artificial, or prerecorded voice call to a cellular telephone service is unlawful other than a call made for emergency purposes or made with the prior express consent of the called party. Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A).). *See Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1170, 209 L. Ed. 2d 272 (2021)*; *Barnett v. First Nat'l Bank of Omaha*, Civil Action 3:20-cv-337-CHB, 9 (W.D. Ky. Mar. 3, 2022).

35. **Prerecorded Calls Opt-Out Mechanism**. When "a live sales representative is not available to speak with the person answering the call… the telemarketer or the seller must provide… [a]n automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call." 47 U.S.C. § 64.1200(a)(7)(i).

36. **Internal Do Not Call List**. Before making a call, telemarketers must have a procedure in place that includes at least the following: (1) having a written policy relating to a do-not-call list; (2) training personnel engaged in telemarketing on the existence and use of the do-not-call list; (3) recording and disclosing do-not-call requests; and (4) maintaining do-not-call lists. 47 C.F.R. § 64.1200(d)(1)-(7).

37. When a person asks for calls to stop, the telemarketer "must record the request and place the subscriber's name, if provided, and telephone number on the do not call list at the time the request is made." 47 C.F.R. § 64.1200(d)(3).

38. The telemarketer "must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made." *Id*.

39. It is an actionable violation of these rules to fail to have and implement the policies before calling. It is not necessary that the called party attempt to opt-out. See, *Smith v. Truman Rd. Dev., LLC*, No. 4:18-CV-00670-NKL, 2020 WL 2044730, at *16 (W.D. Mo. Apr. 28, 2020).

40. In determining whether a call constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. See *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

41. Calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. See *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003) (hereinafter "2003 FCC Order"). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id*.

## CLASS ACTION ALLEGATIONS

42. Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself, and three Classes of persons similarly situated in order to remedy the ongoing unlawful business practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

43. **Class Definitions.** Plaintiff proposes the following three Classes:

> **The Prerecorded Calls Class**. All persons or entities throughout the United States (1) to whom Humana placed, or caused to be placed, a call (2) directed to a number assigned to a cellular telephone service, but not assigned to a current account holder of Humana (3) in connection with which Humana used an artificial or prerecorded voice, and (4) four years from the filing of this action through the date of class certification.

> **The Lack of Interactive Opt-Out Mechanism Class**. All persons or entities throughout the United States (1) to whom Humana placed, or caused to be placed, a call (2) directed to a number assigned to a cellular telephone service, but not assigned to a current account holder of Humana (3) in connection with which Humana used an artificial or prerecorded voice, and (4) the messages did not have an automated, interactive voice- and/or key press-activated opt-out mechanism that enabled the called person to make a do-not-call request prior to terminating the call (5) four years from the filing of this action through the date of class certification..

> **The Internal DNC Class**. All persons throughout the United States (1) to whom Humana placed, or caused to be placed, a call (2) directed to a

number assigned to a cellular telephone service, but not assigned to a current account holder of Humana (3) in connection with which Humana used an artificial or prerecorded voice, and (4) and for which Humana did not have a proper Internal Do Not Call Registry prior to making the call or did not timely honor a do not call request (5) four years from the filing of this action through the date of class certification.

44. A prospective class must meet a total of seven independent requirements. An identifiable class must exist, the definition of the class must be unambiguous, and the named representative must be a member of the class. The remaining five requirements originate in Rule 23(a) and (b): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Finally, "in addition to the prerequisites of Rule 23(a), a party seeking class certification must show that the class action is maintainable under Rule 23(b)." *J.B-K-1 v. Meier*, No. 3:18-CV-00025-GFVT, 2020 WL 1227761, at *4 (E.D. Ky. Mar. 13, 2020).).

45. **Numerosity.** Proposed classes with hundreds of members are routinely held to satisfy the numerosity requirement. *J.B-K-1 v. Meier*, No. 3:18-CV-00025-GFVT, 2020 WL 1227761, at *5 (E.D. Ky. Mar. 13, 2020).). In determining whether to certify a class, it is not necessary for a court to know the precise number of class members. Rather, the court may rely upon reasonable inferences drawn from the known facts. *Id.* at *5. Here, the Classes are so numerous that joinder of all members would be impracticable. The exact size of the Classes and the identity of the members are readily ascertainable from Defendant's business records and likely number in at least the tens of thousands. Upon information and belief, Defendant makes millions of calls a year.

46. **There are questions of law or fact common to the class.** There are questions of law and fact common to the proposed Classes. Traditionally, it has been the rule that to satisfy the commonality requirement, only one single issue that is common to all members of the class is required, not multiple issues. *J.B-K-1 v. Meier*, No. 3:18-CV-00025-GFVT, 2020 WL 1227761, at *6 (E.D. Ky. Mar. 13, 2020) The common questions herein include, *inter alia*:

    i. Did Plaintiff receive a prerecorded call from Humana?
    ii. Does Humana maintain an internal DNC list?
    iii. Did Humana timely honor requests?
    iv. Does Humana provide an automated opt-out mechanism on prerecorded calls?
    v. Were the calls for an emergency purpose?
    vi. Were the calls telemarketing calls?
    vii. Were Humana's actions willful or knowing?
    viii. Are class members entitled to the statutorily mandated relief?
    ix. Does liability attach to Humana's wrong number calls?

Common answers to these questions will drive the resolution of the litigation.

47. **Typicality**. Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. This requirement seeks to ensure that the interests of the named representatives align with the interests of the members of the proposed class. *J.B-K-1 v. Meier*, No. 3:18-CV-00025-GFVT, 2020 WL 1227761, at *7 (E.D. Ky. Mar. 13, 2020) A named plaintiff's claim is typical if the claim arises from the same practice, event or course of conduct giving rise to the other class members claims and claims are based on the same legal theory. Plaintiff's claims herein are typical of those of the Classes he seeks to represent. Plaintiff's and the Class members claims arise from the same conduct of Defendant: improper prerecorded calls, failure to offer an automated opt-out mechanism, and failure to maintain an internal DNC list and timely honor requests. There are no unique issues or defenses to Plaintiff's claims. Plaintiff's interests align with members of the Class.

48. **Adequacy.** The named representatives must have common interests with the unnamed members of the class, and it must be apparent that the named representatives will vigorously prosecute the interests of the class through qualified counsel. *J.B-K-1 v. Meier*, No. 3:18-CV-00025-GFVT, 2020 WL 1227761, at *8 (E.D. Ky. Mar. 13, 2020).). Plaintiff is an adequate representative of the Classes because his interests are common with the interests of the Classes, and he will fairly and adequately protect the interests of the Classes by pursuing this matter. Plaintiff is represented by counsel competent experienced in TCPA and class action litigation.

49. **The Class Is Clearly Defined and its Members Identifiable**. A class is sufficiently ascertainable when class members can be identified based on objective criteria. *See, Rikos v. P&G*, 799 F.3d 497, 526 (6th Cir. 2015). The Classes are ascertainable using objective criteria. Herein, methods to be used to identify wrong numbers are Defendant's own records. In the context of calls from a health care insurer, unlike a debt collector, there is almost a zero percent chance that someone would say, "wrong number," if they were a customer. Using Defendant's call logs, reverse lookup procedures and various other techniques, class members can be identified in an efficient way. Similar classes have been found to be readily ascertainable and have been recently certified. See, *Brown v. DirecTV, LLC*, 2021 WL 5755044 (C.D. Cal. Dec. 1, 2021), *Wesley v. Snap Fin., LLC*, 2022 WL 1135793 (D. Utah Apr. 18, 2021); and *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022) (The Court will join the other courts that have certified TCPA wrong number cases).

50. **Rule 23(b)(3) issues**. The questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication and deters illegal activities. The interests of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Managing this case as a class action should have no significant difficulties. It will prevent inconsistent results.

51. The law applicable to each putative class member is identical. The facts are too. Ultimately, the basic questions in this case are the same for all Class members. Precedent demonstrates these questions can be litigated as a class.

## FIRST CAUSE OF ACTION

**Violations of 47 U.S.C. § 227(b) & 47 C.F.R. 64.1200(a)**

**(On Behalf of Plaintiff and the Prerecorded Call Class)**

52. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference as though fully stated herein.

53. Defendant's use of an artificial voice or prerecorded voice to contact Plaintiff and members of the Prerecorded Calls Class violated 47 U.S.C. § 227(b) and 47 C.F.R. 64.1200(a).

54. As a result of Defendant's violations of 47 U.S.C. § 227(b) and 47 C.F.R. 64.1200(a), Plaintiff and members of the Prerecorded Calls Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

55. Because Defendant knowingly and willfully violated 47 C.F.R. 64.1200(a), the Court should treble the $500.00 per-call award to $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B)-(C).

56. Plaintiff and members of the Prerecorded Calls Class are also entitled to injunctive relief prohibiting Defendant from using an artificial voice and prerecorded voice when making calls without the prior consent of the called party.

## SECOND CAUSE OF ACTION

**Violations of 47 C.F.R. § 64.1200(d)**

**(On Behalf of Plaintiffs and the Internal Do Not Call Class)**

57. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference as though fully stated herein.

58. Defendant's failure to follow the internal do not call requirements before making calls to Plaintiff and members of the Class constitutes a violation of 47 C.F.R. § 64.1200(d).

59. As a result of Defendant's violation of 47 C.F.R. § 64.1200(d), Plaintiff and members of the Internal Do Not Call Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 C.F.R. § 64.1200(d).

60. Because Defendant knowingly and willfully violated 47 C.F.R. § 64.1200(d), the Court should treble the $500.00 per-call award to $1,500.00 in statutory damages for each violation.

61. Plaintiff and members of the Internal Do Not Call Class are also entitled to and seek injunctive relief prohibiting Defendant from violating the requirements of 47 C.F.R. § 64.1200(d).

### THIRD CAUSE OF ACTION

**Violations of 47 C.F.R. § 64.1200(a)(7)**

**(On Behalf of Plaintiffs and the Lack of Interactive Opt-Out Class)**

62. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference as though fully stated herein.

63. Defendant is in violation of 47 C.F.R. § 64.1200(a)(7) by failing to provide an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call.

64. As a result, Plaintiff and members of the Lack of Interactive Opt-Out Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation.

65. Because Defendant knowingly and willfully violated 47 C.F.R. § 64.1200(a)(7), the Court should treble the $500.00 per call award to $1,500.00 in statutory damages for each violation.

66. Plaintiff and members of the Lack of Interactive Opt-Out Class are also entitled to and seek injunctive relief requiring Defendant to provide an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call, including brief explanatory instructions on how to use such mechanism.

## RELIEF REQUESTED

Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

    A.    Certification of the proposed Classes.

    B.    Appointment of Plaintiff as class representatives.

    C.    Appointment of the undersigned as counsel for the Classes.

    D.    An order enjoining Defendant as set forth above.

    E.    An award of damages to Plaintiff and the Classes as allowed by law; and

    F.    Orders granting such other relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the Complaint so triable.

Dated: June 15, 2022

        **LawHQ, P.C.**

        <u>/s/ La Bravia Jenkins</u>
        La Bravia Jenkins
        299 S. Main St. #1300
        Salt Lake City, UT 84111
        (385) 285-1090
        labravia.jenkins@lawhq.com