UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| DAVID ELLIOT, *Plaintiff,* v. HUMANA *INC*. *Defendant.* | Case No. 3:22-CV-329-RGJ-CHL |

**PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS**

Plaintiff David Elliot ("Elliot" or "Plaintiff") respectfully moves this Court to compel Defendant Humana Inc. ("Humana" or "Defendant") to designate a qualified Rule 30(b)(6) witness to fully address the information in the documents Humana produced after the first two 30(b) witnesses testified and to produce discovery materials from Humana's internal "CGX" system which are undeniably relevant materials. Both of these discovery items are relevant to certifying the class in this Telephone Consumer Protection Act ("TCPA") suit.

**I.   INTRODUCTION**

As a corporate defendant, Humana has two principal obligations in discovery. First, Humana has an obligation to produce discoverable documents from its internal systems—systems that only it, rather than Elliot—has knowledge of. After the latest 30(b) deposition it is clear it has not done so.[1] Second, Humana must designate appropriate Rule 30(b)(6) witnesses that can testify competently to the subject matter identified by Elliot and agreed to by the parties. Humana has produced three 30(b) witnesses, but none of them could provide the complete information sought

---

[1] Humana states that it has produced a lot of information in this case. This is irrelevant to its obligations in a class action. Humana must produce relevant discoverable information, not just what it designates as sufficient.

1

through the deposition process. Elliott has exhausted all reasonable efforts to meet and confer with Humana regarding these issues.

This action alleges a class of pre-recorded call recipients who were not the clients intended by Humana to receive these calls. This type of class is often referred to as a "wrong number" class. Plaintiff David Elliot is a member of this putative class as he received twenty-two prerecorded calls, even though he was not the member Humana intended in its outreach. Elliot told Humana it had the wrong person or wrong number repeatedly. Thus, to identify the number of other potential class members, and to show they were treated in a similar manner, Elliot sought discovery and deposition testimony on how Humana documents when people tell Humana it has reached the wrong number or when they request that Humana stop calling, as well as where Humana keeps this electronically stored information ("ESI").

To facilitate class discovery, Elliot sought discovery on identifying and extracting data related to wrong numbers. In addition to written discovery requests, Plaintiff sought this discovery from the hCAT system based on testimony from Humana 30(b) witness Amber Williams, who said that all relevant data, including designations of wrong numbers, resided in Humana's hCAT system. *See* Deposition of Amber Williams Transcript Excerpts ("Ex. A") at 133:20–24. Subsequent testimony from Humana's latest Rule 30(b) witness, produced after the end of the discovery period, however, shows that comprehensive versions of the relevant data may, in fact, *only* exist on a different system—Humana's CGX system. Plaintiff moves the Court to require Humana to produce the discoverable data from the CGX system.

Additionally, despite having produced three 30(b) witnesses, none of the witnesses were able to fully testify to important information contained in Humana's document production. Plaintiff seeks an order requiring the production of an appropriate 30(b) representative.

Humana has engaged in obstructionist tactics, delays, and a game of hide the ball. Humana's true objective seems to have been to obstruct Elliot from obtaining relevant data by extending the process until the class discovery deadline expired. But Humana's discovery abuses should not be condoned by this Court. Humana should be compelled to produce an appropriate witness and to produce any ESI that it has withheld. Elliot further requests that the Court impose sanctions under Federal Rule 37, as Humana's actions have not only misled Plaintiff but have also wasted the Court's time and resources.

## II. ARGUMENT

### A. Humana must identify a qualified witness under Rule 30(b)(6).

Humana has produced three 30(b)(6) witnesses, all of which lacked sufficient knowledge and were, therefore, unable to testify in detail about the subjects described in Elliot's notices of deposition. *See, e.g.*, Email Correspondence on 30(b)(6) Deficiencies, July 17–18, 2024 ("Ex. B") at 7–10; *see also infra* Ex. E at 2–10; Ex. I at 2–5; Ex. J at 4–7. Not only were the witnesses unprepared and unable to testify as to critical issues and documents, but as demonstrated below, the three witnesses provided conflicting and contradictory testimony on key items.

Federal Rule of Civil Procedure 30(b)(6) provides that after a plaintiff notices a deposition "describ[ing] with reasonable particularity the matters for examination," the corporate defendant "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Fed. R. Civ. P. 30(b)(6). Additionally, "[t]he persons designated *must testify about information known or reasonably available to the organization.*" *Id.* (emphasis added).

The testimony under Rule 30(b)(6) is different from that of a "mere corporate employee" because it represents the knowledge of the corporation, not the individual. *White v. Wal-Mart*

*Stores E., L.P.*, 2018 WL 5083891, at *5 (W.D. Ky. Oct. 18, 2018) (citing *Schall v. Suzuki Motor of Am., Inc.*, 2017 WL 4050319, at *5 (W.D. Ky. Sep. 13, 2017)). "Preparation of a Rule 30(b)(6) witness is an active process," and a designated witness must "review all matters known or reasonably available to the corporation in preparation for the deposition, even if the documents are voluminous and burdensome to review." *Champion Foodservice, LLC v. Vista Food Exchange, Inc.*, No. 1:13-cv-1195, 2016 WL 4468000, at *13 (N.D. Ohio Aug. 23, 2016).

Here, Elliot's Rule 30(b)(6) Notices provided for Humana to select a witness who could explain call practices, call disposition codes, the documents produced, do not call and wrong number requests, and IT systems integration. Specifically, Plaintiff's Notices of Deposition Pursuant to 30(b)(6) sought testimony about, among other things: (1) policies, procedures, and practices, relating to outgoing telephone calls like the ones made to Plaintiff; (2) technical call disposition codes reflected in Defendant's records, including wrong number, invalid, and those indicating a prerecorded message was left; (3) policies, procedures, and practices concerning internal "do not call" designations; (4) interactions among Humana's internal systems as related to wrong number designations and the internal do not call list ; and (5) IT system processing codes related to dialer calls as well as how they record do not call or wrong number requests. *See* Notices of Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Ex. C").

Despite these Notices, Humana's 30(b)(6) witnesses have inconsistently testified about the interactions between IT and various communications systems that occur in the ordinary course of business during call campaigns, as well as to the meaning of terms within documents. For instance, in the first 30(b) deposition:

> Q   And what is the hCAT system?
>
> A   That's who wrote the application. Our IT wrote the application, which is what an hCAT is. And this is derived from the outreaches placed to a member ID.

4

| | |
|---|---|
| Q | And how does the hCAT system relate to the other systems we've talked about, the dialer and I think there was one other one we had mentioned? CGX. They all talk together. They are all used in conjunction to operate our business. |
| Q | Okay. And how do they operate in conjunction? |
| A | That is something that I am not equipped to describe with the exception of hCAT is derived by our IT partners. They have to get outcomes back and however all of those systems talk to each other I am unable to speak to. |

Ex. A at 120:1–17. Then, in the second 30(b) deposition:

| | |
|---|---|
| Q | Where else might it end up in the lines of business that you're involved with? |
| A | HCAT, and I believe various levels of communication of CGX but that's outside of my scope so I can't say for sure where else it goes after that. |
| Q | What is CGX? |
| A | It's another internal platform used. Like customer service. |
| Q | Who would know about CGX? |
| A | I can't answer. I don't work with them. |
| Q | Do you know if the dialer communicates with the CGX platform? |
| A | The dialer communicates with hCAT. The dialer connects directly with hCAT. Beyond that it may connect with CGX. I don't know for sure. |

Deposition of Melinda D'Ippolito Transcript Excerpts ("Ex. D") at 14:24–15:19.

In view of these deficiencies, Humana agreed to provide a third 30(b) witness (Angelle Guarisco) to testify on "Questions about documents produced by Humana subsequent to the depositions of Ms. Williams and Ms. D'Ippolito; [t]he 'do not call' (MCRE) list in terms of how the document is generated and maintained, and specific information about the various fields set forth on the DNC list; and, Technical questions for an IT representative regarding several specific items such as the underlying mapping for the various databases, how those databases 'communicate' with each other, and 4 specific columns on the 'end of day report' (Columns AV,

AW, AX, and AY)." *See* Email "Re: Discovery" from Humana Counsel, August 12, 2024 ("Ex. E") at 2.

Ms. Guarisco, however, was unprepared to testify as to the meaning of terms in the documents produced after the first two 30(b) depositions or to critical IT issues and testified differently than the other two about the hCAT and CGX systems:

| | | |
|---|---|---|
| Q | | Do you know what the codes are -- represent in this column? |
| A | | I know generally. I'd have to look at the table that lists each code's explanation. There are a couple I'm familiar with, but I don't know all of them. There's quite a few of them. |
| Q | | Okay. Can you tell me what code 38 is? |
| A | | Not without looking at the table. |
| Q | | So you don't know, other than what it says on the table, what that means? |
| A | | If I saw what it said on the table, I might be able to give you a little context. But as far as remembering specifically what a code 38 is, I can't tell you offhand. |
| Q | | I'll get back to that. And if I told you that the code 38 indicated that the phone number had been disconnected, would that help refresh your recollection? |
| A | | Yes. |
| Q | | Okay. And what does that mean, that the phone number had been disconnected? |
| A | | As far as I understand, that means that the dialer called a number that was not in service. It was – you know, it got that little tone that indicates this is not a working phone number. |
| Q | | And do you know what happens in the -- any of the other systems when the dialer gets a 38? |
| A | | I do not. |
| Q | | Who would know that? |
| A | | I would think someone on the dialer team. They could probably tell you. I can tell you what I assume, but I – you know, I don't know for certain. |
| Q | | Okay. Well, go ahead and tell me what you assume since it's one of the topic areas that we asked for a representative today to testify on. |

6

| | |
|---|---|
| A | So as far as I understand, it doesn't do anything. The dialer does not communicate back to CGX or HCAT. It would record the attempt to that number in the system so I could go in and see that the number was attempted. And in the note, it would indicate something to the effect of it not being a good number. |
| | But it doesn't update that phone number to be removed from the record. As far as other systems, I'm not sure. I can't tell you what it does Humana-wide, but it does not communicate back to CGX or HCAT in that way. |

Deposition of Angelle Guarisco Transcript Excerpts ("Ex. F") at 22:21–25:5.

| | |
|---|---|
| Q | Okay. And can you tell me what the column headings are? |
| A | I don't have them committed to memory. I'm assuming column B is a phone number. H is the source of the DNC. I don't remember what the column headings are specifically. |

*Id.*, at 59:1–9.

| | |
|---|---|
| Q | There are some designations of 15. Do you know what the designation 15 is? |
| A | I don't, no, but I do see in column H that there are user IDs; so it looks to me these were internally entered. |
| Q | Meaning that someone was on a call with an agent and asked to be put on the do-not-call list? |
| A | Probably. Again, I can't say that for sure. I don't know, you know, does every department contribute to this list? I'm not sure. So that would be my assumption based on what I understand. |

*Id.*, at 66:9–21.

| | |
|---|---|
| Q | So who would -- who would maintain this document? What department maintains this document? |
| A | I am assuming it's telecom, but I can't say that for sure. My interaction with the do-not-call list is just that we crosscheck it before we dial any numbers. So as far as who pulled it, who owns it, I can't say for sure. |

*Id.*, at 68:14–21.

| | |
|---|---|
| Q | And what is Stratcomm? |
| A | That is one of the databases that feed do-not-call information to Humana. |
| Q | Who maintains that database? |
| A | That I do not know. |

7

    Q    Do you know where it's maintained?

    A    I believe it's external, but I don't know for sure.

    Q    And it's your understanding that this list would include both Humana members who said do not call me and non-Humana members who said do not call me?

    A    I am not sure. I'm sorry. I don't know.

    Q    Who would know that?

    A    I would assume the telecom department, but I'm not sure.

*Id.*, at 70:1–17.

    Q    What is a "Dec-38?"

    A    I am not sure. I mean, those look to be month abbreviations, but I can't say that for sure, and I don't know what the two digits after that would represent.

    Q    Do you know why it's in column H, why -- what that represents, the fact that it's Dec-38 in column H?

    A    I do not.

    Q    And I assume Dec-47 you don't know as well?

    A    Correct.

    Q    Or any of these entries in this column that indicate what look like a month and a number?

    A    Correct. I am not familiar with what that means or how that is generated.

*Id.*, at 71:12–72:2.

    Q    Okay. Again, do you know who would be able to testify as to what the meaning of this document is?

    A    I'm not sure who pulled it or owns it. I'm assuming the telecom department, but I don't know for sure.

*Id.*, at 74:25–75:6.

    Q    So if you look at the CGX system for a number that somebody said is not the right number, it's not your client's number, it's my number, it's a wrong number, you can look in the CGX system under that telephone number or that client and see an invalid, not-permission-to-call

8

|   |   |
|---|---|
|   | designation? |
| A | Yes. You would have to go into that member's CGX profile and go to that particular area where the phone number information is. It's not like right in front of you, when you pull up the member, but it is in CGX for you to get to. |

. . .

|   |   |
|---|---|
| Q | But you don't work with the CGX system, as the back offices would like to call it? |
| A | Correct. I work more with the front end of it. |
| Q | Okay. So would it be someone who works with the CGX system that would be able to give me the answer to that question? |
| A | Yes. There is a CGX team. I don't know who's on it, but there is a group of people who manage CGX. |

*Id.*, at 144:8–45:11. Of the forty-two times the phrase "I don't know" appears during Ms. Guarisco's deposition, thirty-five pertain to topics about which Humana had notice and to which Humana agreed to provide qualified testimony.

It is clear that Humana has failed to produce a witness with sufficient knowledge or to prepare its witnesses on relevant, noticed topics. Humana has a duty to provide a sufficiently knowledgeable and prepared 30(b)(6) witness, especially when discovery involves internal databases. *See Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 244 (N.D. Ohio 2017) ("[O]nly Defendant knows how it implemented its own database. Therefore, Defendant must either make an individual who has knowledge of its documents available for deposition—even if this means [the 30(b)(6) witness] must be deposed again—or respond to Plaintiff's [interrogatories and requests for production]."). Accordingly, Plaintiff respectfully asks this Court to compel Humana to produce a 30(b)(6) witness who is sufficiently prepared to testify to the topics identified.

## B. The testimony of designated spokespersons underscores Humana's deliberate effort to withhold requested records.

Humana has also failed to provide clear explanations or engage in transparent communication regarding what data can be searched and where it is stored. "[T]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). After engaging in good faith efforts to resolve a dispute, a party may move the court to compel discovery under Rule 37 of the Federal Rules of Civil Procedure if it contends that another party has not sufficiently addressed discovery requests or if the responses given are evasive or incomplete. Rule 34(b)(2)(E) governs the production of ESI and directs as follows:

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms . . ..

Moreover, "documents will be within the possession, custody or control of a responding party, for discovery purposes, if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand; legal ownership of the document is not determinative." *Servpro Intelletual Prop. Inc. v. Blanton*, No. 3:18-CV-121-RGJ-CHL, 2019 WL 13215342, at *12 (W.D. Ky. Oct. 24, 2019) (internal citation omitted).

Elliot repeatedly requested, and is entitled to, production of data relevant to his class allegations as the ESI exists on Humana's databases. Throughout discovery, Humana has refused to produce any information from its CGX system, despite Elliot's repeated requests and explanations of the requested information's relevance. Humana often confuses the issue by arguing that its network of systems is unsearchable and would contain no relevant information. Humana's

attempt to hide what is discoverable, in defiance of the Rules, or to conflate its systems should be rejected by this Court.

In relevant part, Elliot requested this information as early November 22, 2022:

REQUEST [FOR PRODUCTION] NO. 12:

**Produce all databases which show wrong person, wrong number, bad number and similar notifications**, each data dictionary that goes with the database, each table that contains call data or information about a wrong person, wrong number, bad number and similar notifications, and all documents that define all codes and fields in each such table, and define the nature of the data in each field (e.g., phone number called, date called, call duration, etc.) in the four years prior to the filing of the Complaint to the present.

REQUEST [FOR PRODUCTION] NO. 14:

Produce records for all calls that were "wrong number" calls as determined by any method that Humana uses for designating such calls, wrong number coding, freehand account notes, and information regarding their removal by the system in the four years prior to the filing of the Complaint to the present.

*See* Humana's Responses to Plaintiff's First Set of Interrogatories, Request for Production of Documents, and Request for Admissions, ("Ex. G"), at 31–33 (emphasis added). In reply, Humana claimed that the CGX system was unsearchable. *Id.* at 32–34. After Humana identified the CGX system as a possible location of discoverable information in its responses to Plaintiff's interrogatories and requests for production, Plaintiff inquired into Humana's search efforts in a follow-up interrogatory and emails. Humana's responses were again vague and incomplete:

INTERROGATORY NO. 6:
Please state with specificity what efforts Humana has made to search invalid numbers in their member database through Clinical Guidance Exchange notes ("CGX").

ANSWER: Humana objects to the extent Interrogatory No. 6 purport to seek information protected by the attorney-client privilege and the work-product doctrine. Without waiving its objections, all numbers associated with a particular member are noted in the individual member files. If a number is determined to be "invalid" that number will be taken off the call list for the following day and the number will be designated in the individual member file as "invalid."

11

*See* Defendant Humana Inc.'s Responses and Objections to Plaintiff's Second Set of Interrogatories and Requests for Production of Documents, *("*Ex. H"), at 7. Plaintiff followed up with a request that Humana produce, among other things, relevant information from the CGX system. *See* Email "Re: Discovery Issues" from Plaintiff's Counsel, April 17, 2024 ("Ex. I") at 2 ("We need any invalid designation related to any number called for the class period," as well as "**whatever information CGX contains related to the above items**" (emphasis added)). Again, on May 10, 2024, Plaintiff's counsel requested, by email, that Humana "provide outputs with all fields available within the given systems during the proposed class period from … [the] CGX … where an "invalid" flag was placed." Email "Re: Elliott v. Humana" from Plaintiff's Counsel, May 10, 2024 ("Ex. J") at 3–4.

The parties were expected to collaborate in good faith. But only after months of follow-up, multiple meet-and-confers, two Rule 30(b)(6) depositions, and a total of four telephonic conferences with the Court on discovery issues, Humana finally agreed to conduct key-word searches of its databases. Despite repeated claims that Humana could not search its hCAT or CGX system for keywords, Humana conducted the requested keyword search for its hCAT system once this Court ordered it to do so. However, conflicting witness testimony may explain why Humana reversed course on the searchability of its hCAT system, all while ignoring the outstanding requests for the same data from the class period as kept on the CGX system. In contrast to testimony by Ms. D'Ippolito that "[t]he dialer communicates with [and] connects directly with hCAT," Ms. Guarisco testified that "[t]he dialer does not communicate back to CGX or HCAT." *Compare* Ex. D at 15:16–17; *with* Ex. F at 24:19–21.

Critically, Humana represented to Elliot that certain information was contained in the hCAT system as well as the CGX system. *See* Ex. D at 87:1-10; *see also* Ex. A at 133:8 – 134:6.

12

However, through Ms. Guarisco's deposition, Humana revealed that a significant amount of discoverable information (which was continuously sought by Elliot) may only exist within Humana's CGX system—rather than the hCAT system from which Humana decided to produce ESI responsive to Elliot's requests for production. Specifically, Humana, through Ms. Guarisco, testified that wrong number designations for individuals who received calls from Humana are, in fact, contained in the CGX system and are not available in the hCAT system:

> Q  Okay. You stated, I believe, that in the CGX call notes, the -- if someone said this is the wrong number, that would be designated there?
>
> A  Yes.

Ex. F at 13:9–12.

> A  When we document a phone call, you -- there is an action you take in HCAT. You click this button that says I need to record an action. And it gives you a list of the phone numbers that are available for this particular member. You click the little tick box next to the phone number that you attempted or called or talked to someone on. And then the free text box appears where you type the note that says, you know, I talked to [B.E.], et cetera, et cetera. All of that is recorded in that free text box. You save it, enter it -- you know, whatever that option is at the end to say you're done. And that's it. And then it goes to CGX, almost real time.
>
> Q  Okay. And is it still visible in HCAT?
>
> A  No. All you would see in HCAT was the attempt. So if you're looking at HCAT actions, you might see attempt one or attempt two. You would see evidence that a call took place, but you would not see anything about the outcome of it.
>
> Q  Okay. Do you know if Humana has produced any documents from the CGX system?
>
> …
>
> Q  Let me ask a different question. Have you seen any documents in this case from the CGX system?
>
> A  Not off the top of my head. I can't say for certain that I haven't, but I'm not recalling any right now.

*Id*. at 17:13–18:18.

> Q  And, again, forgive me, if the agent marks it invalid, that's in the HCAT system?

13

> A   No. They would mark the phone number as invalid in CGX, and then subsequently it would disappear from HCAT.

*Id.* at 50:16–20. Humana, through Ms. Guarisco, has now testified that much of the information sought throughout discovery was actually *deleted* from the hCAT system and only housed in the CGX system. Nevertheless, Humana did not make this information known, producing only information contained in the hCAT system, which it knew would not encompass the full scope of material requested by Elliot. Elliot is entitled to relevant information in the CGX system, and Humana's failure to produce ESI for the class period or otherwise indicate where the data is housed within Humana's internal systems until the eleventh hour should not be rewarded.

Courts have regularly held that "unsearchable" database information such as this should ordinarily be produced. In fact, the Northern District of Ohio has addressed this exact scenario, even holding that a TCPA defendant had a duty to take proactive steps to identify wrong number designations in a database it previously claimed was unsearchable. *See, e.g.*, *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 243-44 (N.D. Ohio 2017) (granting plaintiff's motion to compel and noting that "[t]he Court is not persuaded by Defendant's objection that the information Plaintiff seeks requires it to produce ESI in a manner in which it is not normally kept. Courts have long recognized that defendants may be required under the Federal Rules to create computer programs to search an existing database for relevant information"); *Anti-Monopoly, Inc. v. Hasbro, Inc.,* No. 94CIV.2120 (LMM) (AJP), 1995 WL 649934, at *2 (S.D.N.Y. Nov. 3, 1995) ("The law is clear that . . . the producing party can be required to design a computer program to extract the data from its computerized business records, subject to the Court's discretion as to the allocation of the costs of designing such a computer program."); *Apple Inc. v. Samsung Electronics Co. Ltd.*, No.: 12–CV–0630–LHK (PSG), 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013) ("While this court has held that a party should not be required to create completely new documents, that is not

14

the same as requiring a party to query an existing dynamic database for relevant information. Courts regularly require parties to produce reports from dynamic databases, holding that the technical burden…of creating a new dataset for the instant litigation does not excuse production." (internal quotation marks omitted)).

Humana's conflicting claims, therefore, that its systems are unsearchable cannot shield it from its obligation to produce relevant information that Plaintiff repeatedly requested. *See Merin v. Atlas Van Lines, Inc.*, No. 13 C 3587, 2015 WL 12826474, at *5–6 (N.D. Ill. Oct. 23, 2015) (requiring defendant to write script to search internal databases when plaintiff's expert needed the data to determine class membership and damages). Notably, Humana previously tried the same tactic with information contained in the hCAT system—arguing that the hCAT system contained no discoverable information and, regardless, was unsearchable. However, when ordered by the court to run searches regarding potential "invalid" number designations, Humana capitulated and conducted the search that it had claimed was impossible to do for months. This Court should not permit Humana to make the same baseless, self-serving arguments when it comes to searching for and producing plainly discoverable information from the CGX system.

Further, regardless of which specific databases Plaintiff has asked Humana to search, it is Humana who has the duty to produce relevant information in discovery. *See Specialty Auto Parts U.S.A. Inc. v. Holley Performance Prod., Inc.*, No. 117CV00147DJHLLK, 2021 WL 7906856, at *1 (W.D. Ky. Nov. 2, 2021) ("It is the party resisting discovery [that] bears the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure.") (internal quotation marks omitted). Plaintiff specifically requested that Humana produce "all databases which show wrong person, wrong number, bad number and similar

15

notifications…" The burden to identify which databases contain such relevant information does not rest on Plaintiff's shoulders. Instead, it is Humana that bears the burden. This Court's May 31, 2024 Protective Order also directs Humana to produce all "invalid designation . . . of Humana members in the Special Needs Plan that was the subject of the calls like those placed to Plaintiff." *See* ECF 56. This obligation runs across databases, it is not exclusive to only those that Humana chooses to emphasize to Plaintiff.

Again, Humana should have produced this discoverable information long ago. Given the latest testimony of Humana's 30(b)(6) witness, Ms. Guarisco, it is clear that the information contained in the CGX system is highly relevant and should have been produced by Humana alongside the information from the hCAT system.

### C. **Sanctions are warranted to remedy Humana's obstruction of discovery.**

Humana has engaged in sanctionable conduct under Rule 37(d) because it failed to designate an adequately prepared Rule 30(b)(6) witness.

"Rule 37(d) permits the Court to impose sanctions when a party designated under Rule 30(b)(6) fails to appear, and the production of an unprepared witness is tantamount to the failure to appear." *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-CV-1047-CRS, 2016 WL 9460471, at *5 (W.D. Ky. June 29, 2016); *see, e.g., United States v. Holland*, No. 13-CV-10082, 2017 WL 1354178, at *3 (E.D. Mich. Apr. 13, 2017) ("If a Rule 30(b)(6) deponent is unprepared to answer questions regarding the topics in the deposition notice, it is as if the witness failed to appear for the deposition at all, and sanctions may be appropriate under Fed. R. Civ. P 37(d)."). "While '[a]bsolute perfection is not required of a 30(b)(6) witness,' producing an unprepared Rule 30(b)(6) witness is tantamount to a failure to appear, which may warrant sanctions under Fed. R. Civ. P. 37(d)." *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1000 (S.D. Ohio 2017)

16

(quoting *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012)).

Rule 37(d) provides for a variety of sanctions, including those listed in Rule 37(b)(2)(A)(i)-(vi), as well as "[i]nstead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). "The party seeking sanctions must make at least an initial showing—with record citations—suggesting that the designee's preparation was inadequate." *Wicker*, 278 F. Supp. 3d at 1000; *see also Adkisson v. Jacobs Engr. Group, Inc.*, No. 3:13-CV-505-TAV-HBG, 2021 WL 1685955, at *7 (E.D. Tenn. Feb. 3, 2021) (finding sanctions appropriate where the defendant failed to properly prepare its corporate representative under Rule 30(b)(6)).

Here, Humana's first, second, and third corporate designees were unprepared to discuss noticed topics. Ms. Guarisco was unprepared to testify to the topics agreed upon by the parties. This was evident in her inability to answer numerous questions about topics for which Humana was noticed. *See e.g.,* Ex. F at 24:5–13, 37:16–25, 54:16–61:7, 62:4–24, 63:4–9, 65:3–8, 66:9–25, 67:5–68:12, 70:2–75:6, 77:3–78:6, 81:2–11, 83:5–25, 86:14–21, 89:2–24, 95:11–96:3 102:1–12, 103:4–14, 105:1–7, 126:1–10, 129:7–15, 136:18–22, 137:7–17, 138:18–139:6, 143:19–144:4, 145:6–11. As discussed above, Humana has an obligation to designate a qualified witness and to prepare its corporate designee on the topics contained within a Rule 30(b)(6) notice. Ms. Guarisco was unprepared and unable to answer questions about:

- The 38 code meaning within the records or what occurs in any of the systems when a dialer gets a 38 code. *Id.* at 24;5–13.

- The meaning of other codes and information contained in the columns of

17

documents produced by Humana. *See id*. at 65:5–73:7;

- Whether the CGX system can be searched for invalid designations. *See id*. at 79:20–80:3;

- Information regarding the CGX system. *See id*. at 144:2–145:11;

- Information concerning DNC lists. *See id*. at 80:14–81:10.

At bottom, Humana's continued obstruction of the discovery process warrants sanctions. Elliot asks this Court to grant monetary sanctions against Humana for attorney's fees, as well as for the costs associated with the time, preparation, and expense in taking Ms. Guarisco's deposition.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that Defendant Humana be compelled to designate an appropriate Rule 30(b)(6) witness who is qualified to testify to the topics identified by Elliot and to produce documents relating to "invalid" and "wrong number" entries following a keyword search of Humana's internal CGX system. Additionally, Elliot requests that Humana be sanctioned in accordance with Rule 37 and that the Court award any other remedy it deems fit.

DATED: September 4, 2024

**LawHQ, P.C.**

/s/ *James S. Wertheim*
James S. Wertheim
299 S. Main St. #1300
Salt Lake City, UT 84111
(385) 285-1090
jim@lawhq.com

*Counsel for Plaintiff*

## **CERTIFICATE OF GOOD FAITH**

  I, James S. Wertheim, certify that I have conferred with opposing counsel and the parties are unable to resolve their differences. From April 17, 2024 to July 18, 2024, Counsel engaged in a series of emails and telephone calls attempting to resolve the discovery issues regarding ESI in Humana's possession as well as locating a competent Rule 30(b) witness or witnesses. Unable to reach a compromise, Counsel arranged three telephonic discovery conferences before the Court. Counsel have been unable to resolve this discovery dispute, despite continuing to actively engage in email and telephone calls from April 17, 2024 to August 15, 2024.

*/s/ James S. Wertheim*
James S. Wertheim

Counsel for Plaintiff
