UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DAVID ELLIOT

v.                                              Case No. 3:22-CV-329-RGJ

HUMANA INC.

## HUMANA INC's MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS (D.E. 75)

### I.    INTRODUCTION

Plaintiff David Elliot's ("Plaintiff" or "Elliot") second motion to compel (D.E. 75) in as many weeks suffers from many of the same deficiencies as his first motion (D.E. 68), and it attempts to mischaracterize Defendant Humana Inc's ("Defendant" or "Humana") participation in discovery and Plaintiff's own efforts to gather discovery. Once again, Plaintiff's Motion finds no support in law or fact.

In an even more egregious misuse of Rule 37, Plaintiff **(1)** blatantly fails to follow the Civil or Local Rules, making the Motion procedurally improper, **(2)** fails to timely comply with the discovery orders in this case, making the Motion procedurally improper, and **(3)** mischaracterizes the law and the facts applicable to Humana's discovery obligations, making the Motion substantively improper. For the reasons outlined herein, the Motion should be denied.

### II.    BACKGROUND

#### A.    CGX Background.

Contrary to Plaintiff's assertions, Humana has been entirely forthcoming about its CGX database, and the role it plays in providing information about potential designations of a wrong

number or invalid number, to the extent those designations exist at all. It is Plaintiff, not Humana, who has utterly failed to pursue discovery of information from the CGX database or otherwise engage with Humana about pursuing information from that system, notwithstanding Humana's reasonably asserted objections.  Stated simply, as described fully herein, despite the fact that Humana made Plaintiff aware of the CGX system and its functions **over 18 months ago**, Plaintiff never engaged in an effort to obtain documents from that system, let alone address any issues about how to do so in a manner that is proportional to the needs of the case.

On **January 1, 2023**, Humana responded to Plaintiff's first set of discovery requests with good faith objections on the grounds the requests were overbroad, vague, unduly burdensome, and disproportional to the needs of the case. *See e.g.*, Response to Interrogatory 5, 8, 13, 15; Response to Request for Production 8, 12, 14, 16; Response to Request for Admission 9, attached hereto as Ex. A.  Notwithstanding its objections, Humana provided narrative responses to discovery clearly identifying the Clinical Guidance Exchange ("CGX") system – which is its member database used by the Special Needs Plan ("SNP") to track clinical activity for every Humana member – as the repository where certain invalid telephone numbers would be manually tracked and edited, to the extent such documentation was necessary. *See* Response to Interrogatory 5, 8, 13, 15; Response to Request for Production 8, 12, 14, 16; Response to Request for Admission 9. Relevant to the present motion, in addition to its objections, Humana stated:

> **Humana tracks invalid numbers through manually editing member profiles in their member database through Clinical Guidance Exchange notes ("CGX"), however, this data is maintained in individual member files and is not available in a searchable form other than reviewing each and every member file for an invalid designation in the member profile CGX notes. Accordingly, Humana does not have a feasible method of gathering the information in a manner that would be proportional to the needs of the case...Moreover, even if Humana could identify every "wrong number, wrong person, bad number, or similar designation calls" placed by Humana, the information would have**

> **little, if any, probative value to any issue being litigated in this case, as any such calls would be the result of a litany of separate and individualized issues.**

*Id.*

Plaintiff subsequently issued his second set of discovery requests to Humana. Humana responded to that second set of discovery requests on **August 9, 2023** maintaining its objections. (Attached hereto as Ex. B). Humana further clarified the role of CGX in its responses to the second set of discovery requests:

> **Without waiving its objections, all numbers associated with a particular member are noted in the individual member files. If a number is determined to be "invalid" that number will be taken off the call list for the following day and the number will be designated in the individual member file as "invalid."**

*See* Response to Interrogatory 6. Notably, Humana's written responses were provided over a year before the close of discovery.

Humana's responses were supported by testimony of its corporate designees. A. Williams Depo., pp. 31-32; 75-76; 120-124; 130-139; 161 (attached hereto in full as Ex. N); A. Guarisco Depo., pp. 11- 56; 84-105; 114-117; 143-145 (Attached hereto in full as Ex. O).[1] On **March 25, 2024**, Amber Williams was deposed as Humana's first corporate designee. Ms. Williams testified unequivocally that CGX is the platform used to designate potentially invalid or wrong numbers. *See* A. Williams Depo., pp. 31-32. Ms. Williams went on to testify for over twenty pages of transcribed testimony about the function of CGX and the information it contains. A. Williams

---

[1] Pursuant to the Court's May 30, 2024 Protective Order, Humana has partially redacted portions of the attached depositions to remove personal healthcare information ("PHI") – such as the names of Humana members or telephone numbers – from the attached materials. Per the Protective Order, Humana agreed to produce certain limited PHI through discovery, but that information is to be protected from being made publicly available. During the depositions of Humana's witnesses, Humana's counsel reminded Plaintiff's counsel that any such PHI needed to be redacted or otherwise removed from exhibits before they were filed with the Court. *See* A. Williams depo. at pp. 163-64; A. Guarisco depo. p. 53. Plaintiff explicitly agreed and confirmed "We will not file anything with people's names in it." (A. Guarisco depo. at p. 54) Nevertheless, despite that explicit commitment, Plaintiff attached exhibits to his Motion to Compel containing PHI such as the names of Humana members or telephone numbers. Humana respectfully requests Plaintiff promptly take appropriate corrective action to remove that information from the public record.

Depo., pp. 31-32; 75-76; 120-124; 130-139; 161. Despite this clear testimony and Humana's written discovery responses, Plaintiff never sought further discovery of CGX until April 17, 2024. *See* April 17, 2024 e-mail exchange (attached as Ex. C). In that April 17, 2024 e-mail exchange, Plaintiff requested "whatever information CGX contains related to the above referenced items." *Id.* Humana responded and objected to that request as patently overbroad. *Id.* Plaintiff did not respond to Humana's objections about the scope of the request, or otherwise further pursue information at that time from the CGX system.

Notably, as referenced above, in order for Humana to retrieve "whatever information CGX contains," it would require Humana to individually go through the free text notes for each of the Humana members in the SNP campaign. There were approximately 700,000 Humana members enrolled in the SNP each of the four years associated with Plaintiff's proposed class period. Accordingly, the time and burden associated with Plaintiff's request would be extensive, particularly given the significant amount of redactions that would be necessary to remove protected healthcare information from the notes for things like medical conditions, prescriptions, treating physicians, and diagnoses. Further, information gathered from the free-form CGX notes would be of minimal relevance in light of the fact those notes would encompass a wide array of topics beyond notating instances where an individual communicated they were not the intended recipient of the call.

Notwithstanding the foregoing, as this Court is well aware, Plaintiff was fully capable of pursuing discovery from CGX similar to the discovery Plaintiff sought from Humana's hCAT system. Unlike the meet and confer conversations about document productions from hCAT, the only times Plaintiff ever indicated he wanted to discuss production of documents from CGX was via email on April 17, 2024, May 10, 2024, and July 17, 2024. *See* emails attached as Exs. C, D,

E. However, a review of those e-mail communications reveals Plaintiff never made any meaningful effort to pursue the information and never once addressed, or even attempted to address, Humana's objections about the scope and proportionality of the request.

On May 10, 2024, Plaintiff stated he was requesting "output with all fields available within the given systems during the proposed class period from each of the following: (a) for CGX (Clinical Guidance Exchange)…" *See* Ex. D. Humana responded that the "outputs" from CGX are individual files for each Humana member and would be disproportional to the needs of the case. *Id*. Plaintiff made no further inquiry about CGX documents until two months later, on July 17, 2024, when Plaintiff expressed, "we need a search of the hCAT **or** CGX systems also using the search term invalid and/or invalid #." Ex. E. (emphasis added). Humana responded that it was "willing to entertain a discussion about search parameters for that supplemental information to enable us to determine the expectations in terms of the scope of the search and Plaintiff's expectations regarding timing." *Id.* Rather than following up with Humana on that offer, or otherwise engaging Humana's counsel in any further discussion about the issue, Plaintiff, instead, simply dropped the issue and did not further raise any issue about seeking CGX information until filing his Motion.

Further, as the Court is aware, over the past several months, Plaintiff has requested multiple telephone conferences with the Court to address perceived discovery issues. While Plaintiff's counsel identified several items of perceived unresolved discovery during those calls, Plaintiff **never once** communicated, or even suggested, during those conferences with the Court that information from the CGX system was among the discovery items Plaintiff was seeking. Instead, Plaintiff identified several other items, including documents from an ESI search of Humana's hCAT system, and each of those items were thoroughly and timely addressed by Humana within

the timeframe established during the discovery conferences.  Notably, at the end of every one of those conferences, the Court asked the parties, "Are there any other issues we need to address?" Despite this open opportunity to raise any perceived issues with production of information from the CGX system, Plaintiff never once identified that as a perceived issue until filing his Motion to Compel.

### B.    Humana Corporate Designee Depositions.

Humana has produced three corporate designees to testify about a litany of topics, both relevant and irrelevant to the claims in this case. On February 29, 2024, Plaintiff issued his first Rule 30(b)(6) notice. (Attached hereto as Ex. F).  The Notice included 16 separate sweeping and ambiguous topics. While the topics were fundamentally overbroad, Humana went to great efforts to prepare Amber Williams as its representative to discuss the topics. As the Associate Director of Care Management, Ms. Williams is intimately familiar with the SNP campaign involved in this litigation and, accordingly, reasonably well-suited to be Humana's designated representative.  (A. Williams depo. p. 8).  Ms. Williams testified on March 25, 2024 that she was prepared to speak to her "expertise of said topics" and so testified for nearly seven hours. A. Williams Depo., p. 9. For topics where Ms. Williams was not sufficiently familiar with the specific details to provide substantive testimony, she candidly identified the individual or department that could provide the sought after information.  (*See e.g.*, A, Williams depo. pp. 45, 85, 90-91, 106, 119, 127, 130).

Following Ms. Williams' deposition, Humana voluntarily identified another corporate designee, Ms. D'Ippolito, for a continuation deposition to testify about topics Ms. Williams was not able to fully address. *See* May 1, 2024 email (attached as Ex. G). Humana notified Plaintiff that Ms. D'Ippolito was being designated and prepared to testify as to questions Ms. Williams specifically stated were within Ms. D'Ippolito's corporate purview. *Id*. On May 1, 2024, Plaintiff

issued a revised Rule 30(b)(6) notice which added five additional topics, most of which were covered at length in Ms. Williams' deposition. (May 1, 2024 Notice, attached hereto as Ex. H).  In response, on May 13, Humana issued its objections to the Notice of Deposition. *See* May 13, 20204 Response. (Attached hereto as Ex. I).  In that response, Humana stated:

> Given the extremely broad nature of the topics set forth in Plaintiff's deposition Notice, and in light of the fact that the area of inquiry during the deposition involved questions about multiple different business lines from Humana's business operations, there were several questions presented where Ms. Williams testified that question would more appropriately be directed to a representative from a different business line in order to thoroughly, accurately, and completely address and answer the question. In a good faith effort to provide Plaintiff with full and complete information, Humana has agreed to produce another representative, Melinda Dippolito, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, to testify regarding those items where Ms. Williams could not provide substantive information.

*Id.*, p. 1. Moreover, Humana objected to any additional lines of questioning that would re-visit topics that had already been covered by Ms. Williams. *Id*. Additionally, Humana objected to the newly identified topics as they were cumulative and duplicative of the previously identified topics. *Id*.

Ms. D'Ippolito was deposed on May 15, 2024 and testified extensively for four and a half hours about Humana's dialer system and its use by the various business units in conjunction with hCAT. *See generally*, D'Ippolito Depo. (attached hereto in full as Ex. P). At no point following either of the first two Rule 30(b) depositions did Plaintiff ever send Humana a letter, or any other communication, contending the witnesses were "unprepared" or identifying any topics that were not reasonably addressed, let alone articulating any circumstances where Plaintiff failed to gather all relevant and proportional information sought during the deposition.  If Plaintiff truly believed Humana's witnesses had failed to reasonably and properly address all relevant topics, the appropriate recourse would have been for Plaintiff to communicate that to Humana so Humana could reasonably and timely address the issue.  Plaintiff did no such thing.

As reflected above, subsequent to Ms. D'Ippolito's deposition, the parties had multiple conferences with the Court. During all of those conferences, Plaintiff never once asserted, or even suggested, the Humana witnesses were "unprepared" or that they had failed to sufficiently address the deposition topics contained in the Notices. Instead, the only comment Plaintiff's counsel made about additional depositions was a stray remark where Plaintiff's counsel merely expressed that Plaintiff may want to take another deposition of "someone from the IT department." As referenced above, the Court clearly inquired during every conference "Is there anything else we need to discuss?" Thus, if Plaintiff truly believed Humana's witnesses were "unprepared" or had failed to provide discoverable information, Plaintiff had every opportunity to raise that issue with the Court well before discovery concluded. However, once again, Plaintiff did no such thing.

It was not until July 18, 2024, a full two months after Ms. D'Ippolito's deposition, that Plaintiff requested another deposition from Humana. *See* Ex. E. Despite previously communicating the only potential deposition Plaintiff might pursue would be a "short" deposition of "someone from the IT department," Plaintiff, instead, broadly requested the deposition of "the person with Humana who is familiar with and able to provide testimony regarding all codes in the dialer, the interaction of the dialer and other systems, the hCAT system, the CGX system, the internal Do Not Call list, and all documents produced by Humana since the date of the prior depositions and those documents that were not explained during depositions or not addressed by the prior 30(b) witnesses." *Id*. Humana objected to such a deposition as it would tread on the same ground already thoroughly addressed by the two prior corporate designees. *Id*. Humana agreed it would produce a witness to testify about the documents produced after the depositions already taken, however, Humana needed more specific notice of the topics to be covered in order to properly prepare a designee. *Id*. On August 21, 2024, Plaintiff issued a new Rule 30(b)(6) Notice

for twelve brand new topics, most of which were, on the face of the Notice, duplicative of items already exhaustively addressed during the two prior depositions. (Attached hereto as Ex. J). Humana objected to the new Notice stating:

> Humana respectfully contends that the prior representatives fully and thoroughly testified about all information reasonably foreseeable from the previously designated topics, and provided all relevant and proportional information in response to questions posed to those designated representatives. Nevertheless, in a good faith effort to provide fulsome discovery, Humana will provide a designated representative, Angelle Guarisco ("Ms. Guarisco"), to testify, to the best of her ability based upon her reasonable preparation, about the topics identified below that were not collectively covered by the deposition testimony from the prior designated representatives.

*See* Aug. 26, 2024 Humana's objections (attached hereto as Ex. K).

Ms. Guarisco was deposed on August 28, 2024 for over four hours.[2] It was not until the filing of Plaintiff's Motion that Humana learned, for the first time, Plaintiff was apparently not satisfied by the nearly sixteen hours of testimony from its collective designees. Plaintiff never once identified specific topics or questions the Humana designees were unable to sufficiently address nor did Plaintiff ever request a meet and confer with Humana to discuss the perceived deficiencies.

### C.    Plaintiff's lack of meet and confer efforts.

Following Ms. Guarisco's deposition on August 28, 2024, Plaintiff did not provide **any** communication to Humana suggesting there were any unresolved discovery issues or otherwise attempt to address any perceived issues with Humana before involving the Court.  Instead, the very first communication Humana received indicating Plaintiff had any remaining concerns about discovery was when Humana received Plaintiff's Motion.  Indeed, as fully addressed below, from

---

[2]  The deposition of Ms. Guarisco was conducted beyond the August 22, 2024 discovery cut-off deadline because it was the earliest date the deposition could feasibly be scheduled.  Prior to the deposition being conducted, Humana communicated to Plaintiff that Humana would consent to that deposition being conducted beyond the discovery cut-off deadline, but expressly emphasized that Humana was not consenting to any other discovery beyond the cut-off deadline and Humana objected to any other discovery pursued beyond that date.  (Aug. 15, 2024 e-mail attached hereto as Ex. L).

the face of the Certificate of Good Faith appended to Plaintiff's Motion attesting to purported efforts to extrajudicially resolve any issues, it is abundantly clear Plaintiff made no effort, at all, to even attempt to address the issues in his Motion before filing the Motion with the Court.

## III.    ARGUMENT

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). Yet, the discovery process shall not be seen as a fishing expedition by the requesting party. *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016). This includes excessive and unnecessary Rule 30(b)(6) depositions. *See Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121 (E.D. Mich. 2019). The Federal Rules of Civil Procedure "secure the just, speedy, and inexpensive determination" of a matter and the Court shall limit discovery where the burden or expense outweighs the likely benefit of the proposed discovery. *See* Fed. R. Civ. P. 1; *see also Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007). Therefore, "District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018). It is well within the Court's discretion to set the parameters of discovery, including production of documents and limitations on depositions. *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993); *Vaughan v. Youngblood Excavating & Contracting, LLC*, 2015 U.S. Dist. LEXIS 162650, at *11 (W.D. Ky. Dec. 4, 2015); *Janko Enters. v. Long John Silver's, Inc.*, 2013 U.S. Dist. LEXIS 135107, at *2 (W.D. Ky. Aug. 19, 2013); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998).

    **A.**    **The Motion is not properly before the Court under the Civil and Local Rules, as Plaintiff blatantly failed to comply with requirements to attempt to address the issue with Humana before filing the Motion to Compel.**

Humana respectfully contends Plaintiff did not reasonably exhaust, or even attempt to exhaust, extrajudicial efforts to resolve this matter before seeking to involve the Court. The Motion is therefore procedurally deficient and the Court may decline to address the Motion for that reason alone.

Pursuant to Fed. R. Civ. P. 37(a)(1), a party moving to compel discovery must put the opposing party on notice and must **confer in good faith** to obtain the discovery without court action. Similarly, the Western District of Kentucky's local rules state **"[t]he Court will not entertain discovery motions unless counsel have conferred – or attempted to confer – with other affected parties in an effort to resolve their dispute**." LR 37.1 (emphasis added). Plaintiff filed his Motion without once attempting to meet and confer about the scope of the CGX request or perceived deficiencies concerning Humana's corporate designees' testimony. This fact is made expressly evident by the Certificate of Good Faith appended to the Motion. Therein, Counsel frames the April 17, 2024, May 10, 2024, and July 17, 2024 email correspondences as an attempt to meet and confer with Humana. However, Plaintiff's Motion directly concerns Humana's **August 28, 2024** corporate designee deposition and Plaintiff attempts to argue the CGX discovery dispute arises because of the testimony presented during the August 28, 2024 deposition. Notably, all the identified dates on Plaintiff's Certificate of Good Faith were clearly before the August 28, 2024 deposition. Thus, the Certificate of Good Faith itself demonstrates there was no actual effort by Plaintiff to resolve these issues extrajudicially. Further, nowhere in Plaintiff's Motion does he even generally describe efforts to address any of the issues in his Motion before presenting it to the Court. For this reason alone the Court should deny the Motion.

Additionally, Plaintiff suggests in the Certificate of Good Faith that the discovery conferences with the Court somehow constitute a good faith effort to meet and confer. This reliance is completely misplaced. Neither the issue of CGX nor the adequacy of the testimony from Humana's witnesses was ever discussed during the telephonic discovery conferences before the Court. Further, as evidenced by Plaintiff's Certificate of Good Faith, all of the conferences with the Court occurred before the August 28 deposition which Plaintiff claims forms the basis of his Motion. Plaintiff plainly had the opportunity to bring these issues to bare prior to the close of discovery and simply failed to do so. Therefore, because Plaintiff simply failed to comply with the express requirements of Rule 37 and LR 37.1, the Motion is not properly before the Court and should be denied.

### B.    Plaintiff's Motion is untimely.

Not only did Plaintiff fail to follow the Civil or Local Rules, the Motion is also untimely. Despite having over a year and a half to address any perceived issues with discovery and despite having had the opportunity to bring the issue before the Court during three separate discovery conferences, Plaintiff waited until **after** the discovery cut-off deadline to bring the Motion to compel additional discovery from Humana that Plaintiff has been aware of since January 2023. Plaintiff's untimely request must fail.[3]

"[A]bsent special circumstances, motions to compel discovery filed after the close of discovery are untimely." *Fedex Corp. v. United States*, No. 08-2423 Ma/P, 2011 U.S. Dist. LEXIS

---

[3] Unfortunately, Plaintiff's failure to comply with the Rules or this Court's directives has become increasingly pervasive in this litigation. For instance, when Plaintiff expressed to the Court during the August 23, 2024 conference that Plaintiff intended to file a motion to compel seeking additional "end of day" reports (DE 68), the Court issued an Order establishing an expedited briefing schedule for that motion given the late stage of the case. (DE 69). In that Order, the Court expressly stated, "Replies shall be filed [by Plaintiff] no later than September 6, 2024 **and limited to five (5) pages**." (DE 69, emphasis added). Despite the Court's clear and express directive to confine the reply to five pages, Plaintiff filed a Reply on September 6 containing a full six pages of argument. (DE 77). Plaintiff did not seek Leave or otherwise request permission to exceed the page limitation established by the Court.

59570, at *13 (W.D. Tenn. Mar. 28, 2011) (citations omitted). A district court "may properly deny a motion to compel discovery where the motion to compel was filed after the close of discovery." *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 401 (E.D. Mich. 2000) (citing *Ginnett v. Fed. Express Corp.*, No. 97-5481, 1998 U.S. App. LEXIS 27659 (6th Cir. Oct. 21, 1998)).

Plaintiff attempts to rewrite history in this case to make it appear that the potential relevance of CGX is something "newly discovered" during Ms. Guarisco's deposition when it very clearly is not. Further, Plaintiff seeks to make it appear that Humana has hidden the ball or made some conscious effort to prevent Plaintiff from gathering discovery he was otherwise entitled to obtain. DE 75 pp., 10-12. Plaintiff's reframing is not supported by the facts and indeed, the detailed history described above shows Plaintiff's contention is demonstrably false. Plaintiff filed this case on June 21, 2022. [DE 1]. On January 6, 2023, a year and a half before the discovery cut-off deadline, Humana disclosed the existence of CGX and notified Plaintiff it was the database where certain information might be contained about whether a non-Humana member received a call from Humana. *See* Exhibit A. Meaning, **Plaintiff has known about CGX and its functions *for over a year and a half*.** Despite having this information for the majority of the discovery period, Plaintiff did not ever meaningfully work with Humana to seek information from that system or discuss the scope of production. *See* Exs. C, D, E, G. As outlined *supra*, Plaintiff broadly asked Humana to produce "everything" from CGX – consisting of free form notes for hundreds of thousands of members insured by Humana – without once responding or even attempting to address Humana's well-founded objections about the scope or proportionality of the request.  Instead, Plaintiff abandoned any conversation about CGX and chose to pursue discovery from the hCAT system.

The last discussion concerning CGX was on July 17, 2024, less than two months before the end of discovery. *See* Ex. E. Humana made clear to Plaintiff it was willing to engage in good

faith discussions about the scope of any search for CGX information. Given the fact that CGX information is kept in free-form notes and includes extensive diagnostic information about Humana's members, Humana had genuine concerns about the scope and proportionality of CGX information because of the amount of time it would take to collect that information and the significant redactions that would be required to avoid producing protected personal healthcare information. Thus, Plaintiff's nebulous request to obtain "everything from CGX" was overly broad, and required significant narrowing for Humana to even consider providing responsive information. Rather than engage with Humana to try to address that issue or Humana's objections, Plaintiff simply abandoned the issue until after the discovery cut-off period ended.

Further, even if Plaintiff had provided a sufficiently reasonable and narrow scope for the requested information, the information from the CGX system would be, at best, minimally relevant. Because the CGX notes are free-form entries for all sorts of contact between Humana and its members, it would be akin to searching for needles in haystacks to try to find notes associated with circumstances where a call recipient informed Humana they were not the member they were attempting to reach. For instance, to the extent Humana reviewed CGX materials from the 700,000-plus members for the term "invalid," that word could be used to notate a variety of different circumstances in CGX entirely unrelated to any matter pertinent to this litigation.

Fact discovery in this case closed on August 22, 2024. [DE 61]. Plaintiff therefore assumed the risk that discovery disputes would arise near the end of the discovery period which could not be addressed by a late motion to compel. *Fedex Corp.*, 2011 U.S. Dist. LEXIS 59570 at *14-15 (finding "no special circumstances justify excusing the government's post-discovery deadline filing" because "the government did not serve its discovery requests or notice depositions until shortly before the close of discovery, and thus it assumed the risk that discovery disputes would

arise near the end of the discovery period."). Plaintiff's own failure to make a reasonable or concerted effort to seek appropriate or proportional information from CGX is the reason he is in this position, and such litigation choices should not be held against Humana.

The lateness is the result of the Plaintiff's own decisions and failure to pursue discovery over the past two years. Further, Plaintiff has not sought a further extension of the – already repeatedly extended – discovery cut-off deadline. Plaintiff could not have plausibly asserted an argument to extend the discovery cut-off deadline, as Plaintiff would need to show just cause, including Plaintiff's diligence, to support such a request. Plaintiff has not, and cannot, show reasonable diligence on his part to address any of the requested discovery before the discovery cut-off deadline passed. For this reason, the Motion is untimely and should be denied.

Lastly, when considering the untimely nature of Plaintiff's Motion in conjunction with his lack of meet and confer efforts, it fully displays the fallacy of Plaintiff's entire argument. If, on the one hand, Plaintiff's Motion is based upon "new" information that Plaintiff did not learn until the August 28 deposition, then Plaintiff clearly failed to engage in any meet and confer efforts because he does not even attempt to identify any efforts prior to that date. Conversely, on the other hand, if Plaintiff contends he satisfied his meet and confer obligations because his Motion involves items he had addressed for months prior to filing the Motion, Plaintiff could have – and should have – addressed that issue well before the discovery cut-off passed. Either way, Plaintiff's Motion is defective and should be denied.

### C.    Plaintiff's characterization of discovery is wholly inaccurate and should be disregarded.

Plaintiff's Motion cherry picks deposition testimony and discovery responses to serve his agenda without taking the three depositions as the cumulative testimony of Humana. For instance, Plaintiff only attaches three pages of Ms. Williams' deposition transcript and a handful of pages

from the transcripts of Ms. D'Ippolito and Ms. Guarisco. Such a blatant attempt to reframe Plaintiff's own failures as Humana's is untenable and should not be a basis to compel extremely delayed discovery. Indeed, Plaintiff failed to ever identify deposition topics with reasonable particularity, such that even in the Motion he has failed to identify a single topic Humana's witnesses failed to address. Further, Humana's reliance on its good faith objections is well-founded and permissible under the Civil Rules.

### 1. Reasonable Particularity of the Motion and 30(b)(6) Notices.

At the outset, Humana notes that Plaintiff's Motion is unclear on which deposition topics Plaintiff seeks to compel testimony. In fact, **nowhere** in the Motion does Plaintiff ever identify the specific deposition topics Humana was purportedly unable to address, and it would be impossible for Humana or the Court to guess what testimony Plaintiff is actually seeking. Indeed, it has been Plaintiff's lack of particularity throughout this litigation that ultimately caused the issues before the Court. Plaintiff's Motion is emblematic of Plaintiff's efforts to broadly ask for "everything" from Humana, refuse to engage with Humana to determine the scope or precise information being sought, and then feign frustration if Plaintiff does not receive something specific he claims to be seeking. This failure on the part of Plaintiff cannot be attributed to Humana's designees.

The obligations under Rule 30(b)(6) run to both the corporation and the deposing party. Under Rule 30(b)(6), the party requesting the corporate representative "has a duty to designate the subject matter for examination with reasonable particularity…" *Janko Enters. v. Long John Silver's, Inc.*, 2014 U.S. Dist. LEXIS 185334, *12 (W.D. Ky. Apr. 3, 2014). "The test for reasonable particularity is whether the request places the party upon reasonable notice of what is called for and what is not." *Chaney v. Dollar Gen. Partners*, No. 5:23-CV-00200-DCR-MAS, 2024 U.S. Dist. LEXIS 50800, at *5 (E.D. Ky. Mar. 21, 2024). In this case, not only were the

notices themselves not reasonably particular, the Motion itself does not even identify which topics Humana's three deponents failed to sufficiently address.

As stated *supra*, Plaintiff issued three different Rule 30(b)(6) notices to Humana. Humana objected to the notices as overbroad, cumulative, and not reasonably particular to put it on notice of the specific areas of inquiry to allow Humana to properly designate or prepare witnesses. *See* objections. Without waiving its objections, Humana attempted to prepare its designees based on the extremely broad noticed topics. Contrary to Plaintiff's assertion, Humana did not admit its designees were unprepared or that the testimony was insufficient. Instead, Humana attempted to work collaboratively with Plaintiff to avoid discovery disputes. *See* Exs. B, C, D, E, G, I, K, L. Instead of using the Rule 30(b)(6) mechanism for its intended purpose, to streamline discovery, Plaintiff is attempting to use this Motion and request for an additional deposition "as a catchall technique to reexamine at the end of discovery the universe of information an adversary has produced during the discovery period ... so that the burden on Defendant of designating and preparing a witness would almost certainly outweigh the benefit to Plaintiff." *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121 (E.D. Mich. 2019). As courts have made clear, such an abuse of the deposition power is impermissible. *Id*.

As a result of Plaintiff's own failure to reasonably particularize noticed topics and additional failure in the Motion to identify the topics Plaintiff wishes to compel testimony about, the Court should deny the Motion.

### 2. Preparation of Humana's witnesess.

Even though Plaintiff's Rule 30(b)(6) Notices have evolved and expanded throughout this case, Humana has presented prepared witnesses that testified thoughtfully and fully. This most recent attempt to characterize Humana's discovery efforts as insufficient is simply another leg of

the ongoing fishing expedition Plaintiff has embarked upon. The burden this places on Humana is inappropriate and should not result in additional depositions or production.

Indeed, an entity, such as Humana, when served with a Rule 30(b)(6) notice is obligated to identify, prepare, and produce a witness knowledgeable about the subjects in the notice. *Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS, 2017 U.S. Dist. LEXIS 110990, at *26 (W.D. Ky. July 17, 2017). The witness must make a good faith effort to testify concerning not only issues within their personal knowledge, but also those noticed topics reasonably available to the corporation. *Id*. A deponent is expected to obtain corporate knowledge through corporate documents, current and prior employee interviews, or other sources reasonably available to the corporation. *Id*. (citing *Janko Enters. v. Long John Silver's, Inc.*, 2014 U.S. Dist. LEXIS 185334, *12 (W.D. Ky. Apr. 3, 2014)). Despite the rigorous preparation anticipated for a corporate designee, **"[c]ompliance with Rule 30(b)(6) does not require that the corporate designee have personal knowledge as to all relevant facts within the subject matter of the deposition**." *Id.* (emphasis added). Nor does Rule 30(b)(6) require perfection. *Id*. In fact, "**the inability of a designee to answer every question on a particular topic does not necessarily mean that the corporation has failed to comply with its obligations under the Rule**." *Id*. (emphasis added). In the event the corporate designee is unable to respond to relevant questions during the deposition, the corporation has a responsibility to designate additional or supplemental deponents. *Janko Enters.*, 2014 U.S. Dist. LEXIS 185334, at *17. That is precisely what Humana did.

This case does not present the kind of unprepared or evasive answers Rule 30(b)(6) and Rule 37 were meant to curtail. *See Pogue*, 2017 U.S. Dist. LEXIS 110990, at *26. Instead, Humana's three corporate designees were all well-prepared and open with their answers. Collectively, the three Humana representatives testified for a total of nearly **sixteen hours**. Each

representative could and did fill in the gaps of corporate knowledge and taken together, the three deponents sufficiently addressed the noticed topics. For example, Plaintiff cherry picks testimony concerning hCAT and CGX, but by no means includes all deposition testimony concerning these two topics because doing so would demonstrate that Humana's representatives testified collectively for over 80 pages of testimony about the interaction between these two databases. *See* A. Williams Depo., pp. 31-32; 75-76; 120-124; 130-139; 161; A. Guarisco Depo., pp. 11- 56; 84-105; 114-117; 143-145. Moreover, had Plaintiff furnished the entire deposition transcripts, rather than selectively providing misleading excerpts, it would have plainly revealed Plaintiff spent significant portions of all three depositions repetitively covering the exact same information.

Tellingly, the only specific example Plaintiff highlights in his Motion of allegedly "unprepared" testimony does even remotely not show that Ms. Guarisco was unprepared. Instead, the single example Plaintiff highlights in his Motion plainly reveals gamesmanship by Plaintiff to try to inaccurately characterize her as unprepared.  Plaintiff attempts to state Ms. Guarisco was unable to testify about the meaning of certain columns found in the document production. Motion, DE 75, at p. 6. What Plaintiff fails to mention is that Humana produced to Plaintiff the key interpreting those codes and column headings. *See* HUM000289, 291-292 (attached as Ex. M). Those documents were produced to Plaintiff on **August 11, 2023** and **October 9, 2023**, respectively. Thus, Plaintiff had that key months before Ms. Guarisco's deposition occurred.  As a result, Plaintiff could have simply shown the code sheet to Ms. Guarisco to ask her questions about the code rather than trying to manufacture a "gotcha" moment by attempting to portray her as not knowing the information.[4] Importantly, Ms. Guarisco did not testify she was unaware of the

---

[4] Similarly, in Ms. William's deposition Plaintiff's counsel spent a significant amount of time questioning Ms. Williams about the codes and column headings only to show her the Humana code key after she had already testified that she could not identify columns from memory with certainly. When showed the Humana production of the code key, Ms. Williams candidly stated, "We should have referenced that earlier. That would have been helpful." A.

code, but, instead, merely said she did not have each code number specifically memorized and would need to review the key in order to determine the identifying information corresponding with the code. As this Court stated in *Pogue*, a Rule 30(b)(6) deposition is not a memory test. *Pogue*, 2017 U.S. Dist. LEXIS 110990, at *28. In *Pogue*, the Court found it was entirely reasonable for the corporate deponent to request to review documents prior to providing testimony that could easily be verified to support her testimony. *Id*. at *30. The Court held "[i]t is reasonable to expect the 30(b)(6) deponent, in this case Hyde, to be *familiar* with Pogue's claim file, but it is not reasonable to expect her to have *memorized* the file." *Id.* *31; *Davis Elecs. Co. v. Springer Capital, LLC*, No. 3:20-CV-00038-CRS-CHL, 2022 U.S. Dist. LEXIS 55244, at *47 (W.D. Ky. Mar. 28, 2022) (declining to compel additional corporate designees or compel more "adequately prepare[d]" testimony). The same is true in this case. Humana's designees were not required to memorize each code and the meaning of each abbreviated heading found in its document production, however, that is the singular example Plaintiff uses in his Motion. Such an argument is unavailing and has been rejected by this Court.

Further highlighting the disingenuous nature of the only specific instance Plaintiff has identified from Ms. Guarisco's deposition for her purported lack of preparation – her inability to testify from memory about the designation for Code 38 without reviewing the key – Plaintiff had already discussed the meaning of that specific code – along with all of the other codes on the sheet – with Ms. Williams and Ms. D'Ippolito during their depositions. (A. Williams depo. pp. 70-71; M. D'Ippolito depo. pp. 43-44; 66-68). Thus, contrary to Plaintiff's suggestion in his Motion, the

---

Williams Depo., p. 127. Ms D'Ippolito also testified that "I would need the document to speak to." Counsel stated "I'm going to represent to you that I have it here" but did not show it to her until long after she had testified about code 38. M. D'Ippolito Depo., pp. 43-44; 66-68

only situation he even attempts to identify with any detail is not a situation where Plaintiff was unable to obtain the requested substantive information from Humana.[5]

Therefore, Plaintiff has failed to identify any specific area of inquiry where Humana provided evasive or incomplete testimony, and has otherwise failed to show Humana's designees were unprepared. As a result, Plaintiff's Motion should be denied.

### 3.   Production of CGX material.

Plaintiff argues Humana has made a concerted effort to hide CGX material. This is simply not true, and, in reality, the exact opposite is the truth. Humana has been forthcoming about the existence of CGX and has been open to entering a discussion concerning the extent of some production of CGX materials, taking into consideration relevance and proportionality.

In this case, Humana has stood on its good faith objections to production of CGX materials, as it is permitted by the Civil Rules. Humana has always argued that a search of CGX is individualized and not proportional to the needs of the case. *See* Ex. A, B. Humana's objections are permitted by the Rules and Humana is not required to produce documents it objects to producing. *Pogue*, 2017 U.S. Dist. LEXIS 110990, at *23 (W.D. Ky. July 17, 2017) ("The Rules do not require [defendant's] counsel to produce documents with respect to which it makes a good faith objection…") Based on Humana's very early disclosure of CGX, there is no basis for Plaintiff's argument that Humana has disregarded its discovery obligations or tried to hide anything from Plaintiff or the Court.

As argued in the prior response to Plaintiff's motion to compel other discovery material, it is Plaintiff's burden to prove disclosure is both relevant and proportional. Humana's objections

---

[5] It also bears noting that the specific code referenced in Plaintiff's Motion – code 38 – is entirely irrelevant to any issue pertinent to this litigation.  Code 38 is generated by Humana's dialing system when it detects a non-working or disconnected phone number.  That issue simply has nothing whatsoever to do with Mr. Elliot's allegations about non-members purportedly receiving unwanted calls or pre-recorded messages from Humana.

have stemmed from the fact that production of CGX under Rule 26(b)(1) would be overly broad, unduly burdensome, and disproportional to the needs of the case. Fed. R. Civ. P. 26(b)(2)(C); *see* Ex. A – E, G, I, K, L.[6] As Humana has stated time and again to Plaintiff, a search of and production from CGX is not proportional to the needs of this case. Rule 26(b) authorizes the Court to "guard against redundant or disproportionate discovery" to "reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Cox v. Gray Media Grp., Inc.*, No. 5:22-CV-00290-KKC-MAS, 2024 U.S. Dist. LEXIS 59387, at *19 (E.D. Ky. Apr. 1, 2024) (citing 6 Moore's Federal Practice, § 26.41 (Matthew Bender 3d Ed.) (citing Fed. R. Civ. P. 26(b) advisory committee note of 1983)). Under Rule 26, the Court must "consider[] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The proportionality requirement's aim is clear, to reduce "costly and delay-inducing efforts to look under every stone in an e-discovery world populated by many stones…" *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021) (holding the District Court properly considered proportionality in denying a discovery motion for additional discovery and to compel discovery after ample time had passed to obtain the discovery). These considerations are particularly important when the discovery sought encompasses "broad-ranging and massive amounts of data." *Solo v. UPS Co.*, No. 14-12719, 2017 U.S. Dist. LEXIS 3275, at *6 (E.D. Mich. Jan. 10, 2017).

Rule 26(b)(2)(B) makes clear that discovery of electronically stored material is not limitless. Requests are overly broad when they state a "generally broad category or group of

---

[6] To the extent Plaintiff is arguing a production of CGX is warranted outside the six month window relevant to Plaintiff, Humana would also incorporate its arguments in response to DE 64 concerning relevance.

documents or a broad range of information." *Burrell v. Duhon,* 2019 U.S. Dist. LEXIS 179525, at *5 (W.D. Ky. Oct. 16, 2019); see also *Transamerica Life Inc. Co. v. Moore,* 274 F.R.D. 602, 609 (E.D. Ky. 2011). Plaintiff has done just that. Plaintiff has failed to work with Humana to reasonably limit the request for CGX material and has instead requested broad, sweeping categories of documents from all four years of the proposed class period. Such a request is patently overbroad.

Additionally, the excessive burden is not proportional to the needs of the case, especially at this stage. Plaintiff does not provide any analysis or argument in his Motion that would address Humana's objections on the grounds of proportionality. Nor does Plaintiff explain why he failed **for over a year** to pursue any data from CGX and instead seeks now to place an undue burden on Humana to rush a production notwithstanding Humana's well-founded objections. *See* Response 5 ("Humana objects to this Request as overbroad, vague, unduly burdensome, and not narrowly tailored to lead to the discovery of admissible evidence. Humana further objects to the Interrogatory because it is not proportional to the needs of the case..."). At no point has Plaintiff ever articulated, or even attempted to address, any of Humana's objections. Instead, Plaintiff has simply continued to request more and more information from Humana through a quintessential fishing expedition. As a result of the undue burden on Humana, the request is not proportional.

The time has now passed for collection of discovery and Plaintiff cannot blame Humana for his failure to timely seek discovery. As a result, the Motion should be denied as substantively improper.

**D.    Sanctions are not warranted in any case.**

For all the reasons stated above, sanctions are inappropriate. First and foremost, because there were no efforts to meet and confer concerning the matters contained in the Motion, sanctions are inappropriate. While Rule 37(d) provides sanctions may be awarded, they are only available

"if the motion for sanctions includes a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action. Fed. R. Civ. P. 37(d)(1)(B)." *Lankford v. Reladyne, LLC*, No. 1:14-cv-682, 2015 U.S. Dist. LEXIS 162902, at *8 (S.D. Ohio Dec. 4, 2015). Failing to sufficiently outline the meet and confer efforts or to present vague allegations of an impasse are insufficient. *Id*. "Counsel seeking court-facilitated discovery, instead, must adequately set forth in the motion essential facts sufficient to enable the court to pass a preliminary judgment on the adequacy and sincerity of the good faith conferment between the parties. *Id*. (internal citations omitted). Plaintiff plainly failed to meet and confer concerning the preparedness of Humana's corporate designees and production of CGX materials. As a result of Plaintiff's failure to meet and confer and the vague nature of his Certification, the motion for sanctions must be denied.

Further, as outlined extensively above, this is not a case in which sanctions are appropriate, as Humana reasonably complied with its discovery obligations. Courts have held sanctions are appropriate under Rule 37 only when the corporation fails to properly designate and prepare the corporate designee. *Janko Enters.*, 2014 U.S. Dist. LEXIS 185334 at *17. However, when the corporation makes a "good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and in a non-evasive fashion about the matters for examination," sanctions are not warranted. *Pogue*, 2017 U.S. Dist. LEXIS 110990, at *28. Humana's three corporate designees prepared in good faith and made every effort to answer the questions posed by Plaintiff during the cumulative sixteen hours of deposition questions. Again, it is telling that Plaintiff's citations to issues Ms. Guarisco was "unable" to testify about are issues concerning codes and meanings of codes which were plainly produced in Humana's discovery. Further, Humana produced three corporate designees, meaning that Plaintiff had three opportunities to

question Humana on the topics he states Ms. Guarisco was unprepared to testify about, namely CGX and the DNC list. Indeed, Plaintiff did ask questions related to both topics during Ms. Williams deposition. *See* A. Williams Depo., 30-44; 145-147. For all the reasons stated herein, sanctions are inappropriate.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Humana, Inc. respectfully requests this Court deny Plaintiff's Motion to Compel and for Sanctions (D.E. 71).

DATED: 9.20.24.

Respectfully submitted,

/s/ H. Toby Schisler
H. Toby Schisler (admission *pro hac vice*)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 977-8152
Fax: (513) 977-8141
Email: toby.schisler@dinsmore.com

K. Cassandra Carter, Esq. (KBA #98018)
Dinsmore & Shohl LLP
City Center
100 West Main Street, Suite 900
Lexington, KY  40507
Telephone:  (859) 425-1033
Fax:  (859) 425-1099
E-Mail:  cassandra.carter@dinsmore.com
*Counsel for Humana Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon Plaintiff's counsel via the Court's ECF/PACER electronic filing system on September 20, 2024.

/s/H. Toby Schisler