**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:22-CV-00329-RGJ-CHL**

**DAVID ELLIOT,**                                                         **Plaintiff,**

**v.**

**HUMANA, INC.,**                                                  **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Compel and for Sanctions filed by Plaintiff David Elliot ("Plaintiff"). (DN 75.) Defendant Humana, Inc. ("Defendant") has filed a response (DN 85), and Plaintiff has filed a reply (DN 88.) The undersigned held a telephonic status conference with the Parties on September 24, 2024 regarding the underlying discovery dispute. Therefore, the motion is ripe for review.

For the reasons set forth below, Plaintiff's Motion to Compel is **GRANTED** and Plaintiff's Motion for Sanctions is **DENIED**.

**I.      Background**

In this action, Plaintiff is seeking relief for Defendant's alleged violations of the Telephone Consumer Protection Act. (DN 1 at ¶¶ 52-66.) Plaintiff is also seeking to certify this action as a Class Action based on his allegations that several other individuals have been affected by repetitive robocalls sent by Defendant over a period of four years. (*Id.*) Plaintiff alleges that he, along with several others, were contacted by Defendant despite not being Defendant's customers. (*Id.* at ¶ 4.) Plaintiff is now seeking discovery of information relevant to certifying this class of individuals (known as the "wrong number class") as a class action under Rule 23.

      **A.**         **30(b)(6) Witness**

On February 29, 2024, Plaintiff served his first Rule 30(b)(6) notice on Defendant. (DN 85, at PageID # 652.) In response, Defendant designated Amber Williams, the Associate Director of Care Management, to testify on its behalf. (*Id.*) But during the deposition, Ms. Williams identified specific topics as being within the purview of Melinda D'Ippolito. (DN 85, at PageID # 652.) Accordingly, Defendant designated Ms. D'Ippolito as its second Rule 30(b)(6) witness for topics that Ms. Williams was unable to fully address. (*Id.*) Finally, on July 17, 2024, Plaintiff requested a third Rule 30(b)(6) witness to provide testimony regarding all codes in the dialer used by Defendant as well as how the dialer interacts with the hCAT and CGX systems, in addition to all documents produced by Defendant since the date of the prior depositions. (DN 85-5, at PageID # 757.) Defendant designated Angelle Guarisco to provide testimony. (DN 85-16.) While Ms. Guarisco was prepared to answer most of Plaintiff's questions, she was unable to answer fully as to the meanings of certain codes on Defendant's Do-Not-Call list, or who maintained the internal Do-Not-Call list. (*Id.*) Accordingly, Plaintiff moved this Court to compel Defendant to provide an additional Rule 30(b)(6) witness to fully address the information in the documents Defendant produced after the first two Rule 30(b)(6) witnesses. (DN 75.) Plaintiff also moved this Court to impose sanctions on Defendant for allegedly failing to prepare Ms. Guarisco as a Rule 30(b)(6) witness. (*Id.*)

      **B.    CGX Files**

On November 22, 2022, Plaintiff requested that Defendant produce all databases that show wrong person, wrong number, bad number and similar notifications. (DN 75, at PageID # 437.) Defendant responded to this request by stating that it maintained invalid numbers by manually editing member profiles in the CGX system, and that such files were not available in a searchable

form. (DN 85-1, at PageID # 703.) Defendant further asserted that it did not have a feasible method of gathering that information in a manner that would be proportional to the case. (*Id.*)

However, Defendant's second Rule 30(b)(6) witness had told Plaintiff that invalid numbers were recorded in the hCAT system in addition to the CGX files. (DN 75-4, at PageID # 482.) Plaintiff thus only sought discovery of the hCAT system to avoid duplicative discovery. (DN 88, at PageID # 978.) But during Plaintiff's third Rule 30(b)(6) deposition, Ms. Guarisco informed Plaintiff that information related to wrong number designations would be deleted from the hCAT system, and only available in the CGX files. (*Id.*) Accordingly, Plaintiff is now seeking discovery of Defendant's CGX files.

## II.    Discussion

### A.    Standard of Review

The scope of discovery is within the sound discretion of the trial court. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). A ruling by the trial court limiting or denying discovery is reviewed under an abuse of discretion standard. *Id.* An abuse of discretion exists when the reviewing court is "firmly convinced" that a mistake has been made. *Bush v. Rauch*, 38 F.3d 842, 848 (6th Cir. 1994).

### B.    Motion to Compel a Rule 30(b)(6) Witness and Motion for Sanctions

Under Rule 30(b)(6), a party may serve a notice or a subpoena to depose "a public or private corporation, a partnership, an association, a governmental agency, or other entity." Fed. R. Civ. P. 30(b)(6). The party serving such a notice or subpoena must "describe with reasonable particularity" the topics that the party wants to discuss. *Id.* The deposed organization must designate "one or more officers, directors, or managing agents" or "other persons who consent to testify on its behalf." *Id.* The designated witness must testify about information "known or

3

reasonably available" to the organization. *Id*. A party served with a Rule 30(b)(6) notice has an obligation to provide a witness who can answer questions regarding the subject matter listed in the notice, and if the designated deponent cannot answer those questions, then the responding party has failed to comply. *King v. Pratt & Whitney, a Div. of United Techs. Corp.*, 161 F.R.D. 475, 476 (S.D. Fla. 1995). The Rule 30(b)(6) witness must be prepared to testify to matters reasonably known to the responding agency or corporation and bind the agency or corporation to his or her testimony. *CFPB v. Borders & Borders, PLC*, No. 3:13-CV-1047-CRS, 2016 WL 9460471, at *4 (W.D. Ky. June 29, 2016). Under Rule 37(a)(3)(B), a party may move the court to compel another party to answer a question asked under Rule 30 if the deponent has failed to do so. Fed R. Civ. P. 37(a)(3)(B). An evasive or incomplete answer or response must be treated as a failure to answer or respond. Fed R. Civ. P. 37(4). However, the inability of a designee to answer every question on a particular topic does not mean that the corporation has failed to comply with its obligations under the rule. *Pogue v. NorthWestern Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS, 2017 WL 3044763, at *8 (W.D. Ky. Jul. 18, 2017) (citing *Janko Enterprises, Inc. v. Long John Silver's, Inc.*, No. 3:12-CV-345-S, 2013 WL 5308802, at *14 (W.D. Ky. Apr. 2, 2014)) (internal citation omitted). Appropriate relief for an inadequate Rule 30(b)(6) designation which amounts to a refusal or failure to answer a deposition question includes requiring the corporation or agency to re-designate its witnesses and to mandate that preparation for re-deposition be at its expense. *CFPB*, 2016 WL 9460471 at *5 (citing *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126-27 (M.D.N.C. 1989) (internal citation omitted).

However, Rule 30(b)(6) also requires the party serving notice of a deposition to describe with "reasonable particularity" the topics to be discussed. Fed R. Civ. P. 30(b)(6). The test for reasonable particularity is whether the request places the party upon reasonable notice of what is

4

called for and what is not. *Alvey v. State Farm Fire & Cas. Co.*, No. 5:17-CV-00023-TBR-LLK, 2018 WL 826379, at *7 (W.D. Ky. Feb. 9, 2018).

Here, the Court finds that Humana's third Rule 30(b)(6) witness was adequately prepared. Throughout the deposition, the witness frequently had prepared responses to Plaintiff's questions, and answered many of Plaintiff's questions as a reasonably prepared witness would. In support of his motion, Plaintiff cites to eight moments in the witness's deposition when the witness appeared to be unprepared. (DN 75, at PageID # 432-35.) However, these instances are not enough to conclude that Defendant had failed to adequately prepare its Rule 30(b)(6) witness. In the first instance, Plaintiff asks the witness about the meaning of a specific code, to which the witness says she cannot remember without context. (*Id*. At PageID # 432.) In the second instance, the Plaintiff shows the witness what the witness believes to be a DNC file, but the witness tells the Plaintiff that she is used to seeing DNC files with column headings, and that she had not memorized the meanings of the different columns in the files because she did not regularly work with them. (DN 85-16, at PageID # 909.) A Rule 30(b)(6) deposition is not a memory contest, and the mere fact that a witness could not answer every question unaided from memory does not mean that the witness was not adequately prepared. *EEOC v. American Int'l Grp., Inc.*, No. 93 CIV. 6390 (PKL) RLE., 1994 WL 376052, at *3 (S.D.N.Y. Jul. 18, 1994).

Additionally, Plaintiff asserts that the witness was unprepared because she could not tell Plaintiff what happens in other systems when the dialer calls a number that was not in service; she could only testify as to what happens in the hCAT and CGX systems. (DN 75, at PageID # 432-33) ("As far as other systems, I'm not sure. I can't tell you what it does Humana-wide, but it does not communicate back to CGX or hCAT in that way."). However, what happens in systems outside of CGX and hCAT is not within the scope of the notice that Plaintiff served on Defendant. Plaintiff

5

advised Defendant that he would ask about Defendant's use of "disposition code 38" as well as "[h]ow Defendant's dialer, CGX and hCAT systems interact including related to do not call requests." (DN 75-3, at PageID # 477.) These topics could reasonably be interpreted not to include how other systems treat disconnected phone numbers.

Plaintiff also asked the witness who maintains Stratcomm, one of the databases that feeds information to Defendant's Do-Not-Call list. (DN 75, at PageID # 433.) The witness told Plaintiff that she does not know who maintains it or where it is maintained. (*Id*. At PageID # 433-34.) This is not within the scope of the notice that Plaintiff had sent Defendant, as the notice specifically advised Defendant that the deposition would discuss "Defendant's policies, procedures, practices, and training on updating, storage, and maintenance of its "do not call" list(s)." (DN 75-3, at PageID # 477.) The notice does not include any discussion of how external databases are maintained.

Of the eight instances that Plaintiff cites in support of his motion, five indicate some degree of failure by Defendant to prepare its witness for the deposition. The first is when the witness tells Plaintiff that she does not know the meaning of the designation 15 on the Do Not Call list.

> Q: There are some designations of 15. Do you know what the designation 15 is?
>
> A: I don't, no, but I do see in column H that there are user IDs; so it looks to me these were internally entered.
>
> Q: Meaning that someone was on a call with an agent and asked to be put on the do-not-call list?
>
> A: Probably. Again, I can't say that for sure. I don't know, you know, does every department contribute to this list? I'm not sure. So that would be my assumption based on what I understand.

(DN 75, at PageID # 433.) The second is when the witness tells Plaintiff she is unsure as to who maintains the do-not-call list.

> Q: So who would – who would maintain this document? What department maintains this document?
>
> A: I'm assuming it's telecom, but I can't say that for sure. My interaction with the do-not-call list is just that we crosscheck it before we dial any numbers. So as far as who pulled it, who owns it, I can't say for sure.

(*Id.*)  The third is when the witness tells Plaintiff that she does not know whether the Do-Not-Call list includes both Humana members and non-members.

> Q: And it's your understanding that this list would include both Humana members who said do not call me and non-Humana members who said do not call me?
>
> A: I am not sure. I'm sorry. I don't know.
>
> Q: Who would know that?
>
> A: I would assume the telecom department, but I'm not sure.

(*Id.* at PageID # 434.)  The fourth is when the witness tells Plaintiff that she does not know the meaning of the designations "Dec-38" and "Dec-47" on the same Do Not Call report.

> Q: What is "Dec-38?"
>
> A: I am not sure.  I mean, those look to be month abbreviations, but I can't say that for sure, and I don't know what the two digits after that would represent.
>
> Q: Do you know why it's in column H, why – what that represents, the fact that it's Dec-38 in Column H?
>
> A: I do not.
>
> Q: And I assume Dec-47 you don't know as well?
>
> A: Correct.
>
> Q: Or any of these entries in this column that indicate what look like a month and a number?
>
> A: Correct.  I am not familiar with what that means or how it is generated.

(*Id.*)  The fifth is when the witness tells Plaintiff that she did not know who pulled or owns the do-not-call list.

> Q: Okay. Again, do you know who would be able to testify as to what the meaning of this document is?
>
> A: I'm not sure who pulled it or owns it. I'm assuming the telecom department, but I don't know for sure.

(*Id.*) These instances certainly relate to topics that Defendant was on notice about (DN 75-3, at PageID # 477), and the witness proffered by Humana should have been able to answer these questions. While Rule 30(b)(6) does not require witnesses to answer every question perfectly, it does require the deposed party to prepare the witness to testify fully and in a non-evasive fashion. *Pogue*, 2017 WL 3044763, at *8. Although the witness was not evasive in the Court's estimation, she was unable to testify fully about the matters identified above. During the entire rest of the deposition, the witness appeared prepared to testify fully to the questions relating to the topics listed on the notice that Plaintiff served on Defendant. Accordingly, the Court finds that the conduct of the witness and Humana in designating her to testify was not sanctionable.

However, given the lack of complete information from the deposition, the Court finds that an additional deposition is warranted. Accordingly, this Court will permit Plaintiff to depose one more Rule 30(b)(6) witness, only regarding the documents produced by Defendant since the prior two Rule 30(b)(6) depositions, as well as Defendant's policies concerning the Do-Not-Call list. Plaintiff may do this at his own expense.

      C.    **CGX System**

Under Rule 26(b)(1), the Parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed R. Civ. P. 26(b)(1). After making a good faith attempt to resolve a discovery dispute, a party may move for an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a). Under Rule 34(b)(2)(E), a party must, absent a stipulation or order by the Court, respond to a request for

electronically stored information by producing the electronically stored information as it is kept in the usual course of business. Fed. R. Civ. P. 34(b)(2)(E). However, a party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. Fed. R. Civ. P. 26(b)(2)(B). On a motion to compel discovery or for a protective order, the party from whom discovery is sought has the burden to show that the information is not reasonably accessible. *Id.* If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). *Id.*

Here, Defendant has demonstrated that it would face an extensive burden in producing the CGX information. CGX information is kept in free-form notes and would cost Defendant a significant amount of time to collect that information and redact portions of it to protect personal healthcare information. (DN 85, at PageID # 660.) However, the Court finds good cause to compel Defendant to produce the CGX information. The CGX information in Defendant's possession is both relevant to establishing the numerosity and commonality requirements of class certification and proportional to the needs of the case.

       **1.**    **Relevance**

Relevance has been interpreted broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). Relevant information includes information that "illuminate[s] issues upon which a district court must pass" to decide whether a class may be certified. *Id.* at 351 n. 13. When one party objects to the relevance of information that the other party has requested, the requesting party bears the burden to demonstrate that the

9

requested information is relevant. *Wei Qiu v. Bd. of Educ. of Jefferson Cnty. Pub. Sch., Kentucky*, No. 3:22-CV-00529-DJH-CHL, 2023 WL 5616075, at *3 (W.D. Ky. Aug. 30, 2023).

Here, information from Defendant's CGX records is relevant to establish the class of individuals who received calls from Defendant despite not being members of Humana. Whenever Defendant calls a wrong number, the employee who called the subscriber records that information by documenting the phone number as invalid in CGX. (DN 85-16, at 21:24-22:12.) However, the phone number would disappear from hCAT, without a designation that the phone number was invalid. (*Id*. at 15:18-20.) Hence, a record as to whether an employee of Defendant contacted the wrong number would apparently be in CGX, not hCAT. This information is relevant to determine who Defendant had called despite not being Humana members, and thus is relevant to determine the numerosity and commonality requirements of the "wrong number" class.

Accordingly, information from Defendant's CGX records is relevant to the requirements for class certification of the wrong number class.

### 2. Proportionality

Once a party requesting discovery demonstrates that the requested information is relevant, the burden shifts to the resisting party to demonstrate why the requested information is not proportional to the needs of the case. *Qiu*, 2023 WL 5616075, at *3. In determining whether relevant information is proportional, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### a) The Parties' Relative Access to Relevant Information and the Importance of Discovery in Resolving the Issues

The CGX files appear to be the only place where wrong number designations are recorded. (DN 75-7, at PageID # 578-79.) ("Humana tracks invalid numbers through manually editing member profiles in CGX notes, however, this data is maintained in individual files and is not available in a searchable form other than reviewing each and every member file for an invalid designation in the member profile CGX note."). Plaintiff presently has no access to any other source of information that would reveal when Defendant called a wrong number. The end-of-day files do not note whether Defendant had called the wrong phone number. (DN 85-16, at 11:8-17.) Moreover, invalid phone numbers are simply deleted from hCAT, meaning that information would not be available in hCAT either. (*Id.* at 15:18-20.) The only way Plaintiff can satisfy the numerosity and commonality requirements of the wrong number class is through information contained in Defendant's CGX files, and these are files that only Defendant possesses.

Accordingly, both factors weigh in favor of discovery.

### b) Whether the burden or expense of the proposed discovery outweighs its likely benefit.

Defendant asserts that it would face a significant burden in responding to Plaintiff's request. (DN 85, at PageID # 650.) Defendant would need to individually examine the free text notes for each of Humana's members in the SNP campaign, and there were approximately 700,000 Humana members enrolled in the SNP each of the four years associated with Plaintiff's proposed class period. (*Id.*) Moreover, Defendant asserts that the information gathered from the free-form CGX notes would be of minimal relevance because such notes encompass a wide array of topics beyond notating instances where Defendant had contacted a wrong number. (*Id.*)

The Court is not persuaded that the burden on Defendant in reviewing the CGX notes outweighs Plaintiff's need for relevant information. Defendant cannot avoid producing discoverable information just because of inconvenience or expense. *Groupwell Int'l (HK) Ltd. v.*

11

*Gourmet Exp., LLC*, 277 F.R.D. 348, 360 (W.D. Ky. 2011).  This is especially true when the burden appears to be due to how Defendant has chosen to store such information.  *Cf. Chelsey Nelson Photography LLC v. Louisville/Jefferson Cnty. Metro. Gov't*, 556 F.Supp.3d 657, 675 (W.D. Ky. 2021).

Moreover, other courts have held that parties could be ordered to search existing databases previously asserted to be unsearchable, or to design software to do so.  *Anti-Monopoly, Inc. v. Hasbro, Inc.*, No. 94CIV.2120 (LMM) (AJP), 1995 WL 649934, at *1 (S.D.N.Y. Nov. 3 1995) ("The law is clear that … the producing party can be required to design a computer program to extract the data from its computerized business records."); *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 244 (N.D. Ohio 2017) ("Defendant must, therefore, either write the program that would produce the class data of wrong number calls and associated account notes for the class period or produce the relevant portions of its database to Plaintiff so that her expert, Jeffrey Hansen, can write the program and conduct the query himself."); *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK (PSG), 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013) ("Courts regularly require parties to produce reports from dynamic databases, holding that 'the technical burden … of creating a new dataset for the instant litigation does not excuse production.'").  Thus, the Court is not persuaded by Defendant's assertion that it has no feasible method of gathering that information.  It is self-evident that Defendant has the resources to design a method to search a database that it created.

Additionally, even if a keyword search of "invalid" would produce several results that have nothing to do with this case, Plaintiff presently has no access to any other source of relevant information to establish the proposed wrong number class.  A potential excess of information on this important point is better than no information.

Accordingly, the Court does not find that the expense and burden to Defendant in producing documents relating to "invalid" and "wrong number" entries in Defendant's CGX system outweighs the importance of such documents.

### 3. Timeliness

Defendant asserts that Plaintiff's motion should be denied because it is untimely. (DN 85, at PageID # 659.) Numerous courts have found that motions to compel discovery filed after the close of discovery are untimely, absent special circumstances. *FedEx Corp. v. United States*, No. 08-2423 MA/P., 2011 WL 2023297, at *4 (W.D. Tenn. March 28, 2011). However, the Court finds special circumstances in this case.

In *FedEx*, the government did not serve FedEx with any discovery requests until two months before the discovery deadline. 2011 WL 2023297, at *3. The court thus held that the government assumed the risk that discovery disputes would arise near the end of the discovery period. *Id*. at * 4. Additionally, the court noted that the government had all the information it needed to file a motion to compel by the time that the discovery period had closed. *Id*. The government had also stipulated that the parties had completed fact discovery altogether and chose not to file a motion. *Id*. Accordingly, the court held that the government's neglect did not create special circumstances necessary to reopen discovery. *Id*.

Here, Plaintiff sought documents sufficient to identify wrong numbers in his first set of discovery requests as early as November 22, 2022. (DN 75, at PageID # 437.) While Plaintiff did not pursue discovery of Defendant's CGX system until his most recent motion, Plaintiff had good cause not to do so. Defendant's second 30(b)(6) witness told Plaintiff that a wrong number request would be recorded in the hCAT system as well as the CGX system. (DN 75-4 at PageID # 482.) Moreover, Plaintiff's Counsel represented to Defense Counsel that he believed hCAT

13

would contain a list of wrong numbers. (DN 85-5, at PageID # 757.) ("Thus, there is a list somewhere (it appears to be hCAT system) of people who notified Humana that they had reached the wrong person. We need that list.). Thus, Plaintiff only sought discovery of the hCAT system to avoid duplicative discovery. (DN 88, at PageID # 978.) It was not until after Plaintiff had deposed the third 30(b)(6) witness that Plaintiff understood that wrong number designations may only exist within CGX. (*Id.*) Plaintiff should not be penalized for his efforts to avoid duplicative discovery. Accordingly, the Court finds good cause to grant Plaintiff's motion notwithstanding the date of the close of discovery.

### D.   Conclusion

With the foregoing in mind, the Court finds that an additional Rule 30(b)(6) deposition is appropriate. The Court also finds that discovery of all documents relating to "invalid" and "wrong number" entries following a keyword search of Defendant's internal CGX system is appropriate.

### III.   Order

Accordingly,

IT IS HEREBY ORDERED that:

(1)   Plaintiff's Motion to Compel a fourth Rule 30(b)(6) witness is **GRANTED**. The Parties shall meet and confer regarding the time and place for the fourth Rule 30(b)(6) deposition. Defendant shall designate a new witness for Plaintiff to conduct a fourth Rule 30(b)(6) deposition solely on the following topics:

    a)   Defendant's policies, procedures, practices, and training on updating, storage, and maintenance of its "do not call" lists.

    b)   All documents produced since May 15, 2024.

    (2)    Plaintiff's Motion to Compel Electronically Stored Information is **GRANTED**. On or before **October 15, 2024**, Defendant shall produce all documents relating to "invalid" and "wrong number" entries following a keyword search of Defendant's internal CGX system.

    (3)    Plaintiff's Motion for Sanctions is **DENIED**.

October 9, 2024

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record

0|20