UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DAVID ELLIOT

          Case No. 3:22-CV-329-RGJ

v.

HUMANA INC.

---

**REPLY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

## I.  INTRODUCTION

Defendant Humana Inc. ("Humana") takes a simple, objectively defined prerecorded call class and misrepresents the class asserted, the facts, and the law in an attempt to defeat class certification. But Humana's efforts are unavailing. The Telephone Consumer Protection Act ("TCPA") prohibits entities from making prerecorded calls, other than for emergency purposes, without the prior express consent of the called party. *See, e.g.*, *Jewell v. Magnolia Bank, Inc.*, No. 3:23-CV-78-RGJ, 2024 WL 203972, at *2 (W.D. Ky. Jan. 18, 2024). A wrong number designation is not a part of the claim or the class definition.

Humana admits that Plaintiff David Elliot ("Elliot") was the recipient of some illegal prerecorded calls from Humana after he told Humana it had reached the wrong number. Humana's records reveal that it made 145,161 prerecorded calls to 23,682 people who, like Elliot, told Humana it had reached the wrong number. These people are class members with claims that are identical to Elliot. Whether they have a *bona fide* claim is not at issue at class certification.

Elliot asks this Court to certify a single Class: All persons or entities throughout the United States (1) to whom Humana placed, or caused to be placed, a call (2) directed to a number assigned to a cellular telephone service, but not assigned to a current account holder of Humana (3) in connection with which Humana used an artificial or prerecorded voice, (4) four years from the filing of this action through the date of class certification.

The *prima facie* validity of class member claims can be determined based on the same records. Humana's records indicate which number received a prerecorded call and will be used to satisfy the prerecorded call element of the claim. Humana's records show who its customers are, and claimant attestation will be used to determine who is a noncustomer. Finally, there is no dispute that it is easy to identify if a number is attached to a cellular telephone. Thus, all three elements of the claim are subject to common proof. Humana has not challenged these records.

Humana sets up and argues against a straw man by asserting that class certification depends on the accuracy of Humana's wrong number designations in its CGX records. "Plaintiff nonetheless claims that CGX notes containing 'wrong number' . . . means Humana made a call

without consent." Def.'s Opp., ECF 147 at 4. This assertion is simply false. Humana conflates (1) the people who will receive notice based on a wrong number designation with (2) *bona fide* class members. That is, Elliot proposes using Humana's CGX records as a starting point to identify the first group (potential class members for purposes of effectuating notice under Rule 23) by employing the methodology Anya Verkhovskaya outlines. Elliot does not suggest that Humana's CGX wrong number designation in its records identify the second group (*bona fide* class members). Of course, receiving notice does not mean a person is a *bona fide* class member. Rather, the goal is to provide notice to as many potential class members as possible so that they can decide whether to exclude themselves or be class members.

Prerecorded call TCPA classes with the same class definition and similar or lesser records have been certified by many courts. *See Bakov v. Consol. World Travel, Inc.*, No. 15 C 2980, 2019 WL 1294659, at *20 (N.D. Ill. Mar. 21, 2019) (certifying TCPA class where defendant contended that each class member must provide individualized evidence if a prerecorded message played and rejecting opinions of Daley); *Williams v. PillPack LLC*, 343 F.R.D. 201, 207 (W.D. Wash. 2022) (holding common issues predominate because individual factual determinations can be accomplished by various means rendering an evidentiary hearing on each claim unnecessary); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV, 2018 WL 3145807 (S.D. Fla. June 26, 2018), *decertified by consent*, 2020 WL 1846165 at *1 (S.D. Fla. Mar. 18, 2020) (class certified where defendant argued that wrong number destination did not independently establish that defendant reached a wrong number with infallible certainty); *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277, 298 (D. Utah 2021) (finding that Snap's call logs represent common evidence that can be used to resolve the issue of whether the prerecorded voice message "actually played," and rejecting argument from Daley that consent is individualized), *leave to appeal denied*, No. 21-600, 2022 WL 482156 (10th Cir. Feb. 16, 2022); *Head v. Citibank, N.A.*, 340 F.R.D. 145, 153 (D. Ariz. 2022) (class members would be identified by whether or not they are Citibank customers, rather than if their account is marked "wrong number," and rejecting Daley's claims that numbers marked "wrong" may not actually be wrong and issues would be "time consuming and difficult"); *Samson*

*v. United Healthcare Services, Inc.*, No. 2:19-CV-00175, 2023 WL 6793973, at *11 (W.D. Wash. Oct. 13, 2023) (rejecting the argument that "wrong number" dispositions have multiple meanings and consent defenses would require call-by-call inquiries); *Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 603 (C.D. Cal. 2021) (holding that even if wrong number codes were not used at all and notice was effectuated only by publication, the parties would still have an objective way to test a claim); *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 158 n.8 (S.D. Cal. 2019) (rejecting Daley's freestanding legal conclusions), subclass partially decertified by agreement of the parties in *McCurley v. Royal Sea Cruises, Inc.*, No. 17-CV-00986-BAS-AGS, 2020 WL 4582686 (S.D. Cal. Aug. 10, 2020). These cases prove that where the class is defined based upon noncustomers and there are records of prerecorded calls made, the class is certified. Defendant cites cases with different class definitions and class certification standards.

Humana's straw man argument taints its entire opposition. Humana has not opposed the actual class Plaintiff asks this Court to certify or the records he will use. This distortion throughout Humana's Opposition renders its arguments, and the so-called "facts" in its 35-page Opposition, irrelevant to the certification issues before this Court. Humana violated the TCPA uniformly, each potential class member has the same objective claim as Elliot, and common questions can be resolved with common evidence. Thus, this Court should grant class certification.

## II. ARGUMENT

### A. Questions of Law and Fact Predominate Over Individual Questions.

The primary attack in Humana's Opposition is on the predominance element. ECF No. 147 at 17–29. But its arguments on predominance are misguided. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" as a class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). When the same evidence suffices to make a *prima facie* case on central issues for all class members, individual inquiries are necessarily subordinate, and predominance is satisfied. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). The plaintiff need not show that every element can be established by class-wide proof. *See id.* (explaining that Rule 23(b)(3) supports class certification so long as "one or more

3

of the central issues . . . are common to the class and can be said to predominate" (internal quotation marks and citation omitted)). Indeed, predominance of a common issue justifies class certification, even if other important issues, such as specific affirmative defenses, must be addressed individually. *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020); *see also Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) ("Even where defendants point to some evidence that a defense will indeed apply to some class members . . . courts routinely grant certification because 'Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class.'" (internal citations omitted)). Moreover, "the need to manually review files is not dispositive. If it were, defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 540 (6th Cir. 2012) (internal quotation marks and citation omitted).

"Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Hicks*, 965 F.3d at 464 (quoting *Young*, 693 F.3d at 545). The policy at the core of class actions is to overcome the fact that small recoveries do not provide the incentive for any individual to bring a solo action. *Young*, 693 F.3d at 545. Where it is not economically feasible to obtain relief with small individual suits, aggrieved persons may be without any effective redress without a class action. *Id.*

Here there is no question that this standard is met. The single claim of each individual is identical, with identical objective elements and reliance on the same records. There are no unique defenses. This case presents the same common elements as the certified cases above, based on a single course of wrongful conduct.

**1. Actual Claim.**

Determining whether "questions of law or fact common to class members predominate begins with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton*, 563 U.S. 804, 809 (2011). Here, to prevail on his TCPA claim, Elliot must prove that (1) Humana called the Class member's cellular telephone; (2) using an artificial or prerecorded

4

voice; (3) without the individual's prior express consent. The essential elements of the TCPA claim, combined with the objective class definition, do not turn on Humana's wrong number designations. Humana's arguments about the accuracy of its wrong number designations simply do not detract from the predominance of common liability questions surrounding Humana's conduct.

These central issues are common to the class and predominate over any potential individualized questions because the same evidence suffices for a *prima facie* case across the Class. Whether Humana called the Class member's cellular telephone number can be established through common evidence which identifies if a number was a cellular number. *See* Exhibit 1: Transcript Excerpts of Margaret Daley Deposition ("Daley Depo.") 9:3–8; *see also* Exhibit 2: Declaration of Anya Verkhovskaya ("Verkhovskaya Decl.") ¶ 28 n.3. Similarly, whether calls used a prerecorded voice is an issue common to each Class member that can be resolved by reference to common evidence: Humana's end of day reports show prerecorded calls and the length of the calls. *See* Ex. 3: Transcript Excerpts of Angelle Guarisco Deposition, dated August 28, 2024 ("Guarisco Depo. No. 1") at 8:18–9:8. Two of Humana's 30(b) representatives testified that the 92 codes meant a message was left by Humana's dialer. *See* Ex. 4: Transcript Excerpts of Melinda D'Ippolito Deposition ("D'Ippolito Depo."), at 12:22–13:1; *see also* Guarisco Depo. No. 1, 92:22–25. Humana cannot now contradict this testimony, but, if needed, calls can also be filtered by call length to show when a message was left. The final element of Elliot's claim is also common across the Class: noncustomers of Humana, who necessarily did not give prior express consent can be determined by comparing the person Humana intended to call (as indicated by Humana's business records) against records relating to the user and/or subscriber of the telephone number, Humana's records regarding its customers, and claimant attestation. Therefore, Elliot can prove these elements through common evidence and common issues predominate over any individualized issues that might arise.

**2. Humana's Effort to Misdirect.**

    **a. Humana asserts factual issues that have no bearing on class certification.**

Courts routinely reject attempts (like Humana's here) to defeat predominance by raising factual issues that have no bearing on the legal question at issue. *See, e.g.*, *Young*, 693 F.3d at 540–45. Put simply, a defendant cannot undermine predominance by introducing irrelevant factual disputes. *See, e.g.*, *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 520 (6th Cir. 2015) (holding that plaintiffs' theory of liability is the focus for assessing whether evidence can generate common answers for the class); *Snap Fin. LLC*, 339 F.R.D. at 299 ("Snap has identified an issue that likely would arise if Wesley defined her class by reference to the 'Wrong Number' notations in its call logs. If the proposed class was so defined, the inaccuracy of the records would raise an individualized issue of consent with the class members. But Wesley's proposed class is not defined by reference to 'wrong number' calls. Snap has not identified any individual issues among the class comprised of noncustomers.").

Humana attempts to do exactly what the court rejected in *Snap*: pretend Plaintiff is pursuing a case based upon Humana's wrong number designations in its CGX records.[1] But the wrong number designations are not part of the class definition or merits inquiry and relate, instead, to notice. Put simply, the central liability question common to the class is whether Humana called noncustomers, without consent, using a prerecorded voice. Thus, even if Humana disputes aspects of its CGX records, these issues are peripheral to class certification. Thus, the granular accuracy of Humana's records is not determinative and, therefore, cannot create predominance issues.

This is critical because trial courts may *only* consider "those matters relevant to deciding if the prerequisites of Rule 23 are satisfied," and "may not turn the class certification proceedings

---

[1] Many of the cases Humana cites where certification was denied involved class definitions that specifically relied on the defendants' wrong number designations. These cases have been distinguished as inapplicable by case law that uses class definitions similar to Elliot's. *See Brown*, 562 F. Supp. 3d at 603 n.13 ("This case is therefore distinguishable from those cited by [defendant] where the class was defined by those with a 'wrong number' code."); *Head*, 340 F.R.D. at 153-54; *Snap Fin. LLC*, 339 F.R.D. at 299.

into a dress rehearsal for the trial on the merits." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851–52 (6th Cir. 2013) (internal citation and quotation marks omitted).

### b. Humana cannot contest its own records and offers no proof for its claims.

Humana's argument against the validity of wrong number designations in its CGX records is also unsupported by facts. Humana's 30(b) representative testified that these notes in the CGX system are made by nurses trained to be careful in recording information and are critical to patient care. *See* Ex. 5: Transcript Excerpts of Angelle Guarisco Depo., dated Nov. 4, 2024 ("Guarisco Depo. No. 2") at 19:8-15. Yet Humana claims that the same notes cannot be relied upon to indicate a wrong number designation. The absurdity of this position is evident. That is why courts routinely reject a defendant's attempt to defeat class certification by attacking its own business records. *See, e.g., Young*, 693 F.3d at 540–45.[2]

Nor does Humana present any evidence that these wrong number designations are actually wrong. But even if it did, this too would be unavailing. *See Johnson v. Navient Solutions, Inc.,* 315 F.R.D. 501, 503 (S.D. Ind. 2016) (predominance satisfied despite possibility that a substantial proportion of phone numbers marked as "wrong number" in defendant's call log databases "may not have actually been a wrong number"); *Snap Fin. LLC*, 339 F.R.D. at 290 (certifying class despite expert's estimate that 92.6% "wrong number" designations could potentially belong to Snap customers).

### c. There is no individualized issue of consent.

Humana attempts to claim that issues of consent are individualized, but this too fails. First, Humana's Opposition demonstrates its complete disregard for obtaining valid consent before bombarding people with prerecorded calls. Humana has repeatedly represented that it calls people whose phone number it received only from third parties like doctor's offices or pharmacies.

---

[2] The logs, which are not to be used for trial, are not hearsay. A statement offered against an opposing party that the party manifested as adopted or believed to be true is not hearsay. *Parker v. Winwood*, 938 F.3d 833, 837 (6th Cir. 2019). The only reason to maintain records of self-reported wrong numbers would be if Humana believed the statements were true.

Guarisco Depo. No. 1, 108:14-22;126:19-127:1; Guarisco Depo. No. 2, 41:4-19. But a pharmacy cannot give Humana consent to make a call to a wrong phone number. A pharmacy or doctor's office records are not always reliable or up-to-date, and getting a bad phone number from such a third party does not save Humana from liability or provide consent when Humana calls the wrong person.

Second, consent is not an issue that can defeat predominance because Plaintiff's class is defined as nonmembers of Humana who did not give consent. The validity of the "wrong number" designation is not relevant. But even with this irrelevant argument, Humana has not identified a single person that was actually a Humana member and said "wrong number." As the court in *Williams v. PillPack LLC* found, to the extent there may be some consumers in the class who did provide prior express consent, the Court may exclude these individuals from the class later in this litigation. 343 F.R.D. 201, 209 (W.D. Wash. 2022) (citing Fed. R. Civ. P. 23(c)(1)(C)); *see also Halliburton Co.*, 573 U.S. at 276 ("That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate"). Under this Circuit's binding precedent: "The fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Young*, 693 F.3d at 544 (internal citation omitted). That is also why the Sixth Circuit has held that "speculation and surmise" as to a possible defense is not sufficient "to tip the scales in a class certification ruling." *Top Flite Fin. Inc.*, 843 F.3d at 1125 (internal quotation marks and citation omitted). "Holding otherwise and allowing such speculation to dictate the outcome of a class-certification decision would" allow frivolous issues to undermine Rule 23. *Id.* at 1126. Elliot has satisfied the predominance factor.

### d. Affidavits or attestations are appropriate.

Noncustomers of Humana who did not give prior express consent can also be determined by common proof of claimant attestations. Despite Humana's protestations otherwise, the use of affidavits or attestations is common in TCPA matters, particularly at the claims stage. In *Lyngaas v. Curaden Ag*, the court held that cases involving a target list of numbers are ideally suited for

claims administration via affidavits to help validate class membership efficiently, as contemplated by Rule 23.[3] 992 F.3d 412, 432 (6th Cir. 2021).

In sum, Elliot has demonstrated that there are common issues of fact and law in this case, and those common questions predominate.[4]

### B. Plaintiff Easily Satisfies the Numerosity Requirement.

In this case, numerosity is easily satisfied. The CGX data demonstrates wrong number designations for 23,682 individuals that received at least one prerecorded call from Humana after telling Humana it had reached the wrong number. Thus, prerecorded calls made to these individuals could be a violation of the TCPA. Eliott "need not establish any precise number of class members at this stage or have already identified who is part of the class." *Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ/LF, 2018 WL 2694457, at *3 (D.N.M. June 5, 2018) (collecting cases).

### C. There are Numerous Common Issues of Law and Fact.

For the same reasons predominance is satisfied, commonality is easily satisfied. The common issues of fact and law are provable through common evidence across the Class. Elliot asserts the exact same claim and the exact same injury as the putative Class members—both Elliot and the Class allege that they were noncustomers of Humana who received prerecorded calls on their cellular telephone. As previously noted, there are no unique defenses against Elliot. *See Johnson v. Comodo Grp., Inc.*, No. CV 2:16-04469 (JKS)(LDW), 2024 WL 2933195, at *12 (D.N.J. June 10, 2024) (both commonality and predominance satisfied).

---

[3] Further, the case Humana cites to support its due process argument actually rejects the position that affidavits violate Humana's due process rights. *See City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d Cir. 2017) (finding that "identification through affidavits or other available records does not necessarily require individualized fact-finding that would be 'administratively infeasible' or 'a violation of Defendants' due process rights.'")

[4] For the reasons stated in Plaintiff's Response to Humana's Motion for Summary Judgment, the emergency exception does not apply to Humana's calls and thus, does not defeat predominance. *See* ECF 129.

9

### D. Plaintiff's Claims are Typical of the Claims and Defenses of the Class.

The typicality standard is easily met in this case. Both the Class and Elliot's claims arise from Humana's initiation of prerecorded calls to individuals who are not its customers. Further, the legal theory for both Elliot and the Class is the same: Humana violated 47 U.S.C. § 227(b) when it made prerecorded calls without prior express written consent. *See Head*, 340 F.R.D. at 151 (finding typicality satisfied with similar facts, noting "every class member will have the same claim under § 227, and every class member could potentially be subject to a consent defense").

### E. Elliot is an Adequate Class Representative and LawHQ, P.C. Should Be Appointed as Class Counsel.

Humana's arguments concerning the adequacy of Elliot and his counsel are replete with lies. Humana makes unsupported assertions that Elliot lied concerning the number of calls he received from Humana, despite Humana's own records corroborating that Elliot received at least 22 calls from Humana. *See* Opp., ECF 147 at 32. What is more—before seeing Humana's records, at the end of April 2022, Elliot sent the call log of the 22 spam calls he received from Humana, and he testified during his deposition that he received these calls. Ex. 6: Transcript Excerpts of David Elliot Deposition ("Elliot Depo."), at 102:18-107:7. Those 22 calls align with the 22 calls that Humana also provided a record of during discovery, Ex. 7: Humana's Call Log Bate Stamped Humana 000001, and that Elliot testified about in his deposition. Elliot Depo., 102:18–107:7. Elliot did not "lie" or "perjure" himself, and for Humana to suggest otherwise is outrageous, false, and sanctionable. Ex. 8: Declaration of David Elliot ("Elliot Declaration").

Likewise, Humana's arguments challenging the adequacy of undersigned counsel to serve as Class Counsel is wholly without merit and frivolous. As both Elliot and counsel's declarations make clear, counsel promptly conveyed, and Elliot rejected, every settlement offer made by Humana. *See* Elliot Declaration; *see also* Ex. 9: Declaration of James S. Wertheim ("Wertheim Declaration"); Ex. 10: Declaration of Trent Alvord ("Alvord Declaration"). These include an offer where Humana agreed to pay Elliot for 22 calls. Elliot later rejected an even larger settlement offer while in mediation before the Honorable Collin Lindsay. *See* Elliot Declaration. As such,

Humana's accusations that counsel committed "a significant ethical violation" by failing to inform Elliot about its settlement offers is again false and a desperate attempt by Humana to avoid liability for its thousands of illegal robocalls.

For all of these reasons, and as set forth in Elliot's motion for class certification, this Court should therefore find adequacy satisfied and appoint Plaintiff Elliot as Class Representative and LawHQ, P.C. as Class Counsel.

### F. Class Resolution is Far Superior to Individual Cases.

#### 1. This case does not present issues with manageability as a class action.

Humana makes no real argument to defeat Elliot's satisfaction of superiority. Humana does not have a right to cross examine every person as it states and there are no individual issues as discussed above. Humana's untenable position would make every class uncertifiable. TCPA claims are by their nature better resolved through a class action and, therefore, a class action is superior. The statute creates a simple scheme for determining if a violation occurred, whether a defense is available, and what the damages ought to be. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 659 (4th Cir. 2019).

#### 2. The Class is ascertainable.

Humana's ill-conceived arguments regarding predominance doom their ascertainability argument. Humana asserts: "Plaintiff imposes several vague prerequisites to class membership without a non-individualized way of identifying people who meet them." Opp., ECF 147 at 6. But this again is factually and legally incorrect. There is nothing vague about the class. It is based on clear objective elements.

Ascertainability simply means that a court should be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria. *Young*, 693 F.3d at 538. In *Riley v. Gen. Motors LLC*, the court found ascertainability satisfied because the class definition could "be objectively determined without any decision on the merits . . . such that inclusion in the Defined Class alone does not establish liability." No. 2:21-CV-00924, 2024 WL 1256056, at *9 (S.D. Ohio Mar. 25, 2024) (quotation marks and citation omitted). "To the

11

extent more is required to encompass potential class members whose requests for service were misplaced, the analysis of additional documentation, such as affidavits from the vehicle purchaser or lessee, still falls within the scope of an allowable process." *Id.*; *see also Young*, 693 F.3d at 539 (finding ascertainability despite the "large number of individual determinations"). The Sixth Circuit has even upheld the use of a special master to review individual claims. *See Rikos*, 799 F.3d at 526.

Importantly, at the class certification stage, not every class member must be identified nor is a precise number of putative class members required. *See Lyngaas*, 992 F.3d at 431–32; *see also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 666 (7th Cir. 2015) ("If class actions could be defeated because membership was difficult to ascertain at the class certification stage, there would be no such thing as a consumer class action"). What is more, a "court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." Newberg on Class Actions § 3.3 (6th ed.); *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 952 (11th Cir. 2015). In *Mantha v. QuoteWizard.com, LLC,* the court held: "The fact that a class list contains members who claims may fail on the merits does not mean that the class cannot be certified." No. CV 19-12235-LTS, 2024 WL 3912459, at *11 (D. Mass. Aug. 16, 2024).

Here, Elliot defines the class through specific, objective criteria that allows for simple identification of putative members. The Class definition identifies a particular group of individuals (noncustomers of Humana) harmed in a particular way (they received prerecorded calls based on Humana's business records). The proposed Class definition is also narrow in scope. And the proposed Class is neither fail-safe nor vague and facially overbroad. Accordingly, the proposed Class is ascertainable and should be certified.

### III. CONCLUSION

For all the reasons detailed above, the class should be certified, Elliot should be appointed as Class Representative and LawHQ, P.C. should be appointed Class Counsel.

DATED: December 31, 2024                    **LawHQ, P.C.**

/s/ *James S. Wertheim*
James S. Wertheim
299 S. Main St. #1300
Salt Lake City, UT 84111
(385) 285-1090
jim@lawhq.com

Michael C. Hartmere
*Pro hac vice*
Michael.Hartmere@lawhq.com

Brittany N. Clark
*Pro hac vice*
Brittany.Clark@lawhq.com

*Counsel for Plaintiff*