# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

DAVID ELLIOT,

      Plaintiff,

v.

HUMANA INC.,

      Defendant.

Case No. 3:22-CV-329-RGJ

## HUMANA INC.'S MOTION TO STRIKE
## SECOND DECLARATION OF CHRISTINA PETERS-STASIEWICZ

### HEARING REQUESTED PER L.R. 7.1(F)

Defendant Humana Inc., by and through the undersigned counsel, respectfully requests this Court strike the Declaration of Christina Peters-Stasiewicz filed on November 5, 2024 as an Exhibit to Plaintiff's Motion for Class Certification and Appointment of Class Counsel. ECF No. 114-9. The full legal and factual basis for this Motion is set forth in the Memorandum in Support below.

Dated: February 5, 2025

Respectfully submitted,

*/s/ Alexander D. Terepka*
Ryan D. Watstein (pro hac vice)
Alexander D. Terepka (pro hac vice)
Logan R. Leonard (pro hac vice)
**WATSTEIN TEREPKA, LLP**
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
Tel. (404) 400-3382
Email: alex@wtlaw.com
Email: ryan@wtlaw.com
Email: lleonard@wtlaw.com

*/s/ H. Toby Schisler*
H. Toby Schisler (pro hac vice)
K. Cassandra Carter, Esq. (KBA #98018)

**Dinsmore & Shohl LLP**
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 977-8152
Fax: (513) 977-8141
Email: toby.schisler@dinsmore.com
Email: cassandra.carter@dinsmore.com

*Counsel for Humana Inc.*

## I.    INTRODUCTION

In his certification motion, Plaintiff attempts to identify phone numbers that received prerecorded calls from Humana without consent with a 3-page declaration submitted by Christina Peters-Stasiewicz. ECF No. 114-1; ECF No. 114-19 (Second Peters-Stasiewicz Dec.). As Humana explained in other briefs, Ms. Peters-Stasiewicz's analysis is flawed and introduces individual questions at every step. *See* ECF No. 147 (Cert. Opp. Response Br.); ECF No. 163-1 (Cert. Opp. Surreply). It also contradicts her own prior work in this case, showing that her supposed "methodologies" are mere guesswork. These points alone preclude the certification of any class.

But the problems with Ms. Peters-Stasiewicz's declaration are even more fundamental: She is not a proper witness who can offer *any* testimony in this case. Ms. Peters-Stasiewicz is not a fact witness. She does not claim any prior, first-hand knowledge of anything relevant to this case. Nor could she. Ms. Peters-Stasiewicz is a total stranger to the case other than her work as an employee of Plaintiff's only disclosed expert, Anya Verkhovskaya.

Ms. Peters-Stasiewicz is not offered (or disclosed) as an expert, either. Plaintiff nevertheless uses Ms. Peters-Stasiewicz to perform "data standardization" using "Sequel tables" to purportedly interpret nearly ten *million* data entries spread across multiple databases she has no experience with, to determine whether they meet certain criteria Plaintiff's counsel identified. ECF No. 112-6 ¶ 3. Using that analysis, Ms. Peters-Stasiewicz claims to have identified the putative "class members in this case." ECF No. 114 at 1. Plaintiff's reliance on Ms. Peters-Stasiewicz—a non-expert, non-percipient fact witness—to analyze Humana's records is improper for several independent reasons.

For these and other reasons below, the Court should exclude Ms. Peters-Stasiewicz's second declaration. This is still another reason that certification should be denied, as Ms. Peters-

Stasiewicz's declaration is the only evidence Plaintiff offered to satisfy several elements of Rule 23, including numerosity, commonality, and predominance.

## II.    BACKGROUND

As detailed in Humana's opposition to certification, this case arises from federally required calls Humana makes to Special Needs Plan (SNP) members, through which Humana provides health risk assessments (HRAs) to serve its elderly and disabled members. *See* ECF No. 147 at 7-8. Humana places HRA calls to SNP members who consent to receive them. *Id.* Plaintiff received one of these HRA calls intended for an SNP member named Debra L., after her number was reassigned to him without Humana's knowledge. *Id.* at 13. In other words, Humana inadvertently called Plaintiff after it lost consent to call a number it previously had consent to call. *Id.*

Plaintiff moved to certify a class of non-members who allegedly received similar "wrong number" calls, claiming he has a classwide way to show that Humana lost the consent it had to call a number (because the number was reassigned, for example). ECF No. 114. His theory is that he can identify non-"account holders" who Plaintiff assumes "necessarily" did not "consent" to receive Humana's calls. *Id.* at 21. Humana introduced overwhelming evidence that Plaintiff's assumption is false. *See* ECF Nos. 147-148. Non-Humana members routinely consent to receive communications from Humana on a member's behalf, such as family, guardians, friends, or nursing homes. ECF No. 147 at 13.

In any event, Ms. Peters-Stasiewicz is the <u>only</u> witness Plaintiff offered to support his claim that he can "identify at least 23,682 people who reported to Humana that it had the wrong number" and "received more than 145,161 prerecorded calls combined." ECF No. 114-1 at 7; *see also* ECF No. 114-9. To reach these conclusions, Ms. Peters-Stasiewicz claims she analyzed at least 8.6 *million* data entries reflecting "calls to more than 1,000,000 unique telephone numbers" pulled

from multiple Humana databases, including "CGX" and "end of day reports" from a Humana system called hCAT.  ECF No. 114-9 ¶ 6 & n.1.

To do so, she says she used "data standardization" methods by loading data into "Sequel tables" for "further analysis."[1] *Id.* ¶ 7. An "interim step of conversion" was "necessary," she claims, without explaining what that step is. *Id.* She then claims she performed a "tabulation" involving "queries" that supposedly "match[ed]" data pulled from one Humana database with calls in another database "with a status value of '202' representing a call connected to a Humana associate." *Id.* ¶ 8. In all, Ms. Peters-Stasiewicz claims to have performed a three-step data analysis to identify the 23,682 people who received 145,161 calls. Like an expert, she claims she relied on a percipient witness's testimony (a Humana employee named Angelle Guarisco who actually has personal knowledge of the databases at issue) to create a "reliable methodology." ECF No. 114-9 ¶ 4.

Except that Ms. Peters-Stasiewicz is not an expert. Plaintiff never disclosed her as one during the expert discovery period in this matter. Nor has he even tried to meet any of the requirements to introduce Ms. Peters-Stasiewicz as an expert under Federal Rule of Evidence 702.

Ms. Peters-Stasiewicz is not a percipient witness, either. She is a total stranger to the case, except that Plaintiff's counsel employed her to analyze data. She is not and has never been a Humana employee with personal experience with the underlying data she analyzed and the databases at Humana that keep that data.

Ms. Peters-Stasiewicz has also totally contradicted herself in this case. She now concludes

---

[1] Amazon Web Services describes Sequel, or Structured Query Language (SQL), as "a programming language for storing and processing information in a relational database. A relational database stores information in tabular form, with rows and columns representing different data attributes and the various relationships between the data values." *What is SQL (Structured Query Language)?*, Amazon Web Services, https://aws.amazon.com/what-is/sql/ (last visited Feb. 4, 2025).

her "methodology" is "reliable" to identify "23,682 . . . class members in this case." ECF No. 114 at 1-2. But she previously claimed she had identified "8,627 unique telephone numbers" belonging to putative class members using a different, also purportedly "reliable" methodology. ECF No. 112-6, First Peters-Stasiewicz Dec. ¶¶ 10, 23. But *only 255 numbers—less than 1%—out of tens of thousands overlap between her first method and her second method*. *See generally* ECF No. 147 at 16-17, 28-30 (citing ECF No. 148-3, Daley Rep. ¶ 55)*.* In other words, Ms. Peters-Stasiewicz has twice tried to answer the same question and came up with totally different answers, underscoring that her methods are unreliable guesswork.

Humana now moves to exclude Ms. Peters-Stasiewicz's second declaration, which Plaintiff filed as the sole support for numerous elements of Rule 23 with his certification motion.

## III.    LEGAL STANDARD

There are three types of witnesses: fact witnesses; expert witnesses; and witnesses offering mere summaries of voluminous records. Ms. Peters-Stasiewicz is none of these, confirming that her declaration should be excluded.

Fact witnesses must "ha[ve] personal knowledge of the matter." Fed. R. Evid. 602(a). Courts may consider a fact witness's non-expert opinions only if they are: (a) rationally based on the witness's own perceptions; (b) helpful to clearly understand the witness's testimony or to determine a fact in issue; and (c) not based on scientific, technical, or specialized knowledge. Fed. R. Evid. 701. Fact witnesses who may provide expert testimony without satisfying Fed. R. Civ. P.'s 26(a)(2)'s disclosure and report requirements must have formed their opinions during the underlying events, not as a retained expert. *See Mem'l Hall Museum v. Cunningham*, 455 F.Supp. 3d 347, 363 (W.D. Ky. 2020) (Jennings, J.).

Courts may consider expert witness testimony if: (a) the expert's scientific, technical, or

other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

In addition, courts may consider "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court," Fed. R. Evid. 1006, so long as it does not contain the proponent's inferences or conclusions. *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998).

## IV.    ARGUMENT

### A.    Ms. Peters-Stasiewicz Is Not an Admissible Fact Witness

The Court cannot consider Ms. Peters-Stasiewicz's declaration as fact witness testimony because she doesn't have the required first-hand knowledge to be a percipient witness.

Percipient testimony draws "'upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event.'" *J&S Welding v. Liberty Mut. Ins.*, 2024 WL 3495073, at *4 (6th Cir. July 22, 2024) (quoting *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2012)); *see also* Fed. R. Evid. 602 ("[T]he rule requiring that a witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe, and must have actually observed the fact" is a "most pervasive manifestation" of the common law insistence upon "the most reliable sources of information."). A business "owner or officer," for example, may testify based on "knowledge and participation in the day-to-day affairs of the business." *J&S Welding*, 2024 WL 3495073, at *4 (citation omitted).

Courts distinguish between a "percipient witness" who has first-hand knowledge and an

"expert" who lacks "prior knowledge of the facts giving rise to litigation." *Chesney v. Tennessee Valley Auth.*, 2011 WL 2550721, at *3 (E.D. Tenn. June 21, 2011) (quotation omitted); *see Webastro Thermo & Comfort N. Am. v. Bestop*, 2019 WL 2417070, at *2 (E.D. Mich. June 10, 2019) ("The defining characteristic of a percipient witness" is that she derives her knowledge "at the time of" the underlying events.), *aff'd*, 2019 WL 4892417 (E.D. Mich. July 29, 2019).

The Sixth Circuit has found that admitting fact witness testimony about company records not based on "the requisite first-hand, personal knowledge" that an employee would have is an abuse of discretion. *JGR v. Thomasville Furniture Indus.*, 370 F.3d 519, 525-26 (6th Cir. 2004) ("[A] lay witness who was never employed by or directly involved in a business is unlikely to have the type of first-hand knowledge necessary . . . . The further removed a layman is from a company's day-to-day operations, the less likely it is that his opinion testimony will be admissible under Rule 701.") (quotation omitted); *see also United States v. Adbulkadir*, 2025 WL 214815, at *3 (6th Cir. Jan. 16, 2025) (Lay testimony is limited to the witness's "own experiences").

Rule 701 was drafted "to preclude a party from surreptitiously circumventing the reliability requirements set forth in Rule 702 . . . through the simple expedient of proffering an expert in lay witness clothing" to "evade the expert witness disclosure requirements." *Adbulkadir*, 2025 WL 214815, at *3 (citing *United States v. White*, 492 F.3d 380, 400-01 (6th Cir. 2007)); *see Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*, 2023 WL 5322213, at *7 (6th Cir. Aug. 18, 2023) ("Parties are not permitted to 'bootstrap' expert testimony in as lay witness testimony.") (quotation omitted). Lay testimony "results from a process of reasoning familiar in everyday life," whereas expert testimony "results from a process of reasoning which can be mastered only by specialists in the field." *Allied*, 2023 WL 5322213, at *7 (quotation omitted).

"Interpretation of . . . data requires scientific, technical, or specialized knowledge to be

conveyed through expert testimony." *Arnold v. United States*, 2022 WL 17830617, at *6 (6th Cir. Dec. 21, 2022); *see also RJ Control Consultants v. Multiject*, 100 F.4th 659, 674 (6th Cir. 2024) ("[I]nterpret[ing]" complex information such as diagrams and lines of code attached to a declaration required expert testimony; lay testimony could not "fill the gap."). Thus, a "**[lay witness's] purported interpretation of [] data is inadmissible**." *Arnold*, 2022 WL 17830617, at *5 (emphasis added).

Here, Ms. Peters-Stasiewicz has no first-hand knowledge of the Humana records she offers testimony about. She's never worked with them on a "day-to-day" basis—or any basis outside of this litigation. She's never even worked at Humana. She thus has no "experiential observations" that could aid a factfinder. Her knowledge derives entirely from an after-the-fact review of records undertaken to provide paid testimony in this case, and from false assumptions about those records that Plaintiff's counsel instructed her to incorporate into her analysis. *See* ECF No. 148-3 ¶¶ 4, 55. She instead relies on an actual percipient witness's testimony to understand these records: Humana employee Angelle Guarisco, who has first-hand knowledge of the databases. ECF No. 114-9 ¶ 4; *see Freeman*, 730 F.3d 590, 596-97 (lay opinion witness who "lacked the first-hand knowledge required to lay a sufficient foundation for his testimony under Rule 701(a)" was "mere speculation or relied on hearsay" because it relied on others' percipient knowledge of thousands of calls, not "his own personal perceptions"). That's how experts gain knowledge, not fact witnesses. *See Chesney*, 2011 WL 2550721, at *3; *Webastro*, 2019 WL 2417070, at *2.

Her method of reasoning—and how she herself describes it—further confirms she's offering expert testimony. She's opining based on professional data-analytic techniques, not everyday reasoning. She drew on millions of data entries from different databases, uploaded them to a new database for "standardization" and "further analysis" using a programming language

called Sequel, then ran complicated, cross-referential queries about codes and call records to determine how many numbers met certain multivariable criteria. ECF No. 114-9 ¶ 7. No wonder she describes her "process" and "analysis" as a purportedly "reliable methodology" that yielded certain "results." *Id.* ¶¶ 3-4 (emphasis added). No ordinary layperson would describe daily-life reasoning like that. This is the language of an expert seeking to satisfy *Daubert*—just as she describes herself in her resume: "Christina Peters-Stasiewicz is . . . **an expert witness** who provides testimony in Telephone Consumer Protection Act (TCPA) class actions[.]" Ex. A (Peters-Stasiewicz Resume) at 3 (emphasis added).

Binding Sixth Circuit precedent prohibits admission of lay testimony like Ms. Peters-Stasiewicz's that offers a party's *interpretation* of complex information. *See Arnold*, 2022 WL 17830617, at *5. Parties must submit that kind of testimony to Rule 702's strict disclosure and reliability requirements. Plaintiff seeks to "surreptitiously circumvent" Rule 702's requirements for experts because he knows her methodology can't withstand such scrutiny, as explained below. *Adbulkadir*, 2025 WL 214815, at *3. Setting that aside, he cannot proffer Ms. Peters-Stasiewicz as "an expert in lay witness clothing" to evade these requirements. *Id.*

Ms. Peters-Stasiewicz cannot testify as a fact witness because she lacks the first-hand knowledge required of percipient lay witnesses. The Court must strike her declaration or apply Rule 702's strict disclosure and reliability requirements—both of which her declaration fails, too.

### B.    Ms. Peters-Stasiewicz Is Not an Admissible "Hybrid Expert"

Ms. Peters-Stasiewicz can't testify as a "hybrid witness" for the same reason: She has no first-hand knowledge about the case. Plaintiff retained her for this case and failed to disclose her as a "hybrid" witness, in any event. *See* Fed. R. Civ. P. 26(a)(2)(C).

Hybrid witnesses are "fact witnesses." *Cunningham*, 455 F.Supp. 3d at 363. Only an

unretained "so-called hybrid or percipient witness" may testify about expert opinions formed during the underlying factual events without complying with Rule 702's expert disclosure and report requirements. *Call v. City of Riverside*, 2014 WL 2048194, at *3 (S.D. Ohio May 19, 2014)). As this Court explained in *Cunningham*, "[t]he typical example" of a hybrid fact and expert witness "is a treating physician who is 'part of the ongoing sequence of events and arrives at his causation opinion during treatment,'" such that "'his opinion testimony is not that of a retained or specially employed expert.'" 455 F.Supp.3d at 363 (quoting *Deere*, 239 F.Supp.3d at 980). A report is required unless "[a] treating physician's 'opinion about causation is premised on **personal knowledge** and observations made in the course of treatment.'" *Id.* (emphasis added); *accord Felden v. CSX Transp.*, 482 F.3d 866 (6th Cir. 2007) (Treating physician could offer expert testimony without providing a report only as to his opinions "**formed at the time of treatment, not at the request of counsel**.") (emphasis added).

"On the other hand, [when] a retained expert 'comes to the case as a stranger and draws the opinion from facts supplied by others, in preparation for trial, he reasonably can be viewed as retained or specially employed for that purpose[.]" *Cunningham*, 455 F.Supp.3d at 363 (quoting *Deere*, 239 F.Supp.3d at 980). "Experts who are 'retained or specially employed . . .' **must** disclose a report[.]" *Id.* (emphasis added) (quoting Fed. R. Civ. 26(a)(2)(B)). "[I]n order to give the phrase 'retained or specially employed' any real meaning, a court must acknowledge the difference between a percipient witness who happens to be an expert and an expert who **without prior knowledge of the facts** giving rise to litigation is recruited to provide expert opinion testimony." *Id.* (emphasis added) (quoting *Deere*, 239 F.Supp.3d at 980). "'It is this difference, we think, that best informs the language of the rule.'" *Id.* (quoting *Deere*, 239 F.Supp.3d at 980).

Here, Plaintiff retained Ms. Peters-Stasiewicz to conduct and testify about data analysis. ECF No. 112-6, First Peters-Stastiewicz Dec. ¶ 3; ECF No. 112-5, First Peters-Stasiewicz Dep. 30:13-16. As discussed above, she's a "stranger" who "draws [her] opinions from facts supplied by others, in preparation for trial." *Cunningham*, 455 F.Supp.3d at 363; *see supra* §IV.A. She had no involvement with this case or its facts until Plaintiff retained her. *See* ECF No. 112-5 at 13:4-9. And as discussed further below, *Plaintiff's counsel*, not Ms. Peters-Stasiewicz, determined the criteria upon which she based her analysis. *See* ECF No. 112-5 at 36:3-11; Ex. B, Second Peters-Stasiewicz Dep. 10:22-11:3. Ms. Peters-Stasiewicz conceded she does not even know why Plaintiff's counsel chose her criteria or whether they're relevant for this case. Ex. B at 11-12.

Ms. Peters-Stasiewicz thus cannot provide undisclosed expert testimony as a "hybrid" percipient witness.[2] The Court must strike her declaration and exclude her testimony or apply Rule 702's stringent disclosure and reliability requirements.

### C.    Ms. Peters-Stasiewicz Is Not an Admissible Expert Witness

#### 1.    *Plaintiff never disclosed Ms. Peters-Stasiewicz as an expert.*

Plaintiff cannot offer or rely on Ms. Peters-Stasiewicz's expert opinions because he never disclosed her as an expert and she never produced a report, as Rule 26(a)(2) requires.

Parties must disclose retained experts and produce reports of their opinions. *See RJ Control*, 100 F.4th at 668 (affirming exclusion of undisclosed expert who never provided a report); *Selby v. Kmart Corp.*, 2017 WL 6347967, at *3 (W.D. Ky., Dec. 12, 2017) (excluding undisclosed experts who never provided reports). When parties fail to do so, courts exclude the witnesses under

---

[2] The fact that Humana deposed Ms. Peters-Stasiewicz is immaterial. As this Court has recognized, that does not relieve Plaintiff from Rule 26(a)(2)(B)'s disclosure requirement or automatic exclusion of her testimony under Rule 37(c)(1) for failure to comply. *See Cunningham*, 455 F. Supp.3d at 364 ("Even though these topics may have been discussed during [the non-disclosed witness'] deposition, mere reference to his deposition transcript does not satisfy the requirements [of Rule 26(a)(2)(B)].") (citation omitted).

Rule 37(c)(1) and bar their testimony on motions and at hearings. *RJ Control*, 100 F.4th at 668. "The exclusion of such evidence is '**automatic and mandatory**'" unless the failure was harmless or substantially justified. *Id.* (emphasis added) (quoting *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004)). Such a failure is not harmless where reopening discovery to allow an expert to produce a report "would reward Plaintiffs for their inability to obey the district court's orders while punishing Defendants." *Id.* at 670.

Plaintiff never disclosed that Ms. Peters-Stasiewicz would provide expert testimony about after-the-fact data analysis. She never wrote a report explaining her "methodology" or the inferences and conclusions she drew. Plaintiff chose not to disclose her as an expert in an attempt to evade Rule 702's reliability requirements. These failures are neither justified nor harmless. Plaintiff had ample time to disclose her and commission a report at the same time he disclosed his expert, Ms. Verkhovskaya, who claimed in her report to rely on Ms. Peters-Stasiewicz's data analysis. Moreover, reopening discovery to allow Ms. Peters-Stasiewicz to write a report would cause Humana to incur the costs of more depositions and another rebuttal report. It would also significantly delay this litigation.

These failures make Ms. Peters-Stasiewicz's exclusion "automatic and mandatory." *RJ Control*, 100 F.4th at 668. The Court should strike her undisclosed expert testimony on this independent basis.

> 2. *Ms. Peters-Stasiewicz's opinions are unreliable and inadmissible under Rule 702 and* Daubert*.*

Even if Ms. Peters-Stasiewicz had been disclosed as an expert, Plaintiff has failed to meet his burden to show her testimony meets all of Rule 702's requirements to consider an expert witness. Ms. Peters-Stasiewicz is not qualified. Her data analysis is based on demonstrably false assumptions. And it is the product of an unreliable methodology. Each of these points renders her

declaration inadmissible under Rule 702 and *Daubert*.

Rule 702 requires the following to consider expert testimony: (a) the expert's specialized knowledge will help the trier of fact understand the evidence or determine a material fact; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of a reliable methodology; and (d) the expert has reliably applied the methodology. Fed. R. Evid. 702. *Daubert* articulated additional factors, including: whether the expert's theory has been tested, is subject to peer review, has a known "rate of error," has standards governing the technique, and is accepted in the "relevant scientific community." *United States v. Stone*, 848 F. Supp. 2d 714, 716 (E.D. Mich. 2012) (citing *Daubert*, 509 U.S. at 593-94). Plaintiff cannot meet his burden on any one of these requirements, let alone all of them.

First, Ms. Peters-Stasiewicz is not qualified to help the trier of fact understand Humana's records under Rule 702(a). Her only formal credential is an undergraduate degree in the Spanish language. *See* ECF No. 112-5, Peters-Stasiewicz Dep. Tr. 14:5-15:6; Ex. A (Peters-Stasiewicz Resume). Her work experience lies in claims administration and class notification, not data interpretation for class certification. *See* ECF No. 112-5, Peters-Stasiewicz Dep. Tr. 15:9-18:25; ECF No. 112-6 ¶¶ 1-9. That's presumably why Plaintiff only offers her testimony to support class *notice*, not certification. Her opinions aren't relevant at this stage, so they aren't helpful, either. *See* ECF No. 159 at 2 ("Elliot proposes using Humana's CGX records as a starting point to identify the . . . potential class members for purposes of effectuating notice under Rule 23[] by employing [Ms. Peters-Stasiewicz's] methodology"); *see, e.g.*, *Sapan*, 2021 WL 5302908, at *3 (finding expert's declaration was "of no utility to the issue of certification" because she "offer[ed] no opinions about" any "Rule 23 element").

Second, Ms. Peters-Stasiewicz's opinions are not based on sufficient facts or data under

Rule 702(b). They're based on (1) assumptions about Humana's records that Humana proved wrong with uncontradicted evidence, *see* ECF No. 147 at 21-27, and (2) criteria *Plaintiff's counsel*—not Ms. Peters-Stasiewicz—selected to align with those false assumptions. *See* ECF No. 148-3 ¶¶ 4, 55. Ms. Peters-Stasiewicz admitted that she was not involved in developing the class identification process, which "'was determined by plaintiff's counsel.'" *Id.* ¶¶ 5, 56 (quoting Peters-Stasiewicz Dep. Tr. 10:22-25). Parties cannot "cloak unexamined assumptions in the authority of expert analysis." *Ask Chems. v. Comput. Packages*, 593 F. App'x 506, 510-11 (6th Cir. 2014).

Third and most importantly, her three-step methodology is unreliable at every step under Rule 702(c). The first step, relying on hand-typed CGX notes containing the term "wrong number," is unreliable because CGX notes with the term "wrong number" simply don't mean what Ms. Peters-Stasiewicsz claims they mean. She asserts that notes with the term "wrong number" indicate people who "t[old] Humana it had the wrong number." ECF No. 114-9 at 3 n.1. In reality, the term "wrong number" appears in CGX notes for a wide variety of reasons, many of which show Humana had consent to call that number. *See* ECF No. 147 at 19-23. The CGX notes can also be inaccurate, and determining what each note means would require extensive, individualized review and cross-examination to verify, as in Plaintiff's case. *See id.* at 23-25 (quoting declarations of putative class members on Ms. Peters-Stasiewicz's list who attested they consented); *see also* ECF No. 148-1, Guarisco Dec. ¶¶ 44-47 (Recordings and subsequent calls, during which members authenticated themselves, revealed that hundreds of numbers Ms. Peters-Stasiewicz identified as "wrong" were in fact correct.). This step thus fails to reliably identify if or when Humana lost someone's consent to contact them.

The second step, relying on phone numbers in another database (hCAT) on the assumption

that they were the ones identified in the CGX notes containing the phrase "wrong number," is likewise unreliable. The CGX note may address one of *multiple* phone numbers, depending on its text. *See* ECF No. 147 at 25-26. A sample of that data—which required a true expert's careful, individualized review—showed that the phone numbers in hCAT didn't match those in CGX as much as **29% of the time**. *Id.* (citing ECF No. 148-3 ¶¶ 82-84, 124). Some hCAT numbers never appeared in any CGX note *at all*. *Id.* (citing ECF No. 148-3 ¶ 83). This step therefore fails to reliably identify the correct phone number associated with a note containing the term "wrong number."

The third step, relying on data that showed Humana *attempted* to send a prerecorded voicemail (PRV) to a phone number listed in hCAT after the date of the note containing the phrase "wrong number," fails because those records don't show whether the number actually *received* the call. Even with extensive, individualized discovery, determining whether a prerecorded call *actually played* would "undoubtedly be difficult" if not "[im]possible." *Sandusky Wellness Ctr. v. ASD Specialty*, 863 F.3d 460, 472-73 (6th Cir. 2017).[3] For example, in *Sandusky*, the Sixth Circuit affirmed denial of TCPA class certification because no records existed that reliably showed which faxes were successfully transmitted, and the reliability of individuals' memory about short messages they may have received years earlier was "dubious at best." *Id.* Here, a number could fail to receive a PRV because its voicemail box was full or because the individual blocked Humana's number, as in Plaintiff's case. Verifying that a number actually received a prerecorded message would require careful review of each purported class member's phone records. This step therefore fails to reliably identify phone numbers that actually received a PRV from Humana.

---

[3] Records that a prerecorded message "should have played" are insufficient. *Sliwa v. Bright House Networks*, 333 F.R.D. 255, 281 n.21 (M.D. Fla. 2019) (citing *Ybarra v. Dish Network, LLC*, 807 F.3d 635, 641 (5th Cir. 2015)).

Ms. Peters-Stasiewicz's methodology is therefore unreliable at every step. And this isn't the first time Ms. Peters-Stasiewicz has proffered an unreliable methodology to answer *the same question*. Without any explanation, she abandoned her first methodology for identifying putative class members, despite testifying that it, too, was "reliable." *See* ECF No. 148-3 ¶¶ 4, 55. But **only 1%** of the telephone numbers in her second set of numbers were included in her first set. *Id.* It's logically impossible for two supposedly "reliable" methods to give almost entirely different answers to the same question. Her testimony professing their reliability therefore lacks credibility. The Court must exclude her opinions under Rule 702(c).

As for Rule 702(d), Ms. Peters-Stasiewicz fails to reliably apply her own methodology. In fact, she hasn't applied it at all. She relies on Ms. Verkhovskaya to undertake the final step in the four-step method, *i.e.* the "reverse append" process. And Ms. Verkhovskaya has not even attempted to apply her process yet. Courts across the country have excluded her "reverse append" opinions for exactly that reason. ECF No. 112 at 18-19 (collecting cases). Moreover, Humana's expert *has* applied her process, and *it excluded Plaintiff himself* from the putative class. *See id.* at 19-20. It associated Plaintiff with his phone number over 20 years ago, and then again 18 months after Humana's calls ceased, but not during the period of the at-issue alleged calls. *See id.* at 20-21 (citing ECF No. 148-3, Daley Rep. ¶ 113). Ms. Peters-Stasiewicz has therefore failed to reliably apply her methodology, which is demonstrably unreliable in Plaintiff's own case.

Ms. Peters-Stasiewicz's opinions therefore fail all four of Rule 702's requirements. They also fail *Daubert*'s additional factors. *See Stone*, 848 F. Supp. 2d at 716 (citing *Daubert*, 509 U.S. at 593-94). Ms. Peters-Stasiewicz hasn't tested her methodology—she hasn't even applied it at all, as described above. *See* ECF No. 148-3 ¶ 52. It isn't subject to peer review. There's no way to know its error rate without individualized discovery and cross-examination to determine whether

a person received and consented to Humana's calls. But her own conflicting methodologies with less than 1% overlap suggest that the error rate is massive. And she hasn't cited standards that exist to govern her method or even attempted to show that it's generally accepted in the relevant scientific community.

In sum, Ms. Peters-Stasiewicz cannot be considered as an expert because Plaintiff didn't disclose her as one and she couldn't meet Rule 702's requirements even if he had.

### C.    Ms. Peters-Stasiewicz's Testimony Is Not Admissible as a Mere Summary

Finally, Ms. Peters-Stasiewicz's complex data analysis did not merely summarize voluminous records, so her testimony can't be considered under Rule 1006.

The Sixth Circuit "ha[s] interpreted Rule 1006 to include five distinct requirements in order for a summary exhibit to be deemed admissible." *United States v. Harris*, 881 F.3d 945, 950 (6th Cir. 2018) (citing *Bray*, 139 F.3d at 1109-10).[4] The fourth factor is the key one here, and it prohibits summaries "embellished by or annotated with the conclusions of or **inferences drawn by the proponent**." *Bray*, 139 F.3d at 1110 (emphasis added). A "proposed summary" therefore must be just that—nothing more than a "summary," that "contains no annotation or suggestion, **even inferential**, that may be considered argumentative." *Anderson v. Otis Elevator Co.*, 2012 WL 5493383, at *3 (E.D. Mich. Nov. 13, 2012) (emphasis added); *accord* Michael H. Graham, 8 HANDBOOK OF FED. EVID. § 1006:1 n.1 (9th ed. 2021) ("Rule 1006 is limited to summaries;

---

[4] These include the following: "First, the documents (or recordings or photographs) must be so voluminous that they cannot conveniently be examined in court by the trier of fact." *Bray*, 139 F.3d at 1109 (quotation omitted). "Second, the proponent of the summary must also have made the documents available for examination or copying, or both, by other parties at a reasonable time and place." *Id.* (quotation omitted). "Third, and relatedly, commentators and other courts have agreed that Rule 1006 requires that the proponent of the summary establish that the underlying documents are admissible in evidence." *Id.* (quotation omitted). "Fourth, reasonably enough, a summary document must be accurate and nonprejudicial." *Id.* at 1110 (quotation omitted). "Fifth and finally, a summary document must be properly introduced before it may be admitted into evidence." *Id.* (quotation omitted).

**Rule 1006 does not extend to assumptions, projections, inferences, opinions, interpretations, etc.**") (emphasis added) (collecting cases). A summary must be completely untainted by a proponent's inferences, even "in the form of labels, captions, [or] highlighting." *Bray*, 139 F.3d at 1110; *see Anderson*, 2012 WL 5493383, at *3 ("there cannot be any hint or suggestion in the summary of a conclusion").

Accordingly, courts do not allow proponents of large quantities of data to "analyze and derive conclusions from the data rather than to simply summarize it." *Westgate Resorts, Ltd. v. Wesley Fin. Grp.*, 2023 WL 5055429, at *4 (M.D. Tenn. Aug. 8, 2023). The court in *Westgate Resorts* found that a declaration proffered as a Rule 1006 summary that included charts generated using Tableau, a data-visualization tool, "constitute[d] expert analysis of such data." *Id.* The deadline to disclose experts had passed, so the court struck the witness's testimony. *Id.*

As detailed above, Ms. Peters-Stasiewicz's declaration contains far more complex data analysis. She didn't just use a data-visualization tool to prepare a chart. She gathered data from multiple Humana databases, uploaded them to Sequel for standardization and "further analysis," then ran complicated, cross-referential queries to determine how many numbers met certain multivariable criteria. Needless to say, her analysis crosses immeasurably beyond the Sixth Circuit's prohibition on even labels and highlighting that contain a "hint" of the proponent's inferences. As the court in *Westgate Resorts* recognized, her declaration is a transparent attempt to smuggle expert testimony in through a backdoor months after the disclosure deadline elapsed. The Court should strike Ms. Peters-Stasiewicz's declaration and exclude her testimony as such.

## IV.    <u>CONCLUSION</u>

In sum, Ms. Peters-Stasiewicz is not a fact or expert witness. And her complex data analysis isn't a mere summary under Rule 1006 either. Her testimony thus should be excluded. And because

her improper declaration was the sole basis to support numerous elements of Rule 23, certification should be denied.

DATED: February 5, 2025     Respectfully Submitted,

<div style="margin-left:3em">

*/s/ Alexander D. Terepka*
Ryan D. Watstein (pro hac vice)
Alexander D. Terepka (pro hac vice)
Logan R. Leonard (pro hac vice)
**WATSTEIN TEREPKA, LLP**
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
Tel. (404) 400-3382
Email: alex@wtlaw.com
Email: ryan@wtlaw.com
Email: lleonard@wtlaw.com

*/s/ H. Toby Schisler*
H. Toby Schisler (pro hac vice)
K. Cassandra Carter, Esq. (KBA #98018)
**Dinsmore & Shohl LLP**
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 977-8152
Fax: (513) 977-8141
Email: toby.schisler@dinsmore.com
Email:  cassandra.carter@dinsmore.com

*Counsel for Humana Inc.*

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this the 5th day of February 2025, a true copy of the foregoing

was sent for service electronically to all counsel of record via the Court's e-filing system:

<u>/s/ Alexander D. Terepka</u>
Alexander D. Terepka