UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DAVID ELLIOT                                                                                    Plaintiff

v.                                                                          Civil Action No. 3:22-cv-00329-RGJ

HUMANA INC.,                                                                                   Defendant

* * * * *

## MEMORANDUM OPINION & ORDER

Humana Inc. ("Humana") moves to exclude the testimony and report of David Elliot's ("Elliot") expert witness Doctor Anya Verkhovskaya ("Verkhovskaya"). [DE 112]. Elliot responded [DE 130] and Humana replied. [DE 140]. Humana also moves to strike the declaration of Christina Peters-Stasiewicz ("Peters-Stasiewicz"). [DE 165]. Elliot responded [DE 168] and Humana replied. [DE 172]. These matters are ripe. For the following reasons, Humana's Motion to Exclude [DE 112] and Motion to Strike [DE 165] are **DENIED**.

## I.      BACKGROUND

Elliot sued Humana for violating the Telephone Consumer Protection Act ("TCPA"). [DE 1 at ¶ 52-66]. Plaintiff alleges Humana telephoned Elliot numerous times despite not being a Humana customer and after being informed that Humana had the wrong number. [*Id*. at ¶ 4]. Elliot seeks to certify his claims as a class action, alleging other individuals have similarly received repetitive robocalls from Humana over a four-year period. [*Id*.].

In support of certification, Elliot relies on Verkhovskaya, a proposed expert witness who frequently testifies in TCPA cases. [DE 112 at 1114; DE 30 at 2369]. Verkhovskaya is the President and CEO of Class Experts Group, LLC ("CEG"), a litigation service organization that offers expert testimony and consulting on data management and analysis for TCPA claims. [DE

1

112-1 at 1140]. Elliot retained Verkhovskaya to provide notice to the potential class as a requirement of class certification. [DE 130 at 2368]. Verkhovskaya opined that using the data provided by Humana, there is a reliable and efficient method of effectively determining and notifying the proposed class that comports with the requirements of Fed. R. Civ. P. 23 and due process. [DE 112-1 at 1139]. To provide notice to potential class members Verkhovskaya proposes:

> (1) Taking a list of phone numbers—identified by Humana's own records—that received prerecorded calls from Humana but had told Humana that it had the wrong number;
> (2) Confirming whether each number is assigned to a cellular telephone using third-party data processors to identify the names of all users associated with those phone numbers;
> (3) Employing a historical reverse lookup process to retrieve related data associated with those users/phone numbers;
> (4) Obtaining telephone carrier data to filter subscriber information (such as names, addresses, email addresses, subscription dates, and other plan-related information);
> (5) Cross-referencing reverse lookup data against bulk telephone carrier data, obtained by carrier subpoena, to identify discrepancies; and
> (6) Implementing a notice campaign using mail and email address information.

[DE 112-1, ¶ 8, 43–67, 68–78, 84–101].

Verkhovskaya uses the declaration of Christina Peters-Stasiewicz ("Peters-Stasiewicz"), the Vice President of CEG, to form her opinion. [DE 112-6 at 1249]. Peters-Stasiewicz's declaration was based on data and call records provided by Humana during discovery on November 1, 2024. [DE 130 at 2367]. Peters-Stasiewicz used Structured Query Language ("Sequel"), a programming language commonly used to search and organize the large data sets provided by Humana to compile wrong number reports. [*Id.*; DE 112-6 at 1252]. These wrong number reports identified two groups of phone numbers where

> (a.) the telephone number has one or more call coded as a prerecorded call with code 92 and also appears within one of the Defendant's internal do-not-call lists (the "Type-A Numbers"); and/or (b.) the telephone number has a prerecorded call

with code 92 that follows a call to a disconnected telephone number with the code 38 (the "Type-B Numbers").

[*Id.* at 1251]. Peters-Stasiewicz's search resulted in 8,627 unique telephone numbers ("Combined Numbers"), including Elliot's own number, that Verkhovskaya used in her opinion. [*Id.* at 1253]. To identify and provide notice to a proposed class Verkhovskaya intends to take the data from Peters-Stasiewicz's declaration, identify the relevant phone carriers using online databases, then subpoena the carriers for names and contact information in a "reverse append." [DE 130-1 at 2404]. The veracity and timing of the calls would then be verified using a sworn claim form and affidavit sent to proposed class members. [*Id.* at 2410-11]. The form would ask potential class members

> If they received a wrong number call from Defendant;
> What was their telephone number at that time;
> How long they have had the telephone number;
> Whether they share the telephone number with anyone;
> Whether they are or were a customer of Defendant; and
> Whether they share the account with anyone else.

[*Id.*]. Finally, Verkhovskaya proposes the parties meet and confer to review a list of preliminary-validated claims to remove any possible Humana customers based on the information available to parties at this final stage. [*Id.* at 2410].

## II.     ANALYSIS

### A.     MOTION TO EXCLUDE [DE 112]

Humana moves to exclude Verkhovskaya asserting first that she is not qualified because "[s]he is a nurse by trade and has no training in data analysis or adjacent fields. Her only 'qualification' appears to be that she routinely holds herself out to be a paid expert for TCPA plaintiffs, which does not suffice." [DE 112 at 1115]. Second, Humana asserts her opinions are not based on sufficient facts or data. They are based on an improper pseudo-expert declaration

from an employee working at her office, Peters-Staciewicz, which is also the basis of Humana's

Motion to Strike [DE 165]. Third, Humana argues that Verkhovskaya's opinions are not based on

a reliable methodology under Rule 702(c). Finally, Humana alleges that

> Verkhovskaya has done nothing to show that she can reliably apply her 'reverse
> append' methodology to the facts of this case under Rule 702(d). She instead invites
> the Court to ignore its 'gatekeeper' function and rely on her unproven, ipse dixit
> promise that she can apply methodologies later.

[DE 112 at 1116]. As a result of these alleged insufficiencies, Humana asserts that her testimony

does not satisfy any of the *Daubert* factors or assist the trier of fact. Elliot argues that

Verkhovskaya is qualified as an expert through her years of service as a court-approved

administrator and decades of experience in notice for TCPA cases. [DE 130 at 2369]. Elliot also

argues that Verkhovskaya's proposed notice methodology is relevant and reliable because it is

based on experience, common practice, and Humana's own records. [*Id.*].

### 1. Standard

The admissibility of expert testimony is set forth in Federal Rule of Evidence 702 which

provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the
> case.

Fed. R. Evid. 702. In *Daubert,* "the Supreme Court established a general gatekeeping obligation

for trial courts to exclude from trial expert testimony that is unreliable and irrelevant." *Daubert v.*

*Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also Conwood Co., L.P. v. U.S. Tobacco*

*Co.*, 290 F.3d 768, 792 (6th Cir. 2002).

> Under Rule 702 of the Federal Rules of Evidence, a proposed expert's opinion is admissible . . . if the opinion satisfies three requirements. First, the witness must be qualified by knowledge, skill, experience, training, or education. Second, the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue. Third, the testimony must be reliable.

*Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008)). The party that proffers the expert testimony understandably bears the burden to establish its admissibility by a preponderance of the evidence. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 250–51 (6th Cir.2001) (citing *Daubert*, 509 U.S. at 592 n. 10).

The Court does "not consider 'the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). The Court must determine whether the witness is qualified to offer an opinion on the specific area of expertise. *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2005 WL 1868046, at *33 (N.D. Ohio Aug. 8, 2005) ("An expert may be highly qualified to respond to certain questions and to offer certain opinions, but insufficiently qualified to respond to other, related questions, or to opine about other areas of knowledge."). "Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of fact." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981).

For an expert opinion to be admissible under FRE 702, a party must demonstrate not that the opinion is *correct*, but that it is *reliable*, and must do so by a preponderance of the evidence. *Davis Elecs. Co. v. Springer Cap., LLC,* 558 F. Supp. 3d 443, 448 (W.D. Ky. 2021) (citing *In re*

*Paoli Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994) (emphasis added)). "So long as the proffered testimony is properly grounded, well-reasoned, and not speculative, district courts should admit it, for the rejection of expert testimony is the exception rather than the rule." *Crouch v. John Jewell Aircraft, Inc.*, 2016 WL 157464 at *2 (W.D. Ky. 2016) (internal citations and punctuation omitted). Even "shaky" expert testimony should be admitted, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" should be employed to attack the testimony. *Daubert* 509 U.S. at 596.

To assist with the determination of reliability, the Supreme Court in *Daubert* laid out several factors for the courts to consider. *Daubert*, 509 U.S. at 592–594.  These factors include: "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert,* 509 U.S. at 593–94). The Sixth Circuit has cautioned that trial courts should look for certain "red flags" when assessing the FRE 702 admissibility of expert testimony. *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012). Indications that expert testimony might lack sufficient reliability include "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Id.* (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009)).

The test of reliability, however, is "flexible," and the *Daubert* factors do not constitute a "definitive checklist or test," but may be tailored to the facts of a particular case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (citing *Daubert*, 509 U.S. at 593; *Dilts v. United Grp. Servs., LLC*, 500 F.App'x 440, 445 (6th Cir. 2012) ("[A] trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony

6

is reliable.") (quoting *Kumho Tire Co.*, 526 U.S. at 152); *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429-30 (6th Cir. 2007) (acknowledging the "flexible" nature of the trial court's inquiry into expert witness reliability)). Courts have "stressed, [] that *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. . . [i]n some cases . . . the factors may be pertinent, while in other cases the relevant reliability concerns may focus upon personal knowledge or experience." *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (finding the *Daubert* factors "unhelpful" in a case involving "expert testimony derived largely from [expert's] own practical experiences throughout forty years in the banking industry [because] [o]pinions formed in such a manner do not easily lend themselves to scholarly review or to traditional scientific evaluation") (internal citations omitted). When a party challenges the testimony of a proffered expert for insufficient "factual basis, data, principles, methods, or their application . . . the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [his or her] discipline." *Kumho Tire Co*, 526 U.S. at 142 (quoting *Daubert*, 509 U.S. at 592). The *Daubert* inquiry involves balancing the desire to liberally admit relevant evidence against the need to exclude misrepresentative "junk science." *Best v. Lowe's Home Centers., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009) (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)).

### 2. Verkhovskaya's Qualifications

Humana argues Verkhovskaya's opinions must be excluded because she is not qualified to opine on TPCA claims or data driven class certification. According to Humana, Verkhovskaya's lack of formal education and reported experience in data analytics shows that she does not possess the "knowledge, skill, experience, training, or education" needed to testify as an expert. [DE 112 at 2234]. Elliot argues that Verkhovskaya has extensive prior experience in claims administration

and TCPA data analysis that qualifies her as an expert qualified by extensive "knowledge, skill, experience, training, or education" in those fields. [DE 130 at 2370-2372].

Verkhovskaya has been called as an expert to provide opinions on class certification and notice. Verkhovskaya is the President and CEO of CEG and specializes in consulting on data management and analysis for TCPA claims. [DE 112-1 at 1140]. CEG also provides class notification, claims administration, and consumer protection class action litigation support services. [*Id*.]. Verkhovskaya has more than two decades of experience coordinating data screening efforts in complex cases while serving as an expert witness or court approved administrator in various class action matters, including hundreds of TCPA cases. [*Id*.].

Humana argues that because Verkhovskaya holds a nursing degree, not a degree in data analysis or adjacent fields, she "simply is not qualified to render her opinions." [DE 112 at 1123]. Caselaw in the Sixth Circuit is clear that a "lack of academic training, a college degree, and previous expert witness experience does not render expert testimony inadmissible." *Dresser v. Cradle of Hope Adoption Ctr.*, *Inc.*, 421 F. Supp. 2d 1024, 1033 (E.D. Mich. 2006). Although a degree can help determine qualifications, "since valid assumptions safely may be drawn from the general training one receives on the way to a diploma," a degree "is neither a necessary nor a sufficient condition for qualification as an expert because the expert's education must be relevant to the opinion, and qualification may be based on knowledge, skill, experience or training as well." *Zuzula v. ABB Power T & D Co.*, 267 F. Supp. 2d 703, 713 (E.D. Mich. 2003). Additionally, the implication that Verkhovskaya is not qualified as an expert on TCPS claims because she had previously worked in an unrelated field is baseless, and Humana cites to no caselaw to support this proposition. *See Johnson v. Comodo Grp., Inc.,* 2020 WL 525898, at *10 (D.N.J. Jan. 31, 2020), dismissed, No. 20-2113, 2021 WL 10312101 (3d Cir. Sept. 7, 2021) ("Ms. Verkhovskaya is clearly

qualified to opine on TCPA issues. Although her college degree was in nursing, she has 19 years of experience serving as an expert witness or court-approved administrator in class action lawsuits, including TCPA suits."). Verkhovskaya's former career as a nurse and lack of degree in data analytics or a related field does not negate her experience or disqualify her as an expert.

Humana also vaguely indicates that Verkhovskaya's lack of experience in personal healthcare information (PHI) and coding indicates a lack of relevant qualification. First, there is no evidence that coding experience or lack thereof would affect Verkhovskaya's qualifications to testify as an expert in this matter, and Humana does not supply any. Second, Humana's argument regarding Verkhovskaya's lack of experience with PHI is also unavailing given that Verkhovskaya has experience in nursing. Additionally, Humana's own source for the contention that insured phone numbers constitute PHI states that "[i]dentifying information alone, such as personal names, residential addresses, *or phone numbers*, would not necessarily be designated as PHI" and that phone numbers and similar information are only PHI if "listed with health condition, health care provision or payment data, such as an indication that the individual was treated at a certain clinic." *See HHS*, *Guidance Regarding Methods for De-Identification of Protected Health Information in Accordance with the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule*, https://www.hhs.gov/hipaa/for-professionals/special-topics/de-identification/index.html (last updated Aug. 22, 2024). Humana has not provided any information to show that these numbers are explicitly connected to a health condition or payment data. In fact, one reason for combing through the data is to locate individuals who were not Humana customers and still received calls.

As a result, Verkhovskaya is qualified by her extensive experience to offer her expert opinion on class action notice and TCPA claim issues and Humana's arguments to the contrary are unavailing.

### 3. Reliability of Verkhovskaya's Opinions

Under *Daubert*, for an expert's opinion to be reliable it must be "supported by appropriate validation—i.e., 'good grounds,' based on what is known." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (citing *Daubert*, 509 U.S. at 590). Stated differently, reliability does not depend on the accuracy of the opinion but "whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Lucio v. Levy Env't Servs. Co.*, 173 F. Supp. 3d 558, 565 (N.D. Ohio), *aff'd*, 670 F. App'x 889 (6th Cir. 2016) (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529).

Importantly, as an initial matter many of the objections raised by Humana regarding Verkhovskaya's reliability "go to the weight that should be given to Verkhovskaya's opinions and not to their exclusion" especially to the extent that they attack Verkhovskaya's data, which is really Humana's own data. *See In re Capacitors Antitrust Litig.*, No. 17-md-2801-JD, 2020 WL 870927, at *2 (N.D. Cal. Feb. 21, 2020). For example, Humana contends that Verkhovskaya's reliance on databases like LexisNexis to identify business numbers is questionable because LexisNexis is an unreliable source of data. *Id*. at 4. This argument is not a ground for exclusion but a challenge that goes to the weight of her opinions, not admissibility. *Id*. Humana will have a full opportunity to cross-examine Verkhovskaya at trial where the possibility of decertification may arise if cross-examination provides a basis for it. *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-CV-03309-JD, 2022 WL 867256, at *4 (N.D. Cal. Mar. 23, 2022).

A. <u>Reliability of Factual Basis</u>

The declaration of Peters-Stasiewicz provides the factual basis for Verkhovskaya's opinion. [DE 112-6 at 1249]. Peters-Stasiewicz's declaration is based on data compiled from records of Humana's own CGX database provided during discovery on November 1, 2024. [DE 130 at 2367]. Peters-Stasiewicz's declaration laid out the methodology used to sort and summarize

Humana's provided data, and it was simple, well-reasoned, and accounted for and eliminated of telephone numbers that would not be class eligible. [DE 112-6 at 1252]. The data used in Peters-Stasiewicz's declaration provides a sufficiently reliable factual basis for Verkhovakaya's expert opinion.

### i. Reliance on Outside Data and Opinions

According to Human, Verkhovskaya's testimony is based on "an improper pseudo-expert declaration from an employee working at her office, Ms. Peters-Staciewicz," who was not disclosed as an expert witness. [DE 112 at 1126]. Elliot contends that information provided by Peters-Staciewicz is simply a compilation of data provided by Humana and is not an opinion of any kind. [DE 130 at 2382]. Further, according to Elliot, evidence provided at the class certification stage need not be admissible at trial and must only be reliable in helping to determine certification. [*Id*.].

Under *Daubert*, an expert "may not adopt another expert's opinions wholesale," *Siegel v. Fisher & Paykel Appliances Holdings Ltd*., No. 3:08CV-429-JDM, 2010 WL 4174629, at *2 (W.D. Ky. Oct. 19, 2010). However, experts need not base their opinions on personal knowledge. *Clark v. Louisville-Jefferson Cnty. Metro Gov't, Kentucky,* No. 317CV00419GNSCHL, 2024 WL 55518, at *3 (W.D. Ky. Jan. 4, 2024). They may rely on facts or data that counsel gave them, *Id*. and as long as they do not merely serve as a conduit for another, "[a]n expert may base his opinions on data gathered by others." *United States v. Maga*, No. 3:08-CR-166, 2010 WL 11519476, at *2 (S.D. Ohio July 8, 2010), *aff'd*, 475 F. App'x 538 (6th Cir. 2012). Interviews, reports, research data, and field research can all be reasonable sources on which an expert may rely in reaching his opinions. *Chavez v. Carranza*, 559 F.3d 486, 497 (6th Cir. 2009).

At most, Peters-Stasiewicz's declaration provided data that Verkhovskaya used to formulate her opinion. Peters-Stasiewicz declaration provided a list of designated wrong numbers which received pre-recorded calls by Humana, compiled from Humana's own records [DE 130 at 2367]. Verkhovskaya's opinion also does not "merely parrot" another's opinion as Peters-Staciewicz does not offer an opinion of any kind, just data that Verkhovskaya considers for her own opinion.  Humana essentially objects to the use of their own data because it was compiled by an employee of an expert witness hired to opine on class certification.

### ii.  *Peters-Stasiewicz's Alleged Expert Status*

Humana further argues that Peters-Stasiewicz's does not qualify as a proper expert or hybrid witness and her declaration cannot be considered by Verkhovskaya. [DE 112 at 1126; DE 165 at 5298-5309]. While Elliot states repeatedly that he is not proposing Peters-Stasiewicz as an expert witness, [DE 168 at 5366] Humana argues that her declaration is still improper expert testimony that Elliot attempts to present admit as mere summary.  However, this Court, along with others who have addressed near identical issues, doubts that Peters-Stasiewicz "needs to be an expert to perform the limited tabulations." *Lavigne* 2018 WL 2694457, at *3. *See also Abante Rooter & Plumbing, Inc. v. Alarm.com Inc*., 2017 WL 1806583, at *5 (N.D. Cal. 2017), amended 2018 WL 558844 (N.D. Cal. 2018). As addressed above, the tabulation Peters-Stasiewicz conducted on the data provided on Humana was simple and clearly explained, much like that conducted in *Lavigne,* another case where Verkhovskaya provided data services.

In *Lavigne*, Verkhovskaya conducted an analysis of the Defendant's call logs to identify 38,125 separate phone numbers that called in, were coded as "Bad/Wrong Number," and were subsequently called again by Defendants and coded as "Bad/Wrong Number." Ms. Verkhovskaya then used data from a third party to identify that 37,219 of these numbers belonged to cell phones.

*Lavigne,* 2018 WL 2694457, at *3. The court in *Lavigne* held that this analysis was simple enough

to not require it be admitted through an expert and upheld the affidavit. *Id.* Peters-Stasiewicz

declaration and the affidavit in *Lavigne* involved a very similar procedure, in a TCPA case, using

data the defendants provided. The data did not require expert admission in *Lavigne,* and it does

not require expert admission here. *See also West v. California Servs. Bureau, Inc.,* 323 F.R.D. 295,

305 (N.D. Cal. 2017), *citing Villanueva v. Liberty Acquisitions Servicing., LLC,* 319 F.R.D. 307,

315 (D. Or. 2017) (relying on data analysis conducted by attorney and attorney's staff to establish

numerosity and noting that "[d]istrict courts in the Ninth Circuit have relied on similar evidence

as adequate"). Although this caselaw is not binding, it is persuasive, and courts within this circuit

have cited to these cases before. *Carmouche v. A1 Diabetes & Med. Supply, Inc.,* 586 F. Supp. 3d

795, 806 (W.D. Tenn. 2022).

      Humana relies on *Westgate Resorts* to support their argument, but this case is easily

distinguishable. In *Westgate Resorts,* the objective of the declaration at issue was to "'summarize

and visualize trends' between Wesley and non-Wesley Westgate accounts—to analyze and derive

conclusions from the data rather than to simply summarize it." *Westgate Resorts, Ltd. v. Wesley

Fin. Grp., LLC,* No. 3:20-CV-00599, 2023 WL 5055429, at *4 (M.D. Tenn. Aug. 8, 2023).

*Westgate Resorts* involves the admissibility of data gathered and submitted for summary judgment,

not class certification which does not require admissible evidence. *See generally Id.* This does not

serve as a basis to exclude evidence submitted for class certification. Moreover, Peters-

Stasiewicz's declaration does not "draw conclusions and inferences" or "summarize and visualize

trends," it merely pulls a defined subset of data with clear parameters for others to opine on. Peters-

Stasiewicz never opines on the data herself, merely sorts and summarizes it. Humana's contention

that Elliot waived this argument by not responding is also unavailing. Elliot argued and provided

caselaw supporting Peters-Stasiewicz's declaration as a mere summary, even if he did not use the exact terminology cited by Humana. [DE 168 at 5367].

    B.  Reliability of Methodology

    Humana also challenges the reliability of Verkhovskaya's methodology to determine class certification and notice. Verkhovskaya's notice methodology takes the data provided by Peters-Stasiewicz's, identifies the relevant phone carriers using online databases, then subpoenas the carriers for names and contact information in a "reverse append." [DE 130-1 at 2404]. The veracity and timing of the calls would then be verified using a sworn claim form and affidavit sent to proposed class members. [*Id.* at 2410-11]. Humana's objections to Verkhovskaya's methodology focus on the reverse append process.

          *i.  Testing and Other Daubert Factors for Reliability*

    Humana briefly argues that Verkhovskaya fails to satisfy any of the specific factors of reliability laid out in *Daubert* such as testing, peer review, error rate, and community acceptance. [DE 112 at 1133]. However, the *Daubert* Court made clear that these four factors do not constitute a "definitive checklist or test" and that no single factor is dispositive of the reliability inquiry. *Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 WL 5966340, at *1 (E.D. Mich. Nov. 8, 2013). Citing *Daubert*, 509 U.S. at 593. There is no requirement that experts such as Verkhovskaya test her theories to satisfy the *Daubert* inquiry. *United States v. Sullivan*, 246 F. Supp. 2d 700 (E.D. Ky. 2003) (permitting evidence where the methodology at issue was "amenable to testing, [but] such testing has not yet been performed.").

    In the case of Verkhovskaya's opinion, testing is not necessary or particularly practical. To fully test her methodology Verkhovskaya would have to essentially provide notice to the entire potential class before certification. Further, Verkhovskaya's opinion relies on a fairly simple

procedure which this Court has already noted has been repeatedly upheld in other districts. Other *Daubert* factors, including analysis of publication, peer review, error rate, and acceptance are all tied to testing. *Raytheon Co. v. Ahtna Support & Training Servs., LLC, No*. 3:21-CV-00239, 2024 WL 4804072, at *3–5 (W.D. Ky. Nov. 15, 2024). Without the need for testing in this case, Verkhovskaya's opinions are sufficiently reliable without testing, peer review, or error rate. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods*., LLC, 250 F. Supp. 3d 244, 262 (W.D. Ky. 2017) (citing *Kumho Tire Co*., 526 U.S. at 141–42) ("Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate determination." (citation omitted)).

ii.   *Application of Methodology*

Humana argues that Verkhovskaya's opinions fail under Fed. R. Evid. 702(d) because she did not attempt to apply her methods to the facts of the case. [DE 112 at 1132]. Humana however never fully explains this argument, and the cases cited in support are no more instructive. *In re Onglyza* explicitly deals with a case where the expert had applied their methodology. *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig*., 93 F.4th 339, 347 (6th Cir. 2024). There the court rejected the expert's testimony because it had been unreliably applied. *Id*. (The experts report claimed that two relevant factors in the case were satisfied but later testified that they were not. These unjustified and unexplained changes cast doubt on the reliability of his testimony.). It appears that Humana has conflated a lack of testing or applied notice with a failure to apply an opinion to the facts of the case. Verkhovskaya's opinion and method for providing notice is based on Humana's own data compiled by Peters-Stasiewicz. [DE 130 at 2367]. Verkhovskaya's opinion concerns the ability to identify and notify class members using Humana's

call records and the facts in the record. [*Id*.]. Verkhovskaya does apply her opinions to the facts of the case, even if she has not yet taken the steps to provide notice before the class has been certified.

Humana provides no caselaw to support its contention that this Court must exclude a notice expert because she has not yet provided notice and applied her methodologies in practice before class certification has been granted. Humana cites to *Carroll v. SGS Auto. Servs., Inc* to support the contention that Verkhovskaya's opinion should be excluded because she had not yet applied her methodology, but this is incorrect. 2020 WL 7024477, at *7 (M.D. La. Nov. 30, 2020). The court in *Carroll* did not exclude Verkhovskaya's testimony because she had not applied her opinion to the facts of the case. *Id*. The court found Verkhovskaya's opinion unreliable because it was based entirely on data from outside databases without the underlying data that is present in this case and involved numerous individual judgments that Verkhovskaya's opinion did not account for. *Id*. *Carroll* was also not a TCPA case where numbers can be validated through carriers as Verkhovskaya's opinion indicates. [DE 130-1 at 2405]. The Court finds the methodology employed by Verkhovskaya to be reliable, as have a number of other districts when she has been presented as an expert on TCPA claims. *See In re Capacitors Antitrust Litig*., 2020 WL 870927, at *2, *Mantha v. QuoteWizard.com LLC*., 347 F.R.D. 376, 387 (D. Mass. 2024).

### iii.  Failure to Identify Elliot

Humana argues that Verkhovskaya's opinion must be excluded as unreliable because it fails to identify Elliot, a named Plaintiff in the case. [DE 112 at 1133]. Generally, when evaluating the admissibility of expert testimony under *Daubert*, a trial court's inquiry focuses on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. However, at times "conclusions and methodology are not entirely distinct from one another." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997). Humana argues that failing to identify Elliot proves that the

methodology itself must be unsound. However, when addressing this argument previously with Verkhovskaya's notice method, courts have found that it does not render her opinion unreliable. *Mantha v. QuoteWizard.com LLC.*, encountered this same issue when Verkhovskaya's methodology in that case did not identify the named Plaintiff who had to be manually added to the clast list. 347 F.R.D. at 387. In *QuoteWizard.com,* the court did not exclude Verkhovskaya's testimony. *Id. QuoteWizard.com* also addresses *Sandoe v. Bos. Sci. Corp.*, which Humana relies on for this argument. 333 F.R.D. 4, 11 (D. Mass. 2019). The court in *Sandoe* did not strike or exclude Verkhovskaya's methodology and concerned "whether Verkhovskaya could reliably identify the name of the person called by the defendant as part of the determination of whether the defendant had called the wrong number." *Id*. (citing *Sandoe*, 333 F.R.D. at 6-7)). This is a different issue and context than what was found in *QuoteWizard* or here. Failing to identify an already identified class member is not grounds for holding Verkhovskaya's methodology unreliable.

### iv.  Decisions of Other Courts Considering Verkhovskaya's Reports

This court, like others, acknowledges that the opinions of Verkhovskaya have been repeatedly litigated, and received inconsistent treatment at times from various courts across the country. While district courts have at times rejected her opinions for various perceived shortcomings, many have upheld them as reliable for purposes of class certification. Verkhovskaya's opinion, while often similar to past testimony in previous cases, still varies from case to case, and just as importantly, so does the context and underlying data that Verkhovskaya relies on. As laid out through the course of this opinion, Verkhovskaya's expert testimony is reliable for class notice and certification.

### 4.  Relevance

Humana never directly attacks the relevance of Verkhovskaya's testimony; nonetheless, the Court finds Peters-Stasiewicz's declaration and Verkhovskaya's opinion relevant as they help the court determine multiple requirements of class certification under Fed. R. Civ. P. 23 including numerosity and ascertainability. Verkhovskaya's opinion is also relevant in providing notice to the class once certified. Verkhovskaya is qualified, and her opinion is reliable and relevant.

Thus, for all the reasons set forth above, Humana's Motion to Exclude Expert Testimony [DE 112] is **DENIED**.

## C.    MOTION TO STRIKE [DE 165]

### 1.  Rule 12(f) Standard

Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike, even when the moving party does not cite Fed. R. Civ. P. 12(f) as a legal basis for their motion. *Heng v. Bureau of Citizenship & Immigr. Servs.*, No. 1:21-cv-806, 2024 U.S. Dist. LEXIS 151340, at *5 (S.D. Ohio Aug. 22, 2024). Fed. R. Civ. P. 12(f) provides that on a motion made by a party, "[t]he court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court may strike portions of the pleading on its own initiative or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(1)-(2).

Rule 7(a) defines "pleadings" as:

[A] complaint and an answer; a reply to a counterclaim denominated as such; an answer to a crossclaim, if the answer contains a crossclaim; a third-party complaint, if a person who was not an original third party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served.

Fed. R. Civ. P. 7(a). Filings that do not meet this definition of pleading cannot be struck under Fed. R. Civ. P. 12(f). "Motions to strike under Rule 12(f) are addressed within the sound discretion of the Court, although they are generally disfavored." *Hashemian v. Louisville Reg'l Airport Auth.*, No. 3:09-CV-951-R, 2013 WL 1788473, at *5 (W.D. Ky. Apr. 26, 2013), *aff'd* (June 13, 2014) (citing *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997) (internal citations omitted)). "Striking a pleading is a drastic remedy to be resorted to only when required for purposes of justice." *Id.* (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). "A motion to strike should be granted only where there is a clear showing that the challenged defense has no bearing on the subject matter and that permitting the matter to stand would prejudice the party." *Id.* (citing *Ameriwood*, 961 F. Supp. at 1083).

Elliot argues that Humana's Motion to Strike is an improper and untimely filing under Fed. R. Civ. P. 12(f) as it does not seek to strike a pleading as defined by Fed. R. Civ. P. 7(a) and was made outside the rules 21-day window. [DE 168 at 5366]. Humana contends that the motion is a properly filed Motion to Strike the testimony of an improper expert witness under Fed. R. Civ. P. 26, not a motion to strike under Fed. R. Civ. P. 12(f). [DE 172 at 5411].

Fed. R. Civ. P. 12(f) governs motions to strike, even if Humana did not explicitly invoke Fed. R. Civ. P. 12(f). *Heng,* 2024 U.S. Dist. LEXIS 151340 at 5. Humana moves to strike Peters-Stasiewicz's declaration which was provided with the expert report of Verkhovskaya and provides a compilation of phone numbers of potential class members derived from data provided by Humana. [DE 112-6 at 1251]. As a result, Peters-Stasiewicz's declaration is not a pleading under Fed. R. Civ. P. 7(a) and a motion to strike is not appropriate to challenge. This motion was also not filed until February 5, 2025, well beyond the 21-day window to contest a pleading. Humana's

Motion to Strike is **DENIED**. However, the Court may still examine the admissibility of the challenged evidence.

### 2. Other Grounds to Disregard Declaration

Humana provides several additional arguments for why Peters-Stasiewicz's declaration should be struck on reliability grounds. Many of these arguments are extensions of those already made in their Motion to Exclude Verkhovskaya that the court has addressed in detail earlier in this opinion. [DE 112]. In fact, much of Humana's Motion to Strike is a second Motion to Exclude Verkhovskaya. The Court addresses these remaining issues below.

#### i.     *Peters-Stasiewicz's Status as an Expert Witness*

Humana further argues that Peters-Stasiewicz does not qualify as a proper expert or hybrid witness and her declaration cannot be considered. [DE 165 at 5298-5309]. The Court has already found that Peters-Stasiewicz's declaration does not require her admission as an expert to be admissible. *See supra* at 13. Humana's reliance on *Arnold v. United States* to prove that Peters-Stasiewicz is an expert fails. 2022 WL 17830617, at *5 (6th Cir. Dec. 21, 2022). *Arnold* does not address evidence raised for class certification, a wholly different issue from evidence considered for summary judgment or trial. *Id.* Further, the interpretation of data that occurred in *Arnold*, and the sorting and summarizing conducted by Peters-Stasiewicz, are not the same. Peters-Stasiewicz merely compiled and summarized Humana's own data, she did not provide any opinion on it. In *Arnold*, Plaintiffs attempted to use a non expert witness to interpret existing data on steering wheels, to opine that the data proved responsibility for a car crash, stating that "the only way that [Henderson] could have made such a turn without driving off the road all together [sic] was because he must have been in the left lane, [Walker's] lane of travel, 1.5 seconds prior to the collision." *Id.* Opining on data to establish causation is far from the simple sorting of data produced

during discovery that Peters-Stasiewicz engaged in, even if Humana characterizes both as "interpretation." [DE 172 at 5416]. *Arnold* does not apply and Peters-Stasiewicz's declaration is reliable non expert evidence for Verkhovskaya to rely on. Humana's Motion to Strike is **DENIED** on these grounds.

ii.    *Reliability of Evidence for Class Certification*

While not appropriate grounds for a motion to strike the Court may still disregard the challenged filings if they are inadmissible. *Jackson v. Tennessee Dep't of Safety*, No. 3:05-CV-231, 2009 WL 1437570, at *3 (E.D. Tenn. May 21, 2009) (citing *Lombard v. MCI Telecomms. Corp.*, 13 F.Supp. 2d 621, 625 (N.D. Ohio 1998)). ("[A] court should 'disregard' inadmissible evidence, not strike that evidence from the record.") (emphasis in original, citations omitted); *see also Fox v. Michigan State Police Dep't,* 173 F. App'x 372 (6th Cir. 2006) (district court properly did not strike exhibits attached to dispositive motion but declined to consider them as they failed to meet the requirements of Fed. R. Civ. P. 56(e)). Thus, the Court analyzes the offered declaration should otherwise be disregarded as inadmissible evidence.

The Sixth Circuit, in line with other circuits such as the Eighth and Ninth, has held that evidence for purposes of class certification need not amount to admissible evidence, at least with respect to nonexpert evidence. *Lyngaas v. Curaden Ag*, 992 F.3d 412, 429 (6th Cir. 2021) (citing *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 611, 614 (8th Cir. 2011)) (holding that a district court need not "decide conclusively at the class certification stage what evidence will ultimately be admissible at trial"); *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018). Inadmissibility alone "is not a proper basis to reject evidence submitted in support of class certification." *Lyngaas*, 992 F.3d at 428–29. At the class-certification stage the court may consider evidence that is "reliable but that might ultimately be deemed inadmissible." *Id.* Sixth Circuit

21

caselaw holds that the "manner and degree of evidence required" shifts through "successive stages of the litigation," and explicitly allows for evidence that may be inadmissible at trial to be presented during class certification. *Sali*, 909 F.3d at 1006.

Peters-Stasiewicz's declaration is being offered as grounds for the opinion of an expert offered solely for the purposes of class certification.  As set forth above, evidence for purposes of class certification need not amount to admissible evidence, at least with respect to nonexpert evidence. *Lyngaas*, 992 F.3d at 429. Since Peters-Stasiewicz's was not submitted as an expert, and the Court has already found her declaration does not require her to be an expert, inadmissibility alone "is not a proper basis to reject evidence submitted in support of class certification." *Id*. At the class-certification stage the court may consider evidence that is "reliable but that might ultimately be deemed inadmissible." *Id*. Humana's argument that "[s]ome basis must also exist to introduce the evidence at trial, even if in a different form" is not in line with Sixth Circuit precedent that finds the "manner and degree of evidence required" shifts through "successive stages of the litigation," and explicitly allows for evidence that may be inadmissible at trial to be presented during class certification. *Sali*, 909 F.3d at 1006.

### iii.    Reliability of Peters-Stasiewicz

Humana argues that the court should still disregard Peters-Stasiewicz's declaration as it is unreliable and unhelpful to the court in determining certification. [DE 172 at 5420]. Humana relies on the *Daubert* standard for reliability in making these arguments. [DE 165 at 5304-05]. However, as previously stated Peters-Stasiewicz is not being offered as an expert, and the *Daubert* standard would not apply. Although the Sixth Circuit has not expanded on the reliability standard at the class certification stage, the Circuit has never applied *Daubert* reliability to non-expert evidence at this stage. In fact, in previous decisions on inadmissible declarations at the class certification

stage, courts in the Sixth Circuit apply a more lenient standard, explaining that "[a]t this stage of litigation, the Court should consider all the evidence presented in support of and in opposition to class certification, and grant to the evidence the weight that the Court finds is most appropriate." *Serrano v. Cintas Corp.*, No. CIV. 04-40132, 2009 WL 910702 (E.D. Mich. Mar. 31, 2009), *aff'd sub nom. Davis v. Cintas Corp.*, 717 F.3d 476 (6th Cir. 2013). For example, in *Stephenson v. Family Solutions of Ohio, Inc.*, the court rejected a motion to strike unauthenticated exhibits, reasoning that the court's inquiry at the class-certification stage is "tentative, preliminary, and limited." 499 F. Supp. 3d 467, 475–76 (N.D. Ohio 2020). *See also Tedrow v. Cowles,* No. 2:06-CV-637, 2007 WL 2688276, at *2–3 (S.D. Ohio Sept. 12, 2007) (finding "the rules of evidence are not to be applied strictly in deciding a motion for class certification," and thus rejecting a motion to strike where the defendants disputed the authenticity of the exhibit).

Humana's argument that it is "logically impossible" for Peters-Stasiewicz's declaration to be reliable as she uses multiple methodologies that produced different putative classes is also not supported by Sixth Circuit caselaw. Even if this Court were to use the *Daubert* standard for expert reliability that Humana relies on, under *Daubert* reliability "means that it must be 'supported by appropriate validation—i.e., good grounds,' based on what is known." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (citing *Daubert*, 509 U.S. at 590). Stated differently, reliability does not depend on the accuracy of the opinion but "whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Lucio*, 173 F. Supp. 3d at 565 (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529). The Court does not look at the end result to determine if the process or foundation of evidence is reliable. Peters-Stasiewicz's declaration is based on data from records Humana's own records provided by Humana during discovery, in part for the purpose of determining class certification. [DE 130 at 2367]. Peters-Stasiewicz also relies on procedures

similar to those upheld in another district when compiling her data. *Lavigne*, 2018 WL 2694457, at *3. This is sufficient "good grounds" that is reliable even under a more stringent *Daubert* reliability analysis.

Peters-Stasiewicz's declaration is nonexpert evidence submitted to the Court for purposes of class certification. It is proper evidence that an expert can rely on and is relevant to the Court's class certification process. At this stage under Sixth Circuit precedent, the future admissibility of this declaration is not grounds to reject evidence presented to support class certification. *Id.* Humana's Motion to Exclude is **DENIED** and the Court will consider the presented evidence.

### III.    CONCLUSION

For all the reasons above, and the Court being otherwise sufficiently advised**, IT IS ORDERED** as follows**:**

1.   Humana's Motion to Exclude Verkhovskaya's testimony [DE 112] is **DENIED**.

2.   Humana's Motion to Strike the Declaration of Peters-Stasiewicz's [DE 165] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

March 24, 2025