UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DAVID ELLIOT,

*Plaintiff,*

v. Case No. 3:22-CV-329-RGJ-CHL

HUMANA INC.

*Defendant.*

**PLAINTIFF'S PRETRIAL MEMORANDUM BRIEF**

## I. STATEMENT OF FACTS

Plaintiff David Elliot ("Elliot" or "Plaintiff") filed his class action complaint after receiving 22 prerecorded calls from Defendant Humana Inc. ("Defendant" or "Humana"), despite not being a customer and never consenting to receive such calls. Elliot asked Humana to stop calling him multiple times, but Humana did not. The calls Humana made to Elliot were intended for D.L.,[1] who was a Humana customer, but had not had that phone number for at least four years. Humana did not take any steps to verify Elliot's telephone number belonged to D.L. before placing the prerecorded calls to it. After telling Humana it had reached the wrong number, Elliot continued receiving prerecorded calls from Humana and he continued requesting that Humana stop calling him. Several times, after receiving a call and listening to the prerecorded voice message left on his voicemail, Elliot called Humana back and again asked they stop calling him. Yet, even after asking Humana to stop multiple times, Elliot received 17 additional prerecorded calls. During some of the calls, Humana attempted to sell Elliot insurance. The calls from Humana were particularly

[1] Initials are used to protect the identity of Humana members.

stressful for Elliot because at the time his father was in the hospital and with each call he feared the worst.

Humana violated the Telephone Consumer Protection Act ("TCPA") by violating 47 U.S.C. § 227(b)(1)(A)(iii) which prohibits entities from making prerecorded calls, other than for emergency purposes, without the prior express consent of the called party and by violating 47 C.F.R. § 64.1200(d)(3) which provides that businesses are required to honor a stop request within a reasonable period of time.

The prerecorded calls at issue were made as part of Humana's Special Needs Program ("SNP"), which is a health insurance program that provides resources for customers with certain medical conditions. Specifically, Humana alleges the calls placed to individuals in the SNP were in order to conduct a Health Risk Assessment ("HRA"), the purpose of which is determine the chronic needs of the customer.[2] Whether an HRA is conducted or not has no impact on the customer's coverage. Further, no one from Humana ever testified that these were emergency calls.

> Reviewing the content of the messages reveals why no one has claimed they were emergency calls. One of the prerecorded messages left by Humana on Elliot's voicemail stated: Sorry we missed you. I am calling from your Humana at Home Special Needs Plan. **I have some great news to share with you about Humana** at Home Care Management. A service that you have as part of your plan and it's available to you at no additional cost. **We will attempt to reach you again soon**. If you have an urgent need, please call us back at 1-866-868-5092. You can also call TDD 711. We are available Monday through Friday from 9:00 am to 5:15 pm Eastern Standard Time. Again, that Humana toll free number is 1-866-868-5092. Thank you for your interest in Humana we look forward to speaking with you soon.

ECF 113 at 6. The message does not indicate any urgency or even request a call back.

Humana keeps call logs, which it refers to as End of Day Reports, that represent the autodialer's activity on a particular day. These reports identify the number of calls, the date and

[2] There is no requirement, by Medicare or otherwise, that the calls to customers in the SNP be prerecorded. Indeed, Humana has the option to make these calls without using a prerecording and thus would not be in violation of the TCPA if it were to reach a wrong number.

time of the calls, as well as those calls where a prerecorded message was left. Humana uses disposition codes to demonstrate the outcome of calls. For instance, if a prerecorded message was left, the call is marked with a disposition code of 92. Additionally, Humana maintains an internal platform called the Clinical Guidance eXchange or "CGX." Humana stores and documents Humana's customer records on CGX, as well as the outcomes of phone calls. The CGX Notes contain information about whether the wrong person/non-Humana customer was reached and at which phone number. These records show that many people who are not Humana customers, like Elliot, received dozens of prerecorded calls even after telling Humana that it had the wrong phone number.

## II. ISSUE OF FACTS TO BE RESOLVED AT TRIAL

A. In regard to the prerecorded call claim, whether Humana's made prerecorded calls to Elliot and the class without consent and whether those calls were willful.

B. In regard to the failure to honor a stop request claim:

1. Whether Humana made calls to Elliot after being told to stop.
2. If those calls were telemarketing calls.
3. Whether Humana willfully and knowingly placed calls to Elliot after being asked to stop.
4. Whether Elliot's phone is residential.

## III. DISPUTED ISSUES OF LAW

A. There are no disputed issues of law to Plaintiff's knowledge.

## IV. SUMMARY OF PLAINTIFF'S POSITION ON ISSUES OF FACT AND LAW

**Prerecorded Call Violation**

Humana violated the Telephone Consumer Protection Act ("TCPA") by violating 47 U.S.C. § 227(b)(1)(A)(iii) which prohibits entities from making prerecorded calls, other than for emergency purposes, without the prior express consent of the called party and by violating 47 C.F.R. § 64.1200(d)(3) which provides that businesses are required to honor a stop request within a reasonable period of time.

Humana made 22 prerecorded calls to Mr. Elliot without his consent. There is no dispute Mr. Elliot was not a Humana customer or that he gave consent. While Humana disputes the number of calls, even though their own records demonstrate there were 22 prerecorded calls made to Mr. Elliot, they do not and cannot dispute there was at least one. Further, Humana made such calls to at least 23,000 other people who had told Humana it had reached the wrong person.

Humana's argument that its calls were made for emergency purposes fails for multiple reasons. First, it is clear the purpose of the call was not an emergency affecting the health and safety of consumers. Indeed, other courts examining similar calls found these types of calls do not fall within the emergency exception. Second, even if the call was for emergency purposes, the emergency ceased after Elliot requested Humana to stop calling him. Finally, Humana has waived this argument because it is an affirmative defense and Humana failed to raise it previously.

**Failure to Honor Stop Request**

The implementing regulations of the TCPA at C.F.R. § 64.1200(d) prohibit "any call for telemarketing purposes to a residential telephone subscriber unless" the caller has instituted a list of minimum procedures designed to ensure that consumers can opt out of receiving such calls. *See Dawson et al. v. Porch et al.*, No. 2:20-CV-00604-RSL, 2024 WL 4765159, at *5 (W.D. Wash.

Nov. 13, 2024). Thus, Humana was required to have these procedures in place before it made any calls.

To prevail on his claim, Elliot must prove that: (1) he is a residential phone subscriber, (2) who received a call made for telemarketing purposes, (3) from an entity that has not instituted the minimum procedures required by 47 C.F.R. § 64.1200(d), (4) more than one time in a twelve-month period. *See Kemen v. Cincinnati Bell Tel. Co. LLC*, No. 1:22-CV-152, 2024 WL 3633333, at *2 (S.D. Ohio Aug. 2, 2024). As to the third element, the "minimum standards" require procedures to include provisions calling for the entity to train all "[p]ersonnel. . .who are engaged in any aspect of telemarketing" on the existence and use of that Do Not Call ("DNC") list, the recording of DNC requests and that they are "honored" within a reasonable time. 47 C.F.R. § 64.1200(d)(1)–(6) (emphasis added). Thus, businesses are required to honor a stop request within a reasonable period of time and the failure to do so is a violation of the TCPA. 47 C.F.R. § 64.1200(d)(3).

Elliot has sufficiently proven that Humana violated 1200(d). Humana does not contest that Elliot's phone was used for residential purposes or that he received more than one call within a twelve-month period. The telemarketing requirement is satisfied because the calls to Elliot were telemarketing calls. In determining whether a call constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015). Calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See* In re Rules & Reguls. Implementing the Tel. Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id*. Humana's corporate designee testified that these calls are made in connection

with increasing or maintaining Humana's "STARS" rating, which directly impacts how a consumer might view Humana and compare it to other insurance providers and in making a decision about from which company to purchase health insurance. When these HRA calls are completed, it increases Humana's "STAR" rating—which directly impact its sales and consumer perception.

Elliot also testified during deposition that on more than one occasion, Humana attempted to sell him health insurance. In regard to whether Elliot made an appropriate stop request, Elliot also unequivocally asked Humana to stop calling him several times. That is sufficient as a stop request under the TCPA; the law does not require Elliot to ask specifically to be placed on Humana's do-not-call list. Further, Humana admits that Elliot's number should have been marked invalid, but its agent failed to do so. Humana failed to timely honor Elliot's stop request and failed to timely place him on Humana's internal do-not-call list in violation of the regulation.

DATED: March 31, 2025

Respectfully submitted,

/s/ *James S. Wertheim*
James S. Wertheim
The HQ Firm, P.C.
7533 S. Center View Ct. #4424
West Jordan, UT 84084
(385) 440-4121
jim@thehqfirm.com

Michael C. Hartmere
*Pro hac vice*
Michael.Hartmere@thehqfirm.com

Brittany N. Clark
*Pro hac vice*
Brittany.Clark@thehqfirm.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2025, a true and accurate copy of the foregoing was served upon all counsel of record through the Court's ECF/PACER e-filing system.

/s/ *James S. Wertheim*
James S. Wertheim