IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| DAVID ELLIOT<br><br>    Plaintiff,<br>v.<br><br>HUMANA INC.,<br><br>    Defendant. | Case No. 3:22-CV-329-RGJ |

**HUMANA'S SURREPLY IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

**HEARING REQUESTED PER L.R. 7.1(F)**

I.  **INTRODUCTION**

In its opposition, Humana established that Plaintiff did not and cannot meet his burden to satisfy any of Rule 23's elements. For one, Humana showed a litany of individual questions prevent this case from being tried with common proof, precluding predominance. Whether Humana lost consent to place any given HRA call cannot be proven in one stroke by limiting the class to non-members, for example, because family, friends, and others consent to calls for elderly and disabled Humana SNP members. Determining consent as to any call would therefore require written discovery, subpoenas, and depositions as to each individual member of the proposed class. Humana established that with overwhelming evidence, including declarations, call recordings, CGX notes, expert testimony, and so on.

Humana also showed that neither Plaintiff nor his counsel are adequate. Plaintiff's phone carrier records confirm he received at most three voicemails and that Plaintiff testified falsely that he received many more. Plaintiff's counsel facilitated that false testimony by repeatedly relying on it. They also didn't communicate Humana's settlement offers, thus violating the Rules of Professional Conduct.

Plaintiff's reply confirms that both he and his counsel are inadequate to represent a class. For example, they both disclose a confidential mediation offer in new declarations, in violation of multiple orders. Courts often grant *terminating sanctions* for such violations. And here, their violations were particularly egregious because they weren't responsive to Humana's argument that counsel failed to disclose *pre*-mediation offers. That counsel would break the mediation privilege to distract the Court from other violations confirms their inadequacy, as explained at ECF No. 161.

The reply likewise confirms that Plaintiff and his counsel submitted sham testimony to hide their misconduct. In direct contradiction to what he said five times under oath in his deposition, Plaintiff now claims that he *did* receive settlement offers from his attorney but didn't recall them due to "bouts of short-term memory loss." ECF No. 159-8. This story isn't credible. Plaintiff suffered from selective memory loss affecting a few lines of problematic testimony out of thousands? Counsel sat silently while his client offered incriminating testimony that he now claims

1

he knew was false? Counsel then failed to correct it on redirect or through an errata? None of that is believable and further confirms their inadequacy. *See* ECF No. 162 (motion to strike).

The new testimony about the number of calls also doesn't change that Plaintiff perjured himself. A declaration from a "development manager" at *Plaintiff's counsel's firm* saying that Plaintiff must have received 22 calls because an app *they created* says so can't trump Plaintiff's neutral phone carrier's records showing he received at most 3. *See* ECF No. 159-10 (Alvord Dec.). And it turns counsel into material witnesses that have again relied on false testimony, further rendering them inadequate.

Plaintiff's reply also confirms that he cannot satisfy any of the other Rule 23 elements. Starting with predominance, Plaintiff largely fails to respond to Humana's overwhelming evidence that every step of Plaintiff's four-step proposal for trying the case with common proof fails. He ignores that the "reverse append" step *excludes him* from the putative class. ECF No. 148-3, Daley Rep. ¶¶ 98, 117, 138. He ignores that this four-step process overlaps with his expert's prior "reliable" process by *less than one percent*. *Id.* ¶ 55. He also fails to respond to Humana's evidence, including declarations from non-members, showing Plaintiff has no way to identify people who received pre-recorded calls from Humana without consent. These non-responses alone show certification should be denied.

The few arguments Plaintiff makes fail. On consent, for instance, he claims that the "wrong number" notes in CGX are "irrelevant" to certification. But that's the opposite of what he said in his motion. There, these records are all he relied on for the first step of his four-step process, claiming (at 7) that they were unimpeachable evidence of contact without consent. That Plaintiff has now given up on the records at the heart of his process is dispositive.

Plaintiff's only "solution" to these crippling problems is to propose sending "notice" to an effectively random group to "self-attest" whether they have claims against Humana. That is not how class actions work. Binding precedent requires the Court to conduct a rigorous evidentiary analysis *now*, not later, to decide whether the case can be tried on a classwide basis with common proof. Plaintiff cannot supplant that by sending claim forms effectively asking recipients "check

2

the box and sign if you want money from Humana." *See, e.g.*, *Sandusky v. ASD Specialty*, 863 F.3d 460, 473 (6th Cir. 2017). Plaintiff's proposal would evade Rule 23 and violate due process.

Plaintiff's reply also shows that he cannot satisfy any of the other requirements to certify a class, either: Ascertainability, commonality, typicality, and numerosity. His arguments are cursory, barely engage Humana's evidence, and fail to rebut the many reasons that Plaintiff can't meet his burden to show these elements are satisfied. The Court should deny class certification.

## II.  ARGUMENT

### A.  Plaintiff Fails to Defend His Four-Step Process of Classwide Proof, Precluding Predominance

The Court must deny certification on predominance grounds because Plaintiff did not (and cannot) rebut all the evidence-backed reasons that his proposal for identifying who received calls without consent fails at all four steps.

Plaintiff first concedes he offers his proposal for class notice, *not* certification, which alone precludes certification. "Elliot proposes using Humana's CGX records as a starting point to identify . . . potential class members *for purposes of effectuating notice under Rule 23* [] by employing the methodology Anya Verkhovskaya outlines." Reply at 2 (emphasis added). This concession alone dooms certification before even reaching predominance because class notice is irrelevant at the certification stage. *See, e.g.*, *Sapan v. Yelp, Inc.*, 2021 WL 5302908, at *3 (N.D. Cal. Nov. 15, 2021) (denying certification, including because Plaintiff did not offer expert opinions on "any. . . Rule 23 element").

Setting that aside, Plaintiff's process for identifying these individuals included four steps: (1) identify hand-typed notes in CGX containing the phrase "wrong number"; (2) use these "wrong number" CGX notes to identify phone numbers in a different database (hCAT); (3) take the phone number identified in hCAT and determine which calls have a code 92 (indicating an attempted prerecorded message to the number) after the date of the hand-typed CGX note; and (4) use a "reverse append" (or look-up) to determine which numbers called belong to non-members (and then falsely assume that the non-member "necessarily" did not consent). ECF No. 147 at 12-14.

3

Humana's opposition showed with voluminous evidence that every step of Plaintiff's methodology is unreliable and introduces individual questions that cannot be answered on a classwide basis. Plaintiff's first step fails, for example, because trying to answer whether hand-typed CGX notes indicate a lack of consent requires individual review of the notes themselves and call recordings, not to mention one-by-one witness examinations. *Id.* at 19-22. Plaintiff's second step likewise fails because answering the question of whether phone numbers in the CGX database match the numbers in another database (hCAT) he incorrectly assumes belong to class members requires an individual, record-by-record review. *Id.* at 25-26 (citing ECF No. 148-3, Daley Rep. ¶¶ 82-84, 124). And his third step fails because Plaintiff falsely assumes records of prerecorded calls Humana *attempted* to send necessarily show calls actually received, as Plaintiff's own false testimony about the number of calls he received shows. *Id.* at 24. Finally, Plaintiff's fourth step of using a "reverse append" to identify non-account holders is so flawed that it excludes even Plaintiff. *Id.* at 27 (citing 148-3 (Daley Rep.) ¶ 98, 117).

In reply, Plaintiff fails to respond to most of Humana's arguments. Plaintiff, for instance, doesn't even respond to Humana's argument that his own expert's "reverse append" process excludes him from the putative class. *Id.* Plaintiff's reply goes as far as expressly throwing under the bus the first step of the process he proposed in his certification motion. That motion relied exclusively (at 7) on "CGX" and its purported records "of people who have told Humana it has reached the wrong number" to identify the "members of the proposed Class." Plaintiff said (at 7) that "any claim by Humana" that these records require "individualized" analysis is "demonstrably false." Humana's overwhelming evidence then showed that hand-typed CGX records don't mean what Plaintiff claimed they did—and determining what they *do* mean would require a detailed individual review. ECF 147 at 19-22.

Recognizing that the entire basis for his certification motion is flawed beyond repair, Plaintiff abandons it in reply. He remarkably claims (at 6) that Humana is "pretend[ing] Plaintiff is pursuing a case based" on its "CGX records," even though that's precisely what he said in his opening motion. *See generally* ECF No. 114 (certification motion and exhibits referring to CGX

4

at least 15 times). More remarkably still, he claims the CGX records are "peripheral" and don't really matter, contrary to his strenuous arguments otherwise in both his certification motion and motion to compel these records after the close of discovery.

By failing to defend it, Plaintiff has effectively conceded that his proposed four-step process fails at every step. This alone precludes certification.

### B. Plaintiff's Reply Confirms That Individual Questions Predominate Over Common Ones

The few arguments Plaintiff does make further confirm he cannot establish predominance. To start, Plaintiff admits that the TCPA claims at issue require proving: "(1) Humana called the Class member's cellular telephone; (2) using an artificial or prerecorded voice; (3) without the individual's prior express consent." ECF No. 114-1 at 15. He says he doesn't need to show a classwide way to resolve these questions. *Compare* ECF No. 114-1 at 15, *with* 159 at 4-5. But binding authority confirms he is wrong. As the Supreme Court has held, classwide proof is required for each "central" issue. *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Each of the three elements Plaintiff identified are prerequisites to liability, so they are central. *See, e.g.*, *Sandusky*, 863 F.3d at 467 (consent central); *Conner v. Fox Rehab.*, 2025 WL 289230, at *14 (3d Cir. Jan. 24, 2025) (affirming denial of certification on predominance grounds based on question of consent alone). In any event, his own arguments about these elements confirm no class can be certified.

#### 1. Plaintiff Cannot Resolve the Central Issue of Consent with Classwide Proof

Starting with the most central element of his claim, Plaintiff fails to show that he has a classwide way to resolve consent.

As explained above, Humana's opposition established that Plaintiff couldn't identify calls Humana made to non-consenting numbers using CGX notes on a classwide basis and that courts routinely deny certification for this very reason. *See, e.g.*, *Morgan v. Adventist*, 2020 WL 1674307, at *3 (M.D. Fla. Jan. 15, 2020) (denying certification because "consent may be given by a person other than the patient consenting to treatment"). Plaintiff's reply arguments confirm that certification must be denied on predominance grounds for that reason alone.

5

Specifically, Plaintiff claims that the evidence Humana offered about its CGX records is improper because it "cannot contest" its records. He likewise says that Humana hasn't "identified a single person" tied to a "wrong number" note that gave consent anyway. Both assertions are wrong. Humana didn't "contest" its records in the opposition. It *explained* (at 7-9) *what they actually meant* and how Humana Care Managers used the phrase "wrong number" in a variety of ways. Of course Humana can do that. Humana also offered (at 10) scores of examples of consenting individuals who are tied to a "wrong number" note in CGX. That included non-members who testified under oath that they or a member provided valid consent for Humana to call the non-member at the number that was allegedly "wrong."

Plaintiff also admits that his proposed four-step method assumes that non-members "necessarily" didn't consent. But the overwhelming evidence shows this assumption is false. Humana explained why (at 6) in its opposition: "SNP members are often elderly people suffering from severe, disabling health conditions. So this group frequently gives Humana phone numbers that don't belong to them as a point of contact." Voluminous evidence confirms this point, including declarations *from non-members* that appear on Plaintiff's class list even though they didn't receive any "wrong number" calls. *See, e.g.*, Delaney T. Decl. ¶ 4 ("When my grandmother first became a Humana member, she provided the 9064 number to Humana as a contact number for her account. She had my consent to do so."). The sole retort Plaintiff offers (at 8) to this evidence is a passing statement that Humana calls numbers it obtains from pharmacies without consent. But he provides no classwide way to identify these numbers. And he flat-out ignores that Humana *first* makes *live* calls—not prerecorded ones—to these numbers to confirm consent before calling them with prerecorded messages. ECF No. 148-1 (Guarisco Dec) ¶ 13.

The reason Plaintiff doubles down on his false theory that non-members "necessarily" didn't consent is his hope that the Court will see parallels between his case and *Wesley v. Snap*, in which a court granted certification because the defendant—in stark contrast to here—didn't "identif[y] any individualized issues among the class comprised of noncustomers." *See* 339 F.R.D. 277, 299 (D. Utah 2021) (cited by Plaintiff at 6). But *Snap* and this case couldn't be more different.

6

As explained above, Humana has identified a swarm of individual questions of consent for non-members, like whether Humana reached a family member or other non-member who consented to receive calls on the member's behalf, making this case like the ones Humana cited in opposition. *See, e.g.*, *Morgan*, 2020 WL 1674307, at *3 (denying certification because "consent may be given by a person other than the patient"); *Sliwa*, 333 F.R.D. at 279-80 (limiting class to "non-customers" didn't prevent individualized inquiries because non-customers may consent).

Plaintiff's other authority doesn't help him either. This isn't a case where "some consumers" may have consented based on "speculation" from the defendant. *See Williams v. PillPack*, 343 F.R.D. 201, 209 (W.D. Wash. 2022) (cited by Plaintiff); *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (same). It's one where Humana proved with evidence—none of which Plaintiff even tries to rebut—that *a countless number* of putative class members consented. *See Hunter v. Time Warner*, 2019 WL 3812063, at *15 (S.D.N.Y. Aug. 14, 2019) (denying certification in TCPA class action and noting that it is "well established that courts must consider potential [consent] defenses in assessing the predominance requirement"). As such, Plaintiff's arguments confirm he cannot establish the core question of consent with common proof.

### 2. Plaintiff Cannot Resolve with Classwide Proof the Central Issue of Whether a Prerecorded Message Played on Any Particular Call

Plaintiff's reply likewise confirms that there's no common way to resolve whether a prerecorded message played on any given call. His own case exemplifies why: Plaintiff claimed that he received 22 calls from Humana, but his phone records confirm that he received 3 voicemails at most. *See* ECF No. 142 at 14-16 (citing ECF No. 113-2.A at Tracfone 14). Plaintiff tries to refute that on reply by (1) submitting two new declarations, one from Plaintiff and another from a "Development Manager" (Trent Alvord) at his counsel's law firm, and (2) contending that he can resolve this issue across the class by identifying "Code 92" calls and then filtering the calls by length to see if a message played.

Plaintiff's arguments and new evidence only prove Humana's point. His declarations show that just determining at trial how many calls *Plaintiff* received would require substantial written

7

discovery *and* cross-examining at least the following: (1) a Humana witness to explain what Code 92 means in its records; (2) Plaintiff himself, to see if he misrepresented the number of calls he received; (3) a witness from Plaintiff's phone carrier, to show how many calls he actually received; and now (4) witnesses from his own counsel's firm (Alvord and potentially others), to evaluate how the application they created to solicit clients logs phone calls. This process would then need to be completed tens of thousands of times.

Plaintiff's reply thus confirms that even if the question of whether a pre-recorded message played were the *only* individual issue in this case, that would alone preclude certification.

  **C.**  **Plaintiff's Reply Confirms He Cannot Establish Ascertainability**

Plaintiff's reply likewise confirms he cannot satisfy ascertainability, an implicit prerequisite for certification under Sixth Circuit authority. First, he still doesn't say whether "persons . . . to whom Humana placed" calls must be named subscribers or users of the phone numbers. That's a critical problem, since users can consent to calls but cannot be identified in a non-individualized way.[1] Second, Plaintiff fails to respond to the point that there is no objective, non-individual way to identify whether numbers are "assigned to a current [Humana] account holder" per his class definition. As Humana explained in its opposition (at 30-31), both of these points alone preclude him from establishing that Plaintiff's class, as he has defined it, can be ascertained with objective, non-individualized criteria.

Instead of responding to Humana's evidence or arguments, Plaintiff mischaracterizes them. He claims (at 12), for example, that "not every class member must be identified" at the "certification stage." Humana never argued otherwise. Plaintiff's burden at the certification stage is to show he has a non-individualized method to ascertain class members. Otherwise, the Court will have no way to send notice to class members. Plaintiff can't meet that burden by merely claiming (at 12) he'll try to do that at a later "stage," as Plaintiff's own out-of-circuit authority

---

[1] And because Plaintiff concedes (at 15) that the first element of his claim is that "Humana called *the Class member's* cellular telephone," Plaintiff's failure to identify a classwide way to resolve the user/subscriber issue also defeats predominance.

8

confirms. *Mullins v. Direct Digital*, 795 F.3d 654, 672 (7th Cir. 2015) (plaintiff should have "plan to identify class members").

That is especially true in the Sixth Circuit: "**Before** a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine"—"with reasonable accuracy"—"whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-39 (6th Cir. 2012) (emphasis added) (quotation omitted). Plaintiff knows this, as he cited *Young* in his briefing (and many other cases making the same point). *See, e.g.*, ECF No. 114-1 at 20 (certification motion citing *Young* in ascertainability discussion).

Finally, Plaintiff's arguments and authority, like *Riley v. General Motors*, that his class isn't a "fail safe" don't help him show ascertainability. Humana never argued the proposed class is a "fail safe," so this point is irrelevant.

In sum, Plaintiff's response confirms he has failed to show ascertainability.

### D. Self-Attestation Forms Cannot Ever Resolve Predominance, Nor Can They Be Used to Ascertain Class Members Here

Recognizing there are no class records he can use to establish that common questions predominate, Plaintiff argues that he can use claim forms to simply ask class members if Humana should be liable to them. But it is well settled that self-attesting claim forms cannot show predominance. That is particularly where a defendant has, as here, shown that it would be entitled to challenge each such form with individualized evidence. *See Loughlin v. Vi-Jon*, 728 F. Supp. 3d 163, 184 (D. Mass. 2024) (similar); *Conner v. Fox Rehab.*, 2022 WL 4080761, at *6 (E.D. Pa. Sept. 6, 2022) (rejecting proposed use of claim forms and finding predominance not satisfied), *aff'd*, 2025 WL 289230; *Guarisma v. Hyatt Equities*, 2017 WL 6949266, at *10 (S.D. Fla. Sept. 28, 2017) (process that required individuals to submit receipts did not satisfy predominance because Defendant would have right to challenge each individual's evidence); *Decastro v. New York*, 2019 WL 4509027, at *14 (S.D.N.Y. Sept. 19, 2019) (class-membership affidavits cannot satisfy predominance if defendants can plausibly challenge the credibility of each at trial).

9

Here, Humana's overwhelming evidence shows it would be entitled to challenge claim forms with individual evidence on *every* element of the claim, including consent. *See generally* ECF No. 147 at 19-24 (discussing CGX records, call recordings, putative class member declarations, and other evidence showing individual issues). Claim forms thus only highlight the thousands of mini-trials that would be required to resolve liability, precluding the certification of any class. *Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 85 & 92 (1st Cir. 2021) (TCPA Plaintiff could not resolve predominance issues related to consent with affidavits that Defendant intended to challenge individually at trial, especially considering affidavits that Defendant supplied from putative class members attesting they consented).

To the extent Plaintiff proposes to use claim forms to identify class members (*i.e.*, to establish ascertainability), that fails too. Courts reject claim-form processes unless they begin with reliable, "objective records" that "readily identify" likely class members. *Byrd v. Aaron's*, 784 F.3d 154, 171 (3d Cir. 2015), *as am.* (Apr. 28, 2015); *see also Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 948-49 (11th Cir. 2015) (rejecting claim-forms process because records did not reliably identify class members). Such objective records exist in cases like in *Lyngaas v. Curaden Ag*, but not here. 992 F.3d 412, 431-32 (6th Cir. 2021). In *Lyngaas*, an uncontested "target list of fax numbers that were sent the unsolicited fax advertisement" existed. *Id.* Similarly, in *City Select Auto Sales Inc. v. BMW Bank.*, the court remanded to determine whether the defendant's records were sufficiently reliable to be used "in combination with" self-attestations, which "standing alone" were neither reliable nor administratively feasible. 867 F.3d 434, 440-42 (3d Cir. 2017).

Without reliable, objective records to independently verify claims, however, claim forms amount to mere "say so" that would violate "due process." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012). "This is especially true where the named plaintiff's deposition testimony suggested that individuals will have difficulty accurately recalling [facts that establish or disprove liability]." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013). In *Sandusky*, for example, the Sixth Circuit affirmed denial of TCPA class certification on both predominance and ascertainability grounds because the fax logs reflecting whether a fax was successfully

10

transmitted no longer existed, so there were no objective, reliable records that could identify actual fax recipients to send claim forms to. *Sandusky Wellness v. ASD Specialty*, 863 F.3d 460, 473 (6th Cir. 2017). On top of that, self-attesting claim forms relying on an "individual's recollection of having received a seven-year-old, single-page fax would be dubious at best." *Id.* at 472.

Here, Plaintiff's claim-form process relies not on undisputed, objective records, but on unreliable speculation three times over. It starts with a flawed process to identify putative class members' phone numbers. This proposed process fails and introduces individual questions at every step, as explained in Humana's opposition. ECF No. 147 at 19-24. Plaintiff then takes the results of his unreliable process for identifying phone numbers and uses those numbers for a similarly unreliable "reverse append" process to determine individuals to send claim forms to. *Id.* at 25-26. That process excludes *even Plaintiff*, among other problems confirming its unreliability. ECF No. 148-3, Daley Rep. ¶¶ 98, 117, 138. These points alone preclude using claim forms here.

There are still more reasons Plaintiff's claim form proposal fails. They wouldn't be reliable because they depend on (often ill, elderly, or disabled) "individual's recollection" about calls they may not have even answered years ago. This, too, would render claim forms "dubious at best" per the Sixth Circuit's *Sandusky* decision. 863 F.3d at 473. The record here showing that memory problems preclude claim forms is *far* stronger than *Sandusky*. Plaintiff's deposition testimony suggests "that individuals will have difficulty accurately recalling [facts that establish or disprove liability]." *Carrera*, 727 F.3d at 307. Plaintiff now claims that he couldn't even remember whether his counsel communicated settlement offers to him and submitted a sham declaration to that effect contradicting his deposition testimony. *See generally* ECF No. 162. And Plaintiff falsely testified that he received 22 prerecorded calls from Humana despite his own cell phone records showing he received at most 3. ECF No. 147 at 24. The bottom line is that Plaintiff wouldn't even receive a claim form per his own process. ECF No. 148-3 ¶¶ 98, 117, 138 (Daley Rep.). But if he did, it would be false, confirming that claim forms can't be used here.

The putative class member declarations similarly show the memory problems that make it impossible to use claims forms to reliably determine whether someone received a call years ago

11

that they may not have answered or noticed. Some recipients of Humana's calls were so impaired, for example, that they could not identify themselves and "then fell asleep while on the call." ECF No. 148-1 ¶ 33. How could they be expected to accurately complete a claim form years later asking whether they received calls from Humana? Putative class member declarations likewise show overwhelming evidence of memory problems that would render claim forms unreliable. *See, e.g.*, ECF No. 148-17 (Rose B. Dec.) at ¶ 5 ("I do not have a clear memory of receiving calls from Humana at the 2069 number about Ralph's Humana plan, but I may have received such calls"); ECF No. 148-9 (Christy S. Dec.) ¶ 4 ("I do not recall receiving any phone calls from Humana"); ECF No. 148-15 (Luis S. Dec.) ¶ 4 ("I do not recall ever receiving any phone calls from Humana."); ECF No. 142 (Humana's MSJ Reply) at 14-16; *see also* ECF No. 162 (motion to strike).

Finally, Plaintiff's expert's own work in this case shows that his process for claim forms is unreliable guesswork. Plaintiff has proposed two different methodologies to identify putative class members. One process identified "8,627 unique telephone numbers" allegedly belonging to class members. ECF No. 112-6, First Peters-Stasiewicz Declaration ¶¶ 10, 23. The other identified "23,682" such numbers. ECF No. 114 at 1-2. The results of these two methods, both of which Plaintiff claimed were "reliable," had *less than 1% overlap*. In other words, Plaintiff has twice tried to come up with a list of numbers for a claim form process and *came up with totally inconsistent results*. He has offered no explanation whatsoever for this. The demonstrable unreliability of Plaintiff's proposed claim form process is therefore unprecedented. None of the above cases involved a Plaintiff who proved his own process unreliable with different proposals to identify claim form recipients that yielded opposite answers. This fact independently precludes using claims forms here.

### E. Improper New Reply Evidence Confirms He and His Counsel Are Inadequate

Humana's opposition also established that Plaintiff and his counsel are inadequate. Plaintiff's new reply evidence confirms those points and adds more, as further detailed in Humana's motion for sanctions and motion to strike. ECF Nos. 161-62.

First, Plaintiff's new evidence creates an entirely new, independent reason that Plaintiff

12

and his counsel are inadequate: They intentionally violated the mediation privilege and multiple Court instructions, including an express, written order, by disclosing an offer made during a November 2024 mediation. This Court expressly ordered as follows, for example: "Offers, demands, and communications between the parties and/or the Magistrate Judge during the settlement conference are confidential. *They shall not be referenced in any court filing* and *shall not be disclosed* to any person who is neither a participant in the settlement conference, a party to the lawsuit, nor a member of a party's legal team." ECF No. 102 at 4 (emphasis added).

Plaintiff and his attorneys nevertheless disclosed that confidential offer and Plaintiff's response to it publicly three times. This conduct is so serious that it can result in terminating sanctions, as explained in Humana's separate motion for sanctions. ECF No. 161; *see also, e.g.*, *Hand v. Walnut Valley Sailing Club*, 475 F. App'x 277 (10th Cir. 2012) (Gorsuch, J.) (affirming dismissal of entire case with prejudice because plaintiff disclosed settlement offer from mediation).

Compounding the severity of these disclosures here is that they were non-responsive to Humana's arguments. Humana never disputed that Plaintiff was aware of an offer made *at mediation*, where Judge Lindsay conveyed them. Humana instead explained that Plaintiff's counsel was inadequate because they didn't convey *pre*-mediation offers. Plaintiff and his counsel thus violated the Court's mediation order in an apparent effort to misdirect attention away from counsel's failure to convey settlement offers long before mediation. That is strong additional evidence that both Plaintiff and his counsel are inadequate. *Kandel v. Brother Int'l*, 264 F.R.D. 630, 634 (C.D. Cal. 2010) (finding counsel inadequate for failing to "follow the Court's local rules, standing order, and instructions").

Second, the sham testimony Plaintiff and his counsel submitted on reply to cover up their failure to convey settlement offers confirms their inadequacy. Plaintiff now claims that he "incorrectly stated" he didn't receive settlement offers because he was suffering from previously undisclosed "bouts of short-term memory loss." ECF No. 159-8 ¶ 2. He repeatedly said the opposite at his deposition. ECF No. 113-3 at 118:17-18 ("I have no knowledge of any settlement offered to me[.]"). His lead attorney similarly says that "Elliot was conveyed both the offers of

13

settlement" based on a review of his time records. ECF No. 159-9 at ¶ 6. Their shifting stories lack credibility and, even if they were true, preclude adequacy. *See generally* ECF No. 162.

Third, both Plaintiff and his counsel are inadequate because their new declarations attempt to reaffirm false testimony about the number of calls Plaintiff received. The phone records from Plaintiff's carrier (Tracfone) are clear: He received, at most, 3 voicemails from Humana. *See* ECF No. 142 at 14 (citing ECF No. 113-2.A at Tracfone 14). Plaintiff doesn't even try to explain how it could be that his phone carrier would have no record of calls he claims he received. *Linda Johnston v. CrossCountry Mortgage*, 2025 WL 89997, at *7-8 (N.D. Ohio Jan. 14, 2025) (granting summary judgment to defendant in TCPA case because Plaintiff couldn't change or contradict records with testimony). Plaintiff and a "Development Manager" (Trent Alvord) *from his own lawyer's firm* (*whom Plaintiff didn't previously disclose*) still double down on their claim that Elliot received 22 calls without attaching records to back the claim. *See* ECF Nos. 159-8, 159-10.

But that only gives the Court reason to question his credibility twice over, for all the reasons Humana explained in its opposition. *See Harden v. Autodesk*, 2016 WL 4408905, at *4 (W.D. Mich. Aug. 19, 2016) (denying certification because representative's testimony was "directly at odds with documents in the record," rendering him inadequate). It also makes Plaintiff's counsel inadequate because Alvord's declaration turns Plainitff's counsel into material witnesses—ones Humana did not know about or had the opportunity to depose before the close of discovery and would need to cross-examine at trial regarding the number of calls they allege, as explained above. *Supra* § II.A; *see also Glazer v. Reimer*, 2015 WL 13932929, at *3-4 (N.D. Ohio Nov. 2, 2015) (disqualifying class counsel because he was a "necessary fact witness").

The reply thus confirms that Plaintiff and his counsel are inadequate for even more reasons.

### F. The Reply Confirms Plaintiff Cannot Establish Other Rule 23 Elements

Plaintiff's remaining arguments in favor of certification are all cursory throwaways that barely engage Humana's arguments. They, too, confirm the Court must deny certification here. Plaintiff says nothing new about commonality, reiterating that it's purportedly satisfied for all the reasons predominance is, ignoring all the detailed reasons why predominance fails at every step.

14

As to typicality, Plaintiff just asserts (at 10) that this element is satisfied because the "legal theory for both Elliot and the Class is the same." That ignores that Plaintiff's claim is subject to unique defenses, like whether the emergency-purposes exception applies and precludes his claims. *See Nghiem v. Dick's*, 318 F.R.D. 375, 383, n. 4 (C.D. Cal. 2016) (finding plaintiff atypical because his "unique" claims were a major focus). And it fails to address the evidence showing that Plaintiff is *not even a member of the putative class* because no "wrong number" note exists for Plaintiff's phone number in CGX *and* his expert's "reverse append" process fails for Plaintiff. ECF No. 147 at 34; *see, e.g.*, *Sandoe v. Bos. Sci.*, 333 F.R.D. 4, 8 (D. Mass. 2019) (denying certification because the same expert as Plaintiff's here "failed to identify the named plaintiff" as part of class).

Plaintiff also glosses over numerosity, claiming that he doesn't need to identify the exact number of individuals in the class at certification. That's true, but not the issue. The plaintiff in *Sliwa* made a similar argument, claiming he satisfied numerosity by just identifying thousands of phone numbers. 333 F.R.D. at 273. The court disagreed: "Although Plaintiff presumes that the list of 9,406 cell phone numbers identified in [his expert] report belong to non-customers, Plaintiff has failed to establish that any of the cell phone numbers on that list *actually* belong to non-customers." *Id.* (emphasis in original). The same is true here.

For superiority, Plaintiff again fails to respond to key points. He simply ignores the authority holding that individual actions are superior because the TCPA's statutory damages of $500 to $1,500 for a single call were "designed to provide adequate incentive for an individual plaintiff to bring suit on his own behalf." *Forman v. Data Transfer*, 164 F.R.D. 400, 404 (E.D. Pa. 1995); *Vigus v. Southern Illinois Riverboat/Casino Cruises*, 274 38 F.R.D. 229, 238 (S.D. Ill. 2011) (noting "superior remedy" in "small claims court"). The insurmountable problems with ascertaining class members similarly defeat superiority, as Plaintiff's own case law confirms. *Mullins*, 795 F.3d at 663-64 (administrative difficulty may defeat superiority).

### III.     CONCLUSION

Plaintiff's certification should be denied, as his reply and the new evidence he improperly submitted with it confirm.

DATED:  February 3, 2025

        */s/ Alexander D. Terepka*
Ryan D. Watstein (pro hac vice)
Alexander D. Terepka (pro hac vice)
Logan R. Leonard (pro hac vice)
**WATSTEIN TEREPKA, LLP**
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
Tel. (404) 400-3382
Email: alex@wtlaw.com
Email: ryan@wtlaw.com
Email: lleonard@wtlaw.com

*/s/ H. Toby Schisler*
H. Toby Schisler (pro hac vice)
K. Cassandra Carter, Esq. (KBA #98018)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 977-8152
Fax: (513) 977-8141
Email: toby.schisler@dinsmore.com
Email:  cassandra.carter@dinsmore.com

*Counsel for Humana Inc.*

16

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served upon all counsel of record through the Court's ECF/PACER e-filing system on this 3rd day of February 2025.

/s/ *Alexander D. Terepka*
Alexander D. Terepka