# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:22-CV-00329-RGJ-CHL

**DAVID ELLIOT,**                                                                                   **Plaintiff,**

v.

**HUMANA, INC.,**                                                                                   **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Attorney Fees filed by Defendant Humana, Inc. ("Defendant"). (DN 219.) Plaintiff David Elliot ("Plaintiff") has filed a Response. (DN 220.) Defendant has filed a Reply. (DN 221.) Therefore, the Motion is ripe for review. For the following reasons, Defendant's Motion is **GRANTED IN PART**.

### I.   Background

The Court set this case for a settlement conference. (DN 102.) Under the Court's October 17, 2024, Order for Settlement Conference, offers, demands, and communications between the parties and/or the magistrate judge are confidential. (*Id.* at PageID # 102.) The order prohibits either party from referencing such communications in any court filing. (*Id.*) Nevertheless, Plaintiff filed a declaration referencing an offer Defendant made during the settlement conference. (DN 159-8.) Defendant accordingly filed a motion for sanctions, asking the Court to: (i) grant Defendant the expenses it incurred in connection with the motion for sanctions; (ii) find Plaintiff and his counsel in contempt; (iii) hold a hearing on Plaintiff's and his counsel's misconduct; (iv) consider Plaintiff's and his counsel's intentional breaches as strong additional evidence of their inadequacy; (v) seal or otherwise remove from the public record Plaintiff's and his counsel's disclosures; and (v) grant Defendant leave to disclose additional information revealed at mediation

that would have further established Plaintiff's and his counsel's inadequacy. (DN 161, at PageID # 5020-21.) Defendant also filed a motion to strike Plaintiff's and his counsel's declarations from the record under the "sham affidavit" rule. (DN 162.) The Court held a hearing on these two motions and granted the first motion in part while denying the second. (DN 211.)

As to the motion for sanctions, the Court declined to consider Plaintiff's and his counsel's misconduct as additional evidence of their inadequacy, declined to hold Plaintiff and his counsel in contempt, and denied Defendant's request to introduce additional information revealed at the settlement conference. (DN 211.) But the Court granted Defendant's request for attorneys' fees and ordered Plaintiff to file a redacted version of the offending reply brief and exhibits. (*Id.*) The Court then ordered Defendant to file a fee petition that the Court would consider. (*Id.*) That fee petition is the Motion before the Court. (DN 219.)

**II. Discussion**

    **A. Standard**

The Sixth Circuit reviews a district court's award of attorneys' fees for abuse of discretion. *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996). A district court abuses its discretion when it "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007). As the party applying for attorney's fees, Defendant has the burden of showing that it is entitled to such an award by documenting the appropriate time spent on the matter in addition to hourly rates. *Clear Cast Group, Inc. v. Ritrama, Inc.*, No. 1:09-cv-00169, 2012 U.S. Dist. LEXIS 91188, at *2 (N.D. Ohio July 2, 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (additional citations omitted). "Such a requirement does not require the party to show exactly how each minute was spent, however the general subject matter should be contained in counsel's time

2

sheets." *Id.* at \*2-3. The accepted method of calculating attorney's fees is known as the "Lodestar method." *J & J Sports Prods., Inc. v. Cole's Place, Inc.*, No. 3:10-CV-732-S, 2011 U.S. Dist. LEXIS 153137, at \*14 (W.D. Ky. Nov. 28, 2011) (citations omitted). The Lodestar method requires that the "hours reasonably expended by counsel are multiplied by a reasonable hourly rate commensurate with that fee rate imposed in the local legal community by counsel of similar experience." *Id.* (citations omitted).

### 1.  Hourly rate

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)); *see also Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020) (citing *Hadix v. Johnson*, 65 F.3d 532, 535-36 (6th Cir. 1995)) ("This circuit uses the 'community market rule' to calculate a reasonable billing rate."). "Thus, the appropriate rate is not necessarily the exact rate of a particular firm, but the market rate in the venue sufficient to encourage competent lawyers in the relevant community to undertake legal representation." *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715-16 (6th Cir. 2016) (citing *Gonter*, 510 F.3d at 618). To determine the prevailing market rate, the court may "rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821-22 (6th Cir. 2013) (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011), and citing *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 447 (6th Cir. 2009)). "Furthermore, while the district court may take into consideration an attorney's skill level in identifying the market rate, this Circuit

3

holds that 'reasonable' fees need not be 'liberal' fees, and that '[s]uch fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region.'" *Husted*, 831 F.3d 716 (quoting in part *Coulter v. State of Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986)). However, the Sixth Circuit has cautioned that "as a general proposition, rates awarded in other cases do not set the prevailing market rate—only the market can do that." *B & G Min., Inc. v. Dir., Off. of Workers' Comp. Programs*, 522 F.3d 657, 664 (6th Cir. 2008). Instead, "[r]ates from prior cases can, however, provide some inferential evidence of what a market rate is, just as state-bar surveys of rates provide evidence of a market rate, but themselves do not set the rate." *Id.*

Defendant provides the Court with an affidavit, citing to the Price Waterhouse Coopers survey ("PwC") assessing median rates at different levels of seniority in different geographic regions. (DN 224, at PageID # 6899.) According to the PwC, an equity partner with 28 years of legal experience could command a rate of $582 in the Kentucky and Tennessee markets. (*Id.*) For equity partners with 13 years of experience, that rate is $490. For an associate who graduated in 2021, that rate is $315. Defendant is requesting that the Court award its reasonable expenses based on a "blended rate" of $550 for all billers. (DN 219, at PageID # 6711.)

Plaintiff does not dispute Defendant's request for a blended rate, but he does dispute the reasonableness of the rate itself. (DN 220, at PageID # 6790.) In opposition, Plaintiff cites to one case from the Eastern District of Kentucky in which the court found that $345 was a reasonable hourly rate. (*Id.*) (citing *Big Sandy Co. L.P. v. Am. Carbon Corp.*, NO. 21-88-DLB-EBA, 2024 WL 5396191, at *3 (E.D. Ky. June 12, 2024)). But rates approved in other cases are not the standard that the Court should look to; the Court should look to the prevailing market rate. *B & G*, 522 F.3d at 664.

4

Regarding Toby Schisler ("Schisler"), the Court notes that the rate Schisler billed Defendant was $520 per hour. (DN 219-1 at ¶ 9.) As this is below the prevailing market rate of $582 per hour, the rate at which an equity partner of comparable experience to Schisler could reasonably expect to command, the Court will apply the rate of $520. (DN 224 at ¶ 16.)

Regarding Alex Terepka ("Terepka"), the Court notes that Defendant was billed $665.20 per hour for his services. (DN 219-1 at ¶ 9.) However, the prevailing rates for attorneys of Terepka's comparable experience in Kentucky would indicate that a reasonable rate for Terepka should be $490 per hour. (DN 224 at ¶ 16.) This difference is presumably explained by the difference in the locality. (*Id.* at ¶ 24.) But the relevant market rate at issue in a fee petition is the market rate that corresponds with the community in which the court sits, not a foreign counsel's typical charge for work performed within a geographical area wherein he or she maintains his or her office and/or normally practices. *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). When a party hires an out-of-town specialist, that party has the burden to show: (1) hiring the out-of-town specialist was reasonable in the first instance; and (2) the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation. *See Hadix*, 65 F.3d at 535. If a party fails to meet this burden, then courts apply reasonable local rates. *See Id.* Here, Defendant has not even attempted to persuade the Court that hiring an out-of-town specialist was reasonable. Therefore, the Court will apply the local rate for Terepka.

Similarly, for Logan Leonard ("Leonard"), the Court notes that Defendant was also billed at the foreign market rate for his services: a rate of $495. As the prevailing rates for the community in which this Court sits suggest that $315 per hour for an attorney of Leonard's experience is reasonable, the Court will instead apply that rate for Leonard. (DN 224 at ¶ 17.)

## 2. Hours worked

As noted above, the second step in the lodestar calculation is to determine the number of hours reasonably expended. To support its fee request, Defendant submitted redacted time records as an exhibit. (DN 219-2.) Defendant asserts in its Motion that Schisler worked 9.3 hours, Terepka worked 42.3 hours, and Leonard worked 93.4 hours. (DN 219, at PageID # 6710.) Although the redacted time records support the asserted total for Schisler and Terepka, the records only show that Leonard worked 92.7 hours on the motion for sanctions.[1] (DN 219-2.) Thus, the Court will not award Leonard for 93.4 hours of work as it is not supported by the exhibits. *Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").

Plaintiff asserts that the amount of time the attorneys spent on the motion for sanctions was unreasonable. (DN 220, at PageID # 6788.) First, Plaintiff argues that both Terepka's and Leonard's participation at the hearing was excessive. (*Id.*) The Court agrees. To begin, the Court advised Defendant it would not "direct the [P]laintiff to pay for four lawyers to come to a hearing at which one lawyer made an argument." (DN 213, at PageID # 6659.) Nevertheless, Defendant is now requesting that the Court award it the reasonable expenses for both an attorney that participated fully in the hearing and an attorney that was simply responsible for "handling the necessary exhibits," a task that the Court is not convinced an attorney was necessary for. (DN 221, at PageID # 6866.) Therefore, the Court finds that the hours Leonard spent attending the hearing was unreasonable.

Second, Plaintiff argues that Defendant's records reveal "a multitude of entries for work not related Humana's Motion for Sanctions, but related to the Motion to Strike, Sur-Reply, and

---

[1] The redacted time records show that Schisler worked a total of 9.6 hours on this issue. As Defendant asserted that he worked 9.3 hours, the Court will start with 9.3 hours as the baseline for Schisler's work.

6

general review of Plaintiff's Motion for Class Certification." (DN 220, at PageID # 6789.) In response, Defendant argues that its review of the reply in support of the motion for class certification was necessary because the offending declarations were contained in the reply. (DN 221, at PageID # 6867.) Therefore, reviewing the reply declarations was necessary to draft the motion for sanctions. (*Id.*) Defendant also argues that the mixed entries relating to Plaintiff's response to Defendant's motion for sanctions and motion to strike were necessary because Plaintiff responded to both motions in the same brief. (DN 166.) Therefore, Defendant argues, it would be "absurd" to argue that Defendant's review of that brief could possibly be excessive. (DN 221, at PageID # 6868.)

The Court agrees with Defendant that some of those expenses were necessary. The Court held in its sanctions hearing that it would not award Defendant any expenses related to the motion to strike because that motion was denied. (DN 213, at PageID # 6659.) Defendant accordingly omitted some of the time spent on the motion to strike. (DN 219, at PageID # 6709.) However, there are some entries that are not solely related to the motion for sanctions. On January 7, 2025, Terepka billed one hour to "[a]nalyze and comment on various motion practice issues, including key arguments for sur-reply and sanctions motion." (DN 219, at PageID # 6737.) The Court will divide the hour billed for this entry by half to account for the fact that only half of such time reasonably relates to the motion for sanctions. On January 14, 2025, Terepka billed 0.80 hours to "[m]anage preparation of sur-reply, motion to exclude, and sanctions motion, and comment on key arguments for the same." (*Id.* at PageID # 6738.) The Court will only credit 0.27 hours for this entry, as roughly one third of the time recorded reasonably relates to the motion for sanctions. On January 20, Terepka billed 0.8 hours to "[r]eview and revise sanctions motion and motion to strike Plaintiff's sham declaration." (*Id.* at PageID # 6741.) The Court will only credit half of this time.

7

On January 22, Terepka billed 0.4 hours to "[p]rovide guidance to team regarding finalizing sanctions motion and revising sham declaration motion." (*Id.* at PageID # 6743.) The Court will only credit half of this time.

On January 2, Schisler billed a total of 1.4 hours to review Plaintiff's reply brief and review Terepka's email assessing Plaintiff's reply brief. (DN 219-2, at PageID # 6721.) Not all the hours spent on this task should be credited, as the reply brief in support of class certification would form the basis of Defendant's sur-reply, Defendant's motion to strike, and Defendant's motion for sanctions. The Court will thus credit 0.47 hours for these entries, roughly one-third of the time reasonably related to the motion for sanctions. On January 23, Schisler billed 0.2 hours to prepare an e-mail to Humana in-house counsel Lindsey Boyd and co-counsel regarding the final drafts of Defendant's motions for sanctions and to strike Plaintiff's reply declarations. (*Id.* at PageID # 6722.) As only half of this time relates to the motion for sanctions, the Court will only credit half. On February 21, Schisler billed 1.2 hours to "[r]eview and revise reply brief in support of motion to strike declarations of plaintiff and his counsel and reply brief in support of motion for leave to file sur-rely opposing class certification." (*Id.* at PageID # 6727.) This entry has nothing to do with the motion for sanctions, so the Court will not credit it at all. Moreover, that same day, Schisler billed 0.3 hours for an "[e]-mai[l] exchange with Lindsey Boyd, Alex Terepka, Cassie Carter, and remainder of litigation team re filing of reply briefs and strategy for next steps[]." (*Id.*) The Court will only credit 0.1 hours for this entry, as only one-third of the time spent on this entry likely relates to the motion for sanctions.

Plaintiff additionally argues that Defendant had billed an excessive amount for correspondence, comments, and general team strategies. (DN 220, at PageID # 6789.) In support of this argument, Plaintiff cites to *Diamond Resorts U.S. Collection Development, LLC v. Wesley*

8

*Financial Group, LLC*, No. 3:20-CV-251-DCLC-DCP, 2025 WL 890658 (N.D. Tenn. Mar. 21, 2025), for the proposition that too many instances of internal correspondence can render a requested award unreasonable. *Id.* at \*7. However, in that same case, the court declined to make reductions relating to a different motion given that the entries related to internal correspondence were "minimal compared to the substance of the motion." *Id.* at \*6. Here, the Court finds that Defendant's entries for internal correspondence were similarly minimal compared to the substance of the motion. (DN 221, at PageID # 6869-70.) Furthermore, such correspondence was necessary not just to draft and file the motion for sanctions, but to prepare for the sanctions hearing as well.

The Court finds no fault in the overall reasonableness of the hours spent. Examining Defendant's billing records, the Court does not find an excessive number of hours performed by a partner for work that an associate or a paralegal could have performed, a factor that weighs in favor of granting Defendant's full request. *Cf. Outdoor Product Innovations, Inc. v. Jest Textiles, Inc.*, No. 1:18 CV 2457, 2020 WL 13470888 (N.D. Ohio June 11, 2020) (finding that it was unreasonable that over 82 hours out of 142 were billed at the partner level for a straightforward issue). Additionally, the Court does not handle motions to sanction under Rule 16 very often, meaning there is very little authority on this issue, thus necessitating an extensive amount of time to research the issue and make an appropriate argument. Moreover, Defendant performed work not only to file the motion for sanctions, but as discussed above, to prepare for the sanctions hearing as well. Therefore, the overall amount of time spent on this issue was reasonable.

Finally, Plaintiff cites to *Isabel v. City of Memphis*, 404 F.3d 404 (6th Cir. 2005), for the proposition that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Id.* at 416. But the court in *Isabel* applied this rule only in the context of the Title VII fee-shifting provision. *Id.* (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)

9

("Once civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award.")); *see also PepsiCo v. Cent. Inv. Corp.*, 216 F.R.D. 418, 421 (S.D. Ohio 2002) ("[T]he [c]ourt finds no merit in the contention that CIC's fees related to the motion for sanctions should be reduced because it did not get the relief it sought. This is not an application for fees by a civil rights litigant in which the [c]ourt must gauge the plaintiff's degree of success versus the relief sought."). Therefore, the degree of relief obtained does not bear on the reasonableness of the award requested.

However, the Court will not award Defendant its reasonable expenses in requesting a transcript of Plaintiff's deposition. Plaintiff's deposition was relevant only to Defendant's motion to strike and is thus not an expense reasonably incurred because of Plaintiff's violation of the settlement conference order.

Given the total number of reasonable hours expended multiplied by the reasonable rate of attorneys' fees, the Court finds that an award of $52,228.70 is reasonable. However, given that Defendant is only requesting $46,502.50 in attorneys' fees, the Court will award Defendant its requested amount.

The Court additionally notes that Plaintiff has failed to comply with the Court's order to file a redacted version of Plaintiff's reply brief and accompanying declarations. Thus, the Court will order Plaintiff's counsel to do so.

### III.     Order

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Attorney Fees (DN 219) is **GRANTED IN PART**.

10

  (1) **No later than February 6, 2026**, counsel for Plaintiffs shall compensate Defendant in the amount of $46,502.50 in attorneys' fees.

  (2) **No later than February 6, 2026**, counsel for Plaintiffs shall file the redacted reply brief and declarations as ordered by the Court. (DN 211.)

January 23, 2026

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record

11